**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Fiber Research International, LLC***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIBER RESEARCH INTERNATIONAL, LLC,<br><br>       Plaintiff,<br><br>       v.<br><br>ADVANCED BOTANICAL CONSULTING & TESTING, INC.,<br><br><br>       Defendant. | **MOTION TO COMPEL ADVANCED BOTANICAL CONSULTING & TESTING, INC.'S COMPLIANCE WITH SUBPOENA *DUCES TECUM***<br><br>**[FED. R. CIV. P. 45]** |
| OBESITY RESEARCH INSTITUTE, LLC,<br><br>       Plaintiff & Counterclaim-Defendant,<br><br>       v.<br><br>FIBER RESEARCH INTERNATIONAL, LLC,<br><br>       Defendant & Counterclaim-Plaintiff. | Underlying Case No: 15-cv-595-BAS-MDD |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 45, Fiber Research will, and hereby does move to compel Advanced Botanical Consulting & Testing, Inc.'s ("ABC") compliance with the Subpoena Duces Tecum served on it by Fiber Research in the underlying matter of *Obesity Research Institute, LLC v. Fiber Research International, LLC*, No. 15-cv-595-BAS-MDD (S.D. Cal.).

This motion is based on this motion, the concurrently-filed memorandum in support thereof, the concurrently-filed Declaration of Jack Fitzgerald ("Fitzgerald Decl.") and all exhibits thereto, the concurrently filed Declaration of Trevor Flynn ("Flynn Declaration") and all exhibits thereto, all papers on file and proceedings had to date, and all argument and evidence that may be submitted in support of or in opposition to the motion.

This motion was originally intended to be a joint motion before Magistrate Judge Dembin in the underlying matter, *Obesity Research Institute, LLC v. Fiber Research International, LLC*, No. 15-cv-595-BAS-MDD. (Fitzgerald Decl. ¶ 21.) Counsel for ABC, however, informed Fiber Research that it would not participate in the joint motion because it believes that the District Court for the Southern District of California is not the proper forum for this motion. (Flynn Decl. ¶ 3.) But Rule 45(d)(2)(B)(i) provides that "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Here, the Subpoena *Duces Tecum* required compliance in San Diego (Fitzgerald Decl. Ex. 2), which is of course located in the Southern District, making this the proper forum for this dispute.

Because ABC refused to provide its portion of the joint motion, Fiber Research has been forced to file the instant motion as a miscellaneous action. However, because this action is related to the underlying matter, and, accordingly, likely to be transferred to Magistrate Judge Dembin, Fiber Research has formatted this motion and all supporting documents (including the remainder of this documents, and a Memorandum limiting Fiber Research's "portion" to 5 pages) to comply with Judge Dembin's Civil Chambers Rules.

1

**REQUEST FOR PRODUCTION NO. 1**

All DOCUMENTS constituting or otherwise CONCERNING COMMUNICATIONS between YOU and ORI or NUTRALLIANCE concerning LIPOZENE, glucomannan, or Konjac root powder.

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

ABC objects to this request on the grounds that it is seeks discovery outside the scope permitted by Federal Rule of Civil Procedure 26(b)(1). This request seeks documents and information that are not relevant to the claims and defenses in this case, not proportional to the needs of the case, and places an undue burden and expense on a non-party, particularly to the extent this request seeks documents regarding products other than Lipozene as ABC's dealings with ORI and Nutralliance regarding any glucomannan, or Konjac root powder product have no bearing on a dispute between FRI and ORI, which at its core is about allegations of false advertising related to Lipozene. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC also objects to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ORI objects to this request to the extent it seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines.

ABC further objects to this request on the ground FRI is using this subpoena to circumvent the Court's October 27, 2015 discovery rulings in which Magistrate Judge Dembin specifically ruled FRI was not entitled to certain information. Specifically, ABC objects to the request as overbroad to the extent it seeks documents regarding glucomannan or Konjac root powder products that are not Lipozene in light of the Court's ruling that discovery is limited only to ORI's Lipozene product, not all glucomannan products. (Transcript of October 27, 2015 Hearing, p. 10:11-13 [limiting product to Lipozene only].) ABC objects to this request as it is not limited to a certain time frame despite the Court's ruling that only information concerning liability dating back to 2006 and damages

2

information going back three years is discoverable. (Transcript of October 27, 2015 Hearing, pp. 9:18-10:13 [relevant period for liability information dating back to 2006], 13:24-16:10 [relevant period for damages information limited to previous three years].) ABC also objects to the request to the extent it seeks contracts, purchase orders, and other financial related information in light of the Court's ruling that such information is not discoverable. (Transcript of October 27, 2015 Hearing, pp. 13:24-16:10 [financial information limited to gross sales for prior three years], 29:14-30:6 [contracts and purchase orders not discoverable].) Responsive materials are being withheld on the basis of the foregoing objections.

## REASONS FOR COMPELLING FURTHER RESPONSE:

ABC's first conclusory objection fails to specify in any manner how the request "seeks discovery outside the scope of permitted by . . . Rule . . . 26(b)(1)," and should be overruled. The same is true for its objection that the request "calls for disclosure of unretained expert's opinion or information"—ABC simply provides no explanation why that is the case.

ABC's second objection asserts lack of relevance and proportionality with respect to communications between ABC and ORI or Nutralliance, long ORI's exclusive glucomannan supplier for Lipozene, on the basis that such documents "have no bearing on a dispute . . . related to Lipozene." (This objection is repeated in ABC's second paragraph of objections purporting to incorporate the Court's October rulings on the scope of discovery from ORI.)

ABC's principal stated in response to the subpoena that "any email communications are with our customer Nutralliance (we do not know the other company you named in the document)" (Fitzgerald Decl. Ex. 4), so there should be no such communications between ABC and ORI. And because Nutralliance deals in raw materials, it does not refer to the material as Lipozene. Instead, the ABC testing reports usually call it "Konjac root powder." (*See id.* Ex. 10.) Indeed, there is some question still open in the case what exactly Lipozene is—whether glucomannan, Konjac root powder, or something else. In addition, ABC has not demonstrated or even asserted that it has tested for Nutralliance either glucomannan or Konjac root powder that was not in some way related to Lipozene. Even if it did, ABC would

have to demonstrate a principled way to concretely identify and separate from Lipozene-related Konjac testing communications regarding supposedly non-Lipozene-related Konjac testing.

Although the Court limited discovery requests directed at ORI to Lipozene only, excluding other ORI *products* which also contained glucomannan (such as Lipozene's predecessors, Propolene, or Fiber Thin), that ruling is also inapposite to this request, which does not seek communications regarding other *products* made with glucomannan, but rather communications regarding the constituent ingredients of Lipozene—glucomannan or Konjac root powder. ORI has itself produced and is relying on testing results from ABC regarding these ingredients, despite not labeled as Lipozene. Indeed, ORI produced and may even be relying on ABC testing of non-Lipozene products. (*See* Fitzgerald Ex. 10 at ORI885-88.)

In sum, the limitation the Court imposed in October with respect to ORI was to exclude production of information relating to products not at issue in this lawsuit. This is not a principled limitation when applied to a third-party testing laboratory whose raw materials testing for a party's supplier is being used to support the party's claims and defenses.

To the extent this request "seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC," the Protective Order will guard this information against further disclosure. (*See* Dkt. No. 67.)

ABC's objection that this request "seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines," fails to demonstrate how communications between two third parties, ABC and Nutralliance, and not involving attorneys, could be entitled to such protections. Nor has ABC produced a privilege log in response to the subpoena *duces tecum*.

Finally, ABC's remaining attempts to leverage the Court's October 2015 decision narrowing the documents ORI was required to produce should also be rejected. ABC's objection about the timeframe should be overruled. Brian Salerno, President and CEO of Lipozene's konjac supplier, Nutralliance, testified that he has "always," since Nutralliance

4

has been purchasing konjac, hired ABC to conduct viscosity testing on this ingredient. (Fitzgerald Decl. Ex. 12, at 96:18-97:25.) Mr. Salerno further testified that Nutralliance started supplying the konjac for Lipozene in the Fall of 2004 (*id.* at 376:7-12), and that ABC labs sends testing reports to Nutralliance via email and fax, (*id.* at 253:24-255:7). Accordingly, there are likely communications between ABC and Nutralliance discussing viscosity testing of the konjac ingredient in Lipozene, dating back to 2004.The viscosity of the konjac ingredient in Lipozene, and how it has changed over time, are key issues in this case, as it goes to whether Lipozene is the same or substantially similar to the product tested in the clinical studies on which ORI's marketing claims are based. And although ABC's final objection is really more appropriately considered in response to Request Nos. 5-6, its attempt to take advantage of the Court's limiting the financial information ORI was required to produce makes little sense. Here Fiber Research requests information that might tend to demonstrate bias, namely the amount ABC was paid for the testing, and the person making the payment. This last bit of information is also relevant because ORI now claims ABC is a "hired consultant," and even perhaps a "functional employee" of ORI (despite that ABC does not know who ORI is).

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

**REQUEST FOR PRODUCTION NO. 2**

All DOCUMENTS relating to ABC laboratory testing report numbers (i.e., "Lab #s"):

- 153654 (report date: 11/10/2015)
- 152794 (report date: 11/6/2015)
- 152793 (report date: 11/6/2015)
- 152792 (report date: 11/6/2015)
- 153720 (report date: 11/6/2015)

- 146901 (report date: 8/10/2015)
- 118344 (report date: 5/15/2014)
- 086307 (report date: 8/1/2012)
- 085969 (report date: 7/23/2012)
- 085970 (report date: 7/23/2012)
- 085971 (report date 7/23/2012)
- 085972 (report date: 7/23/2012)

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

ABC objects to this request on the grounds that it is seeks discovery outside the scope permitted by Federal Rule of Civil Procedure 26(b)(1). This request seeks documents and information that are not relevant to the claims and defenses in this case, not proportional to the needs of the case, and places an undue burden and expense on a non-party, particularly to the extent this request seeks all documents related to laboratory resting report numbers without any limitation whatsoever. ABC has communicated with counsel for FRI and demanded payment for the undue costs associated with responding to the Request, but FRI has denied any such request. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC also objects to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ABC objects to this request to the extent it seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines.

ABC further objects to this request on the ground FRI is using this subpoena to circumvent the Court's October 27, 2015 discovery rulings in which Magistrate Judge Dembin specifically ruled FRI was not entitled to certain information. Specifically, ABC objects to the request as overbroad to the extent it seeks documents regarding glucomannan or Konjac root powder products that are not Lipozene in light of the Court's ruling that discovery is limited only to ORI's Lipozene product, not all glucomannan products.

*Fiber Research International, LLC v. Advanced Botanical & Consulting & Testing, Inc.*
FIBER RESEARCH'S MOTION TO COMPEL ADVANCED BOTANICAL CONSULTING & TESTING,
INC.'S COMPLIANCE WITH SUBPOENA *DUCES TECUM*

(Transcript of October 27, 2015 Hearing, p. 10:11-13 [limiting product to Lipozene only].) ABC also objects to the request to the extent it seeks contracts, purchase orders, and other financial related information in light of the Court's ruling that such information is not discoverable. (Transcript of October 27, 2015 Hearing, pp. 13:24-16:10 [financial information limited to gross sales for prior three years], 29:14-30:6 [contracts and purchase orders not discoverable].) Responsive materials are being withheld on the basis of the foregoing objections.

**REASONS FOR COMPELLING FURTHER RESPONSE:**

ABC's first conclusory objection fails to specify in any manner how the request "seeks discovery outside the scope of permitted by . . . Rule . . . 26(b)(1)," and should be overruled. The same is true for its objection that the request "calls for disclosure of unretained expert's opinion or information"—ABC simply provides no explanation why that is the case.

ABC's second objection asserts lack of relevance and proportionality, and undue burden, "particularly to the extent this request seeks all documents related to laboratory resting report numbers without any limitation whatsoever." For any given laboratory testing, however, there are only so many "related" documents. For each ABC test report ORI is relying on, that should likely include a limited universe of documents: test request forms, raw data, calculation sheets, the chemist's notes, and a chain of custody. (*See* Fitzgerald Decl. Ex. 9 at 40:3-47:2.) Because ORI is relying on these very lab reports, Fiber Research is entitled to all of that related information, which could include evidence that certain results are mistaken, or discussions that clarify or give context to different elements of the testing results.

Nor can ABC credibly assert that this request places an undue burden or expense on it when Wendi Wang has admitted that "if you give [ABC] a specific log number, lab number," as FRI did, ABC "can go to the computer and print out a Word file, that's the easiest. It is in a computer, you just print it out." (Fitzgerald Decl. Ex. 9 at 48:17-21.)

To the extent this request "seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC," the Protective Order will guard this information against further disclosure. (*See* Dkt. No. 67.)

ABC's objection that this request "seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines," fails to demonstrate how communications between two third parties, ABC and Nutralliance, and not involving attorneys, could be entitled to such protections. Nor has ABC produced a privilege log in response to the subpoena *duces tecum*.

ABC's reliance on the Court's October 27, 2015 discovery rulings is misplaced. Although the Court limited discovery requests directed at ORI to Lipozene only, excluding other ORI products which also contained glucomannan (such as Lipozene's predecessor, Propolene, or ORI's other product glucomannan product, Fiber Thin), that ruling is inapposite to the requests here regarding testing reports that ORI itself has produced in this Lipozene litigation, conceding that they are either testing of Lipozene or its raw ingredients, or sufficiently related to be relevant.

ABC's remaining attempts to leverage the Court's October 2015 decision narrowing the documents ORI was required to produce should also be rejected. ABC's complaint about the timeframe is academic, since the documents requested relate to testing reports dated, at the earliest, in 2012. However, if for some reason documents relating to 2012 testing reports were created earlier than the testing report itself, the court in the underlying matter has already found that information relevant by opening up discovery from ORI beginning in 2006 (coinciding with ORI's approximate commencement of selling Lipozene in November 2005). Further, Brian Salerno, the President and CEO of Nutralliance, ORI's exclusive glucomannan supplier for Lipozene, testified that it has hired ABC to conduct testing on the konjac ingredient in Lipozene (*id.* at 367:1-3), and that ABC labs sends testing reports to Nutralliance via email and fax, (*id.* at 245:3-246:11). And although ABC's final objection is really more appropriately considered in response to Request Nos. 5-6, its attempt to take advantage of the

8

Court's limiting the financial information ORI was required to produce makes little sense. Here Fiber Research requests information that might tend to demonstrate bias, namely the amount ABC was paid for the testing, and the person making the payment. This last bit of information is also relevant because ORI now claims ABC is a "hired consultant," and even perhaps a "functional employee" of ORI (despite that ABC does not know who ORI is).

Lastly, notwithstanding these objections, ABC already stated it would produce "chemist lab notebooks" if FRI agreed to pay an unidentified amount for the production. (*See* Fitzgerald Decl. Ex. 4.) As argued in the concurrently-filed memorandum, the Court should order ABC to produce these documents and then, if its believes its actual costs are significant in relation to its ability to bear such costs, permit ABC to seek cost shifting. *See Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11, 2015) (The Court ordered the nonparty to comply with the parties' pending discovery requests, and deferred ruling on the issue of cost-shifting, noting: "Once all discovery has been produced, [nonparty] may file a motion for cost shifting. The Court may then rely on the developed record to determine whether significant expenses have indeed been reasonably incurred.").

## BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

## REQUEST FOR PRODUCTION NO. 3

All DOCUMENTS concerning any methodology used in the testing reflected in the lab reports identified in Request No. 2.

## ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 3

ABC objects to this request on to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC objects to this request to the extent it seeks documents protected by attorney-client privilege, work product,

consultant work product, and common interest protection doctrines. Responsive materials are being withheld on the basis of the foregoing objections.

**REASONS FOR COMPELLING FURTHER RESPONSE:**

To the extent "this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC," the Protective Order will guard this information against further disclosure. (*See* Dkt. No. 67.)

ABC's objection that the request calls for nonretained expert opinion or information is wrong, since the request concerns the specific methodologies used for the specific testing reflected in the 12 reports identified in Request No. 2, rather than information about testing methodologies generally. Indeed, ABC does not object on the basis of relevance.

This request calls for documents related to, or which define and/or explain, the methodologies utilized by ABC in conducting tests on Lipozene and its constituent ingredients. Understanding the methodology of the testing may be critical to FRI's ability to rebut the evidence on which ORI intends to rely to support its claims and defenses. Indeed, the very test for excluding expert testimony under *Daubert* is "the soundness of [the] methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir.1995)). Further, testimony from Brian Salerno, President and CEO of Nutralliance, ORI's exclusive glucomannan supplier for Lipozene and the company that hired ABC to conduct testing on that ingredient, indicates that FRI likely cannot obtain this information elsewhere. Mr. Salerno testified that he does not know which methodologies were used for various tests, and that the proper entity to ask is ABC. (Fitzgerald Decl. Ex. 12, at 253:24-255:7, 259:12-14, 260:15-18, 262:8-23, 299:7-17.)

ABC's objection that this request "seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines," fails to demonstrate the applicability of any such privilege to the methodologies ABC used to engage in the testing on which ORI is relying, but even if it were for some reason privilege

10

or work product, that is waived by ORI's reliance on the testing—Fiber Research has a right to information that could help challenge the validity of the testing, and methodology is one clear such avenue.

Lastly, notwithstanding these objections, ABC already stated would produce these methodologies if only FRI agreed to pay an unidentified sum to ABC for the production. (*See* Fitzgerald Decl. Ex. 4.) As argued in the concurrently filed memorandum, the Court should order ABC to produce these documents and then, if it believes its costs are significant in relation to its ability bear such costs, permit ABC to seek cost shifting. *See Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11, 2015) (The Court ordered the nonparty to comply with the parties' pending discovery requests, and deferred ruling on the issue of cost-shifting, noting: "Once all discovery has been produced, [nonparty] may file a motion for cost shifting. The Court may then rely on the developed record to determine whether significant expenses have indeed been reasonably incurred.").

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

**REQUEST FOR PRODUCTION NO. 4**

To the extent not produced in response to Request No. 3, all DOCUMENTS concerning any methodology for performing viscosity testing.

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

ABC objects to this request on to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC objects to this request to the extent it seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines. ABC also objects on the grounds that this request is overbroad and burdensome as it seeks any methodology for performing viscosity testing, regardless of whether such methods were used in the laboratory

11

1  testing reports identified in Request No. 2. Responsive materials are being withheld on the
2  basis of the foregoing objections.

3  **REASONS FOR COMPELLING FURTHER RESPONSE:**

4  To the extent "this request seeks confidential and trade secret information belonging
5  to ORI, Nutralliance, and ABC," the Protective Order will guard this information against
6  further disclosure. (*See* Dkt. No. 67.)

7  Further, ABC's objection that this request "seeks documents protected by attorney-
8  client privilege, work product, consultant work product, and common interest protection
9  doctrines," fails to describe how ABC's internal documents relating to testing already
10  produced would be entitled to such protections, nor produced a privilege log in response to
11  the subpoena *duces tecum*.

12  ABC's objection that the request calls for unretained expert opinion or information is
13  conclusory. ABC similarly objects that the request is overbroad because it is not limited to
14  the methodology "used in the laboratory testing reports identified in Request No. 2." As
15  demonstrated by ORI's reliance on the viscosity tests conducted by ABC, viscosity is of
16  particular importance in this action. Because the soundness of the testing methodology is
17  critical to determining the admissibility of expert testimony relying on the ABC testing, *see*
18  *Daubert*, 43 F.3d at 1318, information about viscosity testing methodologies in the
19  possession, custody, or control of ORI's testing laboratory are highly relevant. The ABC
20  testing reports indicate ABC applied a "Customer method." (*See* Fitzgerald Decl. Ex. 10.)
21  The comparison of the method provided by Nutralliance/ORI to more standard methods may
22  help Fiber Research show deficiencies in the methods used. Moreover, there are only so many
23  methodologies, and ABC has presented no basis for believing retrieval of such documents
24  would be unduly burdensome.

25  Lastly, notwithstanding these objections, ABC already sated it would produce these
26  methodologies if FRI agreed to pay an unidentified sum for the production. (*See* Fitzgerald
27  Decl. Ex. 4.) As argued in the concurrently-filed memorandum, the Court should order ABC

28

to produce these documents and then, if it believes its costs are significant in relation to its ability bear such costs, permit ABC to seek cost shifting. *See Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11, 2015) (The Court ordered the nonparty to comply with the parties' pending discovery requests, and deferred ruling on the issue of cost-shifting, noting: "Once all discovery has been produced, [nonparty] may file a motion for cost shifting. The Court may then rely on the developed record to determine whether significant expenses have indeed been reasonably incurred.").

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

**REQUEST FOR PRODUCTION NO. 5**

DOCUMENTS, such as invoices and copies of checks, sufficient to show the amount YOU were compensated for performing the testing reflected in the lab reports identified in Request No. 2.

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

ABC objects to this request on the grounds that it is seeks discovery outside the scope permitted by Federal Rule of Civil Procedure 26(b)(1). This request seeks documents and information that are not relevant to the claims and defenses in this case, not proportional to the needs of the case, and places an undue burden and expense on a non-party. Documents reflecting the amounts ABC were compensated for its testing is irrelevant to the claims at issue in this case. Furthermore, ABC has not been designated as an expert witness in this case. ABC also objects to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC objects to this request to the extent it seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines. Responsive materials are being withheld on the basis of the foregoing objections.

**REASONS FOR COMPELLING FURTHER RESPONSE:**

ABC's first conclusory objection fails to specify in any manner how the request "seeks discovery outside the scope of permitted by . . . Rule . . . 26(b)(1)," and should be overruled, along with ABC's relevance objection. To the contrary, this request seeks information regarding how much ORI (or its supplier Nutralliance) paid ABC to perform testing of Lipozene or its constituent ingredients. These documents are relevant to establish any bias or favoritism that ABC may have shown ORI. Although ABC is not a designated expert, ORI has described it as a "retained consultant" (*see* Fitzgerald Decl. Ex. 11, ORI's Privilege Log, Rows 1-13), and compensation paid to consultants "is relevant to show the extent of the relationship between them and the [party], . . . and the bias of these consultants." *See U.S. Nutraceuticals LLC v. Cyanotech Corp.*, 2014 WL 1918040, at *4 (M.D. Fla. May 13, 2014) (overruling objections and ordering defendant to produce documentation of the amount of compensation paid to its consultant).

To the extent "this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC," the Protective Order will guard this information against further disclosure. (*See* Dkt. No. 67.)

ABC fails to explain its objection that the request "calls for disclosure of unretained expert's opinion or information," and on its face the request does not, since it concerns payment ABC received for the testing on which ORI relies.

Further, ABC's objection that this request "seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines," fails to describe how ABC's internal documents relating to testing already produced would be entitled to such protections, nor produced a privilege log in response to the subpoena *duces tecum*.

Lastly, notwithstanding these objections, ABC already stated it would produce these invoices if FRI agreed to pay an unidentified sum for the production. (*See* Fitzgerald Decl. Ex. 4.) As argued in the concurrently-filed memorandum, the Court should order ABC to

14

produce these documents and then, if it believes its costs are significant in relation to its ability bear such costs, permit ABC to seek cost shifting. *See Cornell v. Columbus McKinnon Corp.*, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11, 2015) (The Court ordered the nonparty to comply with the parties' pending discovery requests, and deferred ruling on the issue of cost-shifting, noting: "Once all discovery has been produced, [nonparty] may file a motion for cost shifting. The Court may then rely on the developed record to determine whether significant expenses have indeed been reasonably incurred.").

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

**REQUEST FOR PRODUCTION NO. 6**

DOCUMENTS, such as invoices and copies of checks, sufficient to show the PERSONS from whom you received compensation for performing the testing reflected in the lab reports identified in Request No. 2.

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

ABC objects to this request on the grounds that it is seeks discovery outside the scope permitted by Federal Rule of Civil Procedure 26(b)(1). This request seeks documents and information that are not relevant to the claims and defenses in this case, not proportional to the needs of the case, and places an undue burden and expense on a non-party. Documents reflecting who paid ABC for its testing is irrelevant to the claims at issue in this case. Furthermore, ABC has not been designated as an expert witness in this case. ABC objects to the extent this request calls for disclosure of unretained expert's opinion or information. ABC also objects to the extent this request seeks confidential and trade secret information belonging to ORI, Nutralliance, and ABC. ABC objects to this request to the extent it seeks documents protected by attorney-client privilege, work product, consultant work product, and common interest protection doctrines. Responsive materials are being withheld on the basis of the foregoing objections.

1  **REASONS FOR COMPELLING FURTHER RESPONSE:**

2      ABC's first conclusory objection fails to specify in any manner how the request "seeks

3  discovery outside the scope of permitted by . . . Rule . . . 26(b)(1)," and should be overruled,

4  along with ABC's relevance objection. Similar to Request For Production No. 5, these

5  documents are relevant to any potential bias of ABC, as well as the veracity of ORI's assertion

6  that ABC (which does not even know ORI) is a "retained consultant." These documents are

7  also relevant to any bias of ORI's non-retained expert, Brian Salerno, President of

8  Nutralliance, as the testing results were addressed to Nutralliance, not ORI (*see* Fitzgerald

9  Decl. Ex. 10).

10      To the extent "this request seeks confidential and trade secret information belonging

11  to ORI, Nutralliance, and ABC," the Protective Order will guard this information against

12  further disclosure. (*See* Dkt. No. 67.)

13      Further, ABC's objection that this request "seeks documents protected by attorney-

14  client privilege, work product, consultant work product, and common interest protection

15  doctrines," fails to describe how ABC's internal documents relating to testing already

16  produced would be entitled to such protections, nor produced a privilege log in response to

17  the subpoena *duces tecum*.

18      Lastly, notwithstanding these objections, ABC stated it would produce these

19  documents if FRI agreed to pay an unidentified sum for the production. (*See* Fitzgerald Decl.

20  Ex. 4.) As argued in the concurrently-filed memorandum, the Court should order ABC to

21  produce these documents and then, if it believes its costs are significant in relation to its

22  ability bear such costs, permit ABC to seek cost shifting. *See Cornell v. Columbus McKinnon*

23  *Corp.*, 2015 WL 4747260, at *1 (N.D. Cal. Aug. 11, 2015) (The Court ordered the nonparty

24  to comply with the parties' pending discovery requests, and deferred ruling on the issue of

25  cost-shifting, noting: "Once all discovery has been produced, [nonparty] may file a motion

26  for cost shifting. The Court may then rely on the developed record to determine whether

27  significant expenses have indeed been reasonably incurred.").

28

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."

**REQUEST FOR PRODUCTION NO. 7**

Copies of YOUR document retention policies from August 1, 2012 to the present, including any changes thereto.

**ABC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

ABC also objects to the extent this request seeks confidential, proprietary, and trade secret business information belonging to ABC. Responsive materials are being withheld on the basis of the foregoing objections.

**REASONS FOR COMPELLING FURTHER RESPONSE:**

ABC's document retention policy will outline how long ABC retains the types of documents requested in the Subpoena *duces tecum* and thus enable FRI to assess the completeness of ABC's production. Although ABC provides no basis for believing its document retention policies are truly confidential, to the extent "this request seeks confidential, proprietary, and trade secret business information belonging to ABC," the Protective Order will guard this information against further disclosure. (*See* Dkt. No. 67.)

**BASIS FOR ALL OBJECTIONS AND/OR CLAIMS OF PRIVILEGE:**

Counsel for ABC declined to respond to FRI's "reasons for compelling further response."


Dated: February 19, 2016        /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER

17

*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Counsel for Fiber Research International, LLC***

*Fiber Research International, LLC v. Advanced Botanical & Consulting & Testing, Inc.*
FIBER RESEARCH'S MOTION TO COMPEL ADVANCED BOTANICAL CONSULTING & TESTING,
INC.'S COMPLIANCE WITH SUBPOENA *DUCES TECUM*

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Fiber Research International, LLC

**DEFENDANTS**
Advanced Botanical Consulting & Testing, Inc.

(b) County of Residence of First Listed Plaintiff    Carson City, Nevada
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Orange County, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Jack Fitzgerald, The Law Office of Jack Fitzgerald, PC
3636 Fourth Ave., Suite 202, San Diego, CA 92103
Phone: 619-692-3840

Attorneys *(If Known)*
Richard P. Sybert, Gordon & Rees
101 W. Broadway, Suite 2000, San Diego, CA 92101
Phone: (619) 696-6700

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fed. R. Civ. P. 45(d)(2)(b)(1), 45(g)

Brief description of cause:
Motion to Compel Compliance with Subpoena Duces Tecum

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Hon. Cynthia Bashant (MDD)

DOCKET NUMBER   15-cv-0595-BAS-MDD

DATE
02/18/2016

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jack Fitzgerald

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE