1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

OBESITY RESEARCH INSTITUTE, LLC,

                Plaintiff,

    v.

FIBER RESEARCH INTERNATIONAL, LLC,

                Defendant.

AND RELATED COUNTERCLAIM

Case No.  15-cv-00595-BAS(MDD)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND COUNTERDEFENDANT OBESITY RESEARCH INSTITUTE'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**

(ECF No. 43)

      On March 16, 2015, Obesity Research Institute, LLC ("Obesity Research") filed a Complaint for Declaratory Judgment against Fiber Research International, LLC ("Fiber Research") asking the Court to declare that it has no liability under either the Lanham Act, 15 U.S.C. §§ 1125 *et seq*., or the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301 *et seq*.  (ECF No. 1.)  On May 28, 2015, Fiber Research filed an Answer, in which it asserts the affirmative defense of unclean hands, and a First Amended Counterclaims.  (ECF No. 41 ("FACC").)  The FACC

alleges a violation of the Lanham Act (false advertising, unfair competition and false designation in violation of section 1125(a)(1)), a violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§17200 *et seq.*, and a violation of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (*Id.*)

Presently before this Court is a Motion to Dismiss the FACC filed by Obesity Research pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 43.) Obesity Research argues the FACC should be dismissed because: (1) Fiber Research lacks statutory standing to bring the claims; (2) the FACC fails to state a claim for a violation of the Lanham Act and for a violation of the UCL; (3) the FACC fails to allege sufficient particularity under Federal Rule of Civil Procedure 9(b); and (4) the allegations in the FACC are barred by laches. Fiber Research opposes. (ECF No. 48.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, Court **GRANTS IN PART** and **DENIES IN PART** Obesity Research's Motion to Dismiss (ECF No. 43).

# I.    BACKGROUND

As alleged in Fiber Research's FACC, "Glucomannan is a dietary fiber derived from Konjac, a root vegetable." (FACC at ¶ 24.) Shimizu Chemical Corporation ("Shimizu") "has developed a proprietary, patented process for extracting and refining Konjac root to produce the highest-quality glucomannan available in the world, called 'Propol.'" (*Id.*) "Numerous clinical studies support the efficacy of Propol glucomannan in assisting weight loss." (*Id.*)

"In 2006, Obesity Research introduced a weight loss product called Lipozene." (*Id.* at ¶ 25.) Although Obesity Research's marketing campaign highlights Propol's strong clinical testing results, "Lipozene contains neither Propol glucomannan, nor any substantially equivalent glucomannan that would justify Obesity Research

relying on Propol clinical studies to support its Lipozene weight loss claims." (*Id.* at ¶¶ 25, 26.)

Specifically, Fiber Research alleges that Obesity Research repeatedly says Lipozene is "clinically proven," when, in fact, the clinical studies it relies on are those using Shimizu's Propol.  (*Id.* at ¶¶ 50, 55, 57, 58-61.)  Lipozene, to the contrary, "contains poor-quality, cheap ingredients and adulterants that do not have the same functional chemical profile as Propol.  Hence, Lipozene does not have the weight loss benefits of Propol as demonstrated by Propol's clinical testing." (*Id.* at ¶ 65.) "Instead, there is no reliable clinical data supporting Lipozene's efficacy in . . . promoting weigh loss."  (*Id.* at ¶ 66.)  Additionally, Fiber Research alleges that Obesity Research falsely represents that at least one of the clinical studies is "sponsored by [Obesity Research]" and that Obesity Research falsely refers to one of the clinical studies of Propol as a "Lipozene Clinical Study," when in fact Lipozene was not involved in the study at all.  (*Id.* at ¶¶ 70-71.)  Finally, Fiber Research claims that Obesity Research falsely represents on its label that there are "[n]o known allergens in this product" when, in fact, there are quantities of sulfites in Lipozene such that an allergen warning is warranted.  (*Id.* at ¶ 67.)

"Pursuant to an exclusive sales contract with Shimizu, Fiber Research markets Propol in the United States."  (*Id.* at ¶ 28.)  Fiber Research is also "the assignee of Shimizu's legal rights of action in the United States for any damages incurred by Shimizu by virtue of any unlawful selling or marketing of products in unfair or unlawful competition with Propol." (*Id.* at ¶ 29.)  Fiber Research brings this action for injuries both "sustained directly, and as the legal assignee for injuries sustained by Shimizu."  (*Id.* at ¶ 30.)  "Fiber Research has been injured in its efforts to sell Propol as a result of Obesity Research's unfairly passing off its sub-standard, adulterated, unrefined Konjac root product as the same or substantially the same as that studied in clinical trials of Shimizu's Propol glucomannan (even going so far as to call these the 'Lipozene Clinical Studies.')  Fiber Research is also injured by the

1   loss of good will to Propol caused by Obesity Research's passing off an inferior
2   product as Propol." (*Id.* at ¶ 28.)

3       Fiber Research seeks: (1) a permanent injunction against Obesity Research
4   from falsely advertising, marketing, packaging, labeling, and/or selling Lipozene
5   using any false representations; (2) damages suffered by Fiber Research (directly and
6   as Shimizu's assignee) "as measured by Shimizu's lost sales to Obesity Research and
7   by Obestity [sic] Research's Lipozene profits"; (3) Obesity Research's profits
8   "attributable to its willful false advertising, unfair competition, and deceptive acts or
9   practices"; (4) treble damages under 15 U.S.C. §1117; and (5) attorney's fees and
10  costs. (*Id.* at ¶ 106.)

11  ## II.    LEGAL STANDARD

12      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
13  Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R.
14  Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court
15  must accept all factual allegations pleaded in the complaint as true and must construe
16  them and draw all reasonable inferences from them in favor of the nonmoving party.
17  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule
18  12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather,
19  it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*
20  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility
21  when the plaintiff pleads factual content that allows the court to draw the reasonable
22  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
23  556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint
24  pleads facts that are merely consistent with a defendant's liability, it stops short of
25  the line between possibility and plausibility of entitlement to relief." *Id.* (quoting
26  *Twombly*, 550 U.S. at 557) (internal quotations omitted).

27      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
28  relief' requires more than labels and conclusions, and a formulaic recitation of the

1   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting

2   *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).  A court need

3   not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.  Despite the deference

4   the court must pay to the plaintiff's allegations, it is not proper for the court to assume

5   that "the [plaintiff] can prove facts that it has not alleged or that the defendants have

6   violated the . . . law[] in ways that have not been alleged." *Associated Gen.*

7   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526

8   (1983).

9        When a claim is based on fraud or mistake, the circumstances surrounding the

10   fraud or mistake must be alleged with particularity.  Fed. R. Civ. P. 9(b).  If the

11   allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district

12   court may dismiss the claim.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107

13   (9th Cir. 2003).  To satisfy the particularity requirement of Rule 9(b), "[a]verments

14   of fraud must be accompanied by 'the who, what, when, where, and how' of the

15   misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d

16   616, 627 (9th Cir. 1997)).  Plaintiffs must plead enough facts to give defendants

17   notice of the time, place, and nature of the alleged fraud, together with the content of

18   any alleged misrepresentation and explain why it is false or misleading.  *See id.* at

19   1107.  The circumstances constituting the alleged fraud must "be specific enough to

20   give defendants notice of the particular misconduct . . . so that they can defend against

21   the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at

22   1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal

23   quotation marks omitted)); *see also In re GlenFed, Inc. Sec. Litig.*,  42 F.3d 1541,

24   1547 (9th Cir. 1994), superseded by statute on other grounds as stated in *Ronconi v.*

25   *Larkin*,  253 F.3d 423, 429 n. 6 (9th Cir. 2001).  "Malice, intent, knowledge, and

26   other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

27   ///

28   ///

III.    **DISCUSSION**

   A.    **Standing**

       1.    <u>Lanham Act</u>

Failure to allege sufficient statutory standing requires dismissal under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "'For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'" *Id.* at 1068 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (quoting 15 U.S.C. § 1125(a)(1)). The Supreme Court has determined that a statutory cause of action under the Act extends only to plaintiffs "whose interests 'fall within the zone of interests protected by the law invoked,'" *id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and "whose injuries are proximately caused by violations of the statute, *id.* at 1390. Therefore, to allege statutory standing under the Lanham Act, Fiber Research's Counterclaims must first meet the "zone of interest" test. *Id.* Second, Fiber Research must sufficiently allege that the injuries were proximately caused by a violation of the statute. *Id.*

The "zone of interest" test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the cause of action. *Id.* at 1389. "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id.* (citation and quotations omitted). In the false advertising context, Congress' goal was to protect persons engaged in commerce against unfair competition. *Id.* Thus, "to come within the zone

of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales" as opposed to an allegation a consumer or business was misled into purchasing disappointing or inferior products. *Id*. at 1390.

To establish proximate cause under section 1125(a), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 1391. "That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id*. Although it may be more difficult to establish proximate causation when the parties do not directly compete, there need not be an allegation that the parties are in direct competition with each other. *Id*. at 1392; *see also Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (finding that Merck had standing to bring a Lanham Act claim "[a]lthough Merck and Acella are not direct competitors, insofar as Merck does not produce finished consumer products, [where] Merck and Acella both produce competing sources of folate for use in dietary supplements"); *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Maya*, 658 F.3d at 1068 (citation and quotations omitted); *see also Luxul Tech. Inc.*, 78 F. Supp. 3d at 1170 ("At the pleading stage, plaintiff must allege an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." (citation omitted)).

In its FACC, Fiber Research alleges that it has an exclusive sales contract to sell Propol in the United States. (FACC at ¶ 28.) It alleges it has been injured in its efforts to sell Propol because Obesity Research is "unfairly passing off its sub-

standard, adulterated, unrefined Konjac root product as the same or substantially the same as that studied in clinical trials of . . . Propol." (*Id*. at ¶ 28.)  Thus, Fiber Research has sufficiently alleged that its commercial interests in reputation or sales have been damaged by Obesity Research's conduct, and its injuries fall with the zone of interest protected by the Lanham Act.  Additionally, Fiber Research claims that it has "been injured by the loss of good will to Propol caused by Obesity Research's passing off an inferior product as Propol." (*Id*.)  Thus, it has sufficiently alleged economic or reputation injury proximately caused by Obesity Research's deception.

Obesity Research argues that it is not in direct competition with Fiber Research because Propol is sold to manufacturers only as an ingredient, whereas Obesity Research sells directly to consumers.  However, as discussed above, there is no requirement that the parties be in direct competition with one another.  Fiber Research alleges its ability to sell Propol has been injured because of Obesity Research's allegedly false representations.  Therefore, the Court finds Fiber Research has alleged sufficient facts to establish standing under the Lanham Act.

## 2.   UCL and FAL

Proposition 64, passed in November 2004, narrowed the standing in California for either an unfair competition or a false advertising cause of action to those actually injured by a defendant's unlawful business practice.  *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010).  Pursuant to section 17204 of the California Business and Professions Code, only a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may seek relief under the UCL."  Cal. Bus. & Prof. Code § 17204.  Similarly, pursuant to section 17535 of the California Business and Professions Code, only a person "who has suffered injury in fact and has lost money or property as a result of a violation of" the FAL.  Cal. Bus. & Prof. Code § 17535.  Therefore, in order to bring a claim under the UCL or FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury

was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011).  A plaintiff must also establish that it has "personally suffered such harm." *Id*. at 323.

The economic injury must be an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id*. at 322.  The causation requirement does not require a plaintiff "to allege that the challenged misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* at 327. (citation and quotations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*. (citation omitted).

There are innumerable ways a plaintiff may demonstrate economic injury, including the following: "[a] plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id*. at 323.  Courts have also found "lost sales, revenue, market share, and asset value" sufficient to allege an economic injury. *Allergan, Inc., v. Athena Cosmetics*, 640 F.3d 1377, 1381, 1382 (Fed. Cir. 2011); *see also AngioScore, Inc. v. TriReme Medical, LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) (finding an alleged "injury to market share suffered as a result of a competitor's unfair business practice" to be a cognizable injury under the UCL); *Overstock.com v. Gradient Analytics, Inc*., 151 Cal. App. 4th 688, 716 (2007) (finding allegations of "diminution of value of . . . assets and decline in market capitalization and other vested interests" to satisfy the UCL injury in fact requirement).  There is no requirement that there be allegations of business dealings between the parties. *See Allergan, Inc.*, 640 F.3d at 1383.

Obesity Research first argues that Fiber Research lacks standing to assert either

– 9 –

a UCL or FAL claim because it seeks, in part, a non-restitutionary remedy.  Citing *Buckland v. Threshold Enters.*, 155 Cal. App. 4th 798 (2007) and *Citizens of Humanity v. Costco Wholesale Corp.*, 171 Cal. App. 4th 22 (2009), Obesity Research argues standing for UCL or FAL claims is limited to those who suffer losses of money or property entitling them to restitution.  However, ineligibility for restitution is not a basis for denying standing under either the UCL or FAL.  *See Kwikset Corp.*, 51 Cal. 4th at 335-36; *Clayworth*, 49 Cal. 4th at 789; *see also Allergan, Inc.*, 640 F.3d at 1381-82 (stating that *Kwikset* and *Clayworth* found that ineligibility for restitution is not a basis for denying standing and to the extent *Citizens* and *Buckland* concluded otherwise, they have been disapproved by the California Supreme Court).  Obesity Research's "argument conflates the issue of standing with the issue of the remedies to which a party may be entitled.  That a party may ultimately be unable to prove a right to . . . restitution . . . does not demonstrate that it lacks standing to argue for its entitlement to them."  *Clayworth*, 49 Cal. 4th at 789.

Therefore, to the extent Fiber Research alleges it has been directly injured in its efforts to sell Propol, in that it lost sales, market share, and goodwill,[1] because of Obesity Research's "unfairly passing off its sub-standard, adulterated, unrefined Konjac root product as the same or substantially the same as that studied in clinical trials of . . . Propol," the Court finds it has sufficiently alleged standing.

Obesity Research next argues that Fiber Research lacks standing to prosecute the UCL and FAL claims on behalf of Shimizu, who is not a party to this action.  The Court agrees.  An uninjured assignee does not have standing to sue in a representative capacity.  *Amalgamated Transit Union, Local 1756, AFL-CIO v. Super. Ct.*, 46 Cal. 4th 993, 1002 (2009) ("To allow a *noninjured assignee* of an unfair competition claim to stand in the shoes of the *original, injured claimant* would confer standing on the

---

[1]        Goodwill is a protected property interest and harm to goodwill is a cognizable injury.  *See Sorrano's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1316 (9th Cir. 1989).

assignee in direct violation of the express statutory requirement in the unfair competition law." (emphasis in original)); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 898-99 (C.D. Cal. 2012) (to the extent assignees suffered their own independent and direct injuries as a result of the unfair competition or false advertising, they may pursue their own UCL/FAL claims). Therefore, to the extent that Fiber Research alleges it was injured indirectly as an assignee of Shimizu, the Court finds it lacks standing.  Fiber Research may only pursue claims under the UCL and FAL with respect to injuries it has suffered directly as the exclusive seller of Propol in the United States.

### B.     Failure to State a Claim

#### 1.     Lanham Act

Fiber Research's first cause of action alleges a violation of the Lanham Act, 15 U.S.C. §1125(a)(1), including false advertising, unfair competition, and false designation.  (FACC at ¶¶ 79-86.)  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. *See Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994); 15 U.S.C. § 1125(a).  To establish a false advertising claim under the Lanham Act, a plaintiff must allege: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was

literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.*

In order to succeed on a false designation of origin claim under the Lanham Act, a plaintiff must show: "(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts." *Summit Tech., Inc. v. High-Line Med. Instruments, Co*., 933 F. Supp. 918, 928 (C.D. Cal. 1996); *see also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); *Luxul Tech. Inc.*, 78 F. Supp. 3d at 1170. "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). The likelihood of confusion must be probable, not just possible. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996).

Even though the allegations in this case do not involve trademark infringement, in order to determine the likelihood of confusion, courts use the trademark infringement analysis. *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 781 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?"); *Spearmint Rhino Cos. Worldwide, Inc. v. Chiappa Firearms, Ltd*., No. CV 11-05682-R-MAN, 2012 WL 8962882, at *2 (C.D. Cal. Jan. 20, 2012) (citing *Walter v. Mattel*, 210 F.3d 1108 (9th Cir. 2000)); *Celebrity Chefs Tour, LLC v. Macy's Inc.,* 16 F. Supp. 3d 1141, 1153 (S.D. Cal. 2014) (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999)) (a

– 12 –

claim for false designation of origin is subject to the same standard as trademark infringement but does not require the mark to be registered).

Thus, the Court may look to the *Sleekcraft* factors in its analysis: (1) strength of the mark, (2) relatedness of the goods, (3) similarity of sight, sound and meaning, (4) evidence of actual confusion, (5) marketing channels, (6) type of goods and purchaser care, (7) intent and (8) likelihood of expansion. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810, n. 19 (9th Cir. 2003). As Fiber Research points out, several of these factors are uniquely applicable to trademark infringement and, thus, are not helpful here, but the overall framework is helpful to the analysis. *See E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) ("This list of factors . . . is neither exhaustive nor exclusive. Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion."); *Entrepreneur Media, Inc., v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) ("Although the *Sleekcraft* test plays an important role in the analysis of whether a likelihood of confusion exists, it is the totality of facts in a given case that is dispositive." (citation and internal quotations omitted)).

Obesity Research argues the Lanham Act cause of action should be dismissed for failure to state a claim because: (1) the allegations regarding likelihood of confusion are conclusory; (2) the cause of action fails to allege Propol is used in U.S. commerce; (3) the FACC fails to allege the notice required for treble damages under 15 U.S.C. §1111; (4) the alleged false statements are not false or misleading; and (5) the FACC fails to allege plausible facts showing Fiber Research suffered economic injury.

With respect to likelihood of confusion, the Court finds Fiber Research alleges sufficient relation and similarity between Propol and Lipozene to justify the conclusion that confusion is likely. Fiber Research alleges that Lipozene specifically uses the Propol research studies to bolster its claims, without justification.

1   Furthermore, the type of purchaser, those buying weight loss supplements, is not
2   likely to have the resources to analyze whether the content of the supplements are as
3   represented or not.   Fiber Research alleges that Obesity Research makes these
4   misleading statements intentionally to encourage customer confusion.  Therefore, the
5   allegations of "likelihood of confusion" are sufficient to support Fiber Research's
6   Lanham Act claims at this stage.

7       Furthermore, the Court finds Fiber Research sufficiently alleges both Lipozene
8   and Propol are used in commerce in the United States.  (*See* FACC at ¶ 25 ("Lipozene
9   has become the United States' best-selling weight loss product."); and ¶ 28 ("Fiber
10  Research markets Propol in the United States.").)   This is sufficient to meet the
11  requirement under 15 U.S.C. §1125(a)(1) that the goods or services at issue be used
12  "in commerce."  Fiber Research need not allege that Obesity Research uses the Propol
13  trademark in commerce in a false designation of origin claim.  *See Summit Tech.,*
14  *Inc.*, 933 F. Supp. at 928; *Luxul Tech. Inc.*, 78 F. Supp. 3d at 1170.

15      Obesity Research's argument that Fiber Research failed to allege notice under
16  15 U.S.C. §1111[2] is not well-founded.  First, this section, by its terms, applies to an
17  action for trademark infringement, which is not the case here.  Second, Obesity
18  Research, in its Complaint, alleges Propol was listed, with the letter R enclosed within
19  a circle, in the letter sent to Obesity Research on March 10, 2015 prior to this suit
20  being initiated.  (Compl. at ¶¶ 4, 10.)  Therefore, Obesity Research's argument on
21  this ground must fail.

22      The Court further finds that Fiber Research has sufficiently alleged that the
23  purported false statements are false or misleading under its false advertising claim.

24  ─────────────────────

25  [2]      Section 1111 requires that "a registrant of a mark registered in the Patent
    and Trademark Office . . . give notice that his mark is registered by … the letter R
26  enclosed within a circle" prior to bringing any "suit for infringement."  15 U.S.C. §
    1111.  However, "section 1111 is not a defense to infringement, but a limitation on
27  remedies."  *mophie, Inc. v. Shah*, No. SA CV 13-01321-DMG(JEMx), 2014 WL
    10988347, at *22 (C.D. Cal. Nov. 12, 2014) (citing *United States v. Sung*, 51 F.3d
28  92, 94 (7th Cir. 1995)).

The FACC alleges that since late 2006, Obesity Research has been marketing and advertising Lipozene as being "clinically proven" to help reduce body fat and weight, in reliance on studies that tested Propol, and not Lipozene, which does not have "the same functional chemical profile as Propol." (*See* FACC at ¶¶ 44-73.)   One of the studies the FACC alleges Lipozene relies on is a 2004 study entitled "A Randomized Double-Blinded Placebo-Controlled Study of Overweight Adults Comparing the Safety and Efficacy of a Highly Viscous Glucomannan Dietary Supplement (*Propol*™)" ("Kaats Study"). (*See* FACC at ¶ 46, Exh. 2.) The other is a 1984 study entitled "Effect of Glucomannan on Obese Patients: A Clinical Study," which tested "Glucomannan fiber (from konjac root)" ("Walsh Study"). (*See* FACC at ¶ 45, Exh. 1.) Among the allegations in the FACC is that Obesity Research's Lipozene website has been falsely characterizing the Walsh Study as a "Lipozene Clinical Study." (*Id.* at ¶ 71.)

Obesity Research argues that the alleged false statements are not false and misleading because the Walsh Study does not explicitly say it used Propol in its testing, and the FACC insufficiently alleges it advertised using the Kaats Study. However, the FACC alleges that the Walsh Study tested Propol, which Fiber Research defines as glucomannan extracted from Konjac, a root vegetable, by means of a propriety, patented process. (FACC at ¶¶ 24, 45, 60-61.) At this stage, the Court finds these allegations sufficient. Furthermore, with respect to the Kaats Study, the FACC alleges that many Lipozene commercials "contain textual, small-print sentences stating that participants in the clinical study to which the commercials refer lost 4.93 pounds, of which 3.86 was body fat (thus forming Obesity Research's '78% was body fat' figure: $3.86 \div 4.93 = 0.78296$)" and this was the exact finding in the Kaats Study. (FACC at ¶ 54; *see also* FACC at ¶ 55 ("Obesity Research highlighted the fact that the study on which it relies was conducted during the holiday season, as was the Kaats [S]tudy"); ¶ 56 (Obesity Research commercials state "[c]linical data shows that the amount of weight loss experienced between the active and placebo

1  group was 4.93 lbs. and of the 4.93 lbs of weight loss experienced by the active group

2  3.86 lbs was body fat.")  The Court also finds these allegations sufficient at this stage.

3      Obesity Research further argues that there is nothing false or misleading about

4  its statement on its website that "[n]umerous clinical studies confirm Lipozene's

5  active ingredient, Glucomannan, is safe and effective for weight loss and body fat

6  loss."  In other words, Obesity Research is claiming that the Glucomannan used in its

7  product is safe and effective for weight loss and body fat loss.  Fiber Research alleges

8  that a chemical analysis of Lipozene by Japan Food Research Laboratories, which it

9  attaches to its FACC, "demonstrates that Lipozene, unlike Propol glucomannan or a

10 substantial equivalent, contains poor-quality, cheap ingredients and adulterants that

11 do not have the same functional chemical profile as Propol.  Hence, Lipozene does

12 not have the weight loss benefits of Propol as demonstrated by Propol's clinical

13 testing," which Fiber Research is relying on in making its statement.  (*See* FACC at

14 ¶¶ 64-66.)   Accordingly, the Court finds these allegations sufficient to plausibly

15 allege this statement is false or misleading.

16     Lastly, as discussed above under the Court's standing discussion, the Court

17 finds the FACC alleges plausible facts showing Fiber Research has been or is likely

18 to suffer economic injury.

19             2.   UCL

20     The UCL prohibits, and provides civil remedies for, unfair competition, which

21 it defines as "any unlawful, unfair or fraudulent business act or practice and unfair,

22 deceptive, untrue or misleading advertising."  *Kwikset Corp*., 51 Cal. 4th at 322

23 (quoting Cal. Bus. & Prof. Code § 17200).  "Because the statute is written in the

24 disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2)

25 unfair, (3) fraudulent, or (4) in violation of section 17500," *i.e.*, the FAL.  *Lozano v.*

26 *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Obesity Research

27 moves to dismiss Fiber Research's UCL claim to the extent Fiber Research alleges a

28 violation of the "unfair" prong, arguing that it relies on an outdated definition of

"unfair," and the "unlawful" and "fraudulent" prongs, arguing that the FACC's allegations are insufficiently specific to pass muster under Rule 9(b) of the Federal Rules of Civil Procedure.

### a.   *Fraudulent prong*

To state a claim under the UCL's "fraudulent" prong, Fiber Research must plead that Obesity Research's allegedly fraudulent business practice is one in which "members of the public are likely to be deceived." *Schnall v. Hertz Corp*., 78 Cal. App. 4th 1144, 1167 (2000).  "Unless the challenged conduct targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." *Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal. App. 4th 638, 645 (2008) (quotations and citation omitted).

Obesity Research argues the Counterclaims are pled with insufficient specificity under Rule 9(b).  Because this claim is based on fraud, the circumstances surrounding the fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to UCL claims based on fraud).  The FACC goes into great detail as to who, what, and when the fraudulent conduct was allegedly committed, even attaching copies of the allegedly fraudulent marketing materials.  Obesity Research's argument on this ground must fail.

### b.   *Unlawful prong*

The UCL's "unlawful" prong is essentially an incorporation-by-reference provision.  *See Cel-Tech*, 20 Cal. 4th at 180 ("By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." (citations and internal quotation marks omitted)).  "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." *Plaxcencia v. Lending 1st Mortg*., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing *Saunders v. Super. Ct*., 27 Cal. App. 4th 832, 838-39 (1994)).  "When a statutory claim fails, a derivative UCL claim also fails."

1    *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012).

2         Fiber Research alleges Obesity Research's conduct was "unlawful" because it

3    violates the Lanham Act, the FFDCA Act, the FAL, and the Sherman Act. (FFAC at

4    ¶ 90.)  Again, Obesity Research argues this is insufficient particularity under Rule

5    9(b).  The Court disagrees.  As discussed above, the FACC lays out in great detail

6    how each of these Acts were allegedly violated.  Furthermore, this Court has already

7    found the allegations are sufficient to constitute a violation of the Lanham Act.

8    Hence Obesity Research's motion on this ground must also fail.

9                        c.    *Unfair prong*

10        Under the UCL, "[w]hen a plaintiff who claims to have suffered injury from a

11   direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair'

12   in that section means conduct that threatens an incipient violation of an antitrust law,

13   or violates the policy or spirit of one of those laws because its effects are comparable

14   to or the same as a violation of the law, or otherwise significantly threatens or harms

15   competition." *Cel-Tech*, 20 Cal. 4th at 187.[3]  Thus, Fiber Research must allege that

16   Obesity Research's conduct "(1) violates the policy or spirit of the antitrust laws

17   because the effect of the conduct is comparable to or the same as a violation of the

18   antitrust laws, or (2) it otherwise significantly threatens or harms competition."

19   *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 662

20   (2005) (citing *Cel-Tech*, 20 Cal. 4th at 187).  Notably, "[i]njury to a competitor is not

21   equivalent to injury to competition; only the latter is the proper focus of antitrust

22   laws." *Cel-Tech*, 20 Cal. 4th at 186.  Acts that violate the spirit of the antitrust laws

23   include "horizontal price fixing, exclusive dealing, or monopolization."  *See*

24   ───────────────

25        [3]    Fiber Research argues this test does not apply, relying on a footnote in
     *Cel-Tech*, which states this test does not apply to "actions by consumers or by

26   competitors alleging other kinds of violations of the unfair competition law such as
     "fraudulent" or "unlawful" business practices or "unfair, deceptive, untrue or

27   misleading advertising." *Cel-Tech*, 20 Cal. 4th at 187, n. 12.  The Court disagrees.
     This is not an action by a consumer and the Court is not applying this test to the other

28   prongs of the UCL.

1   *Celebrity Chefs Tour, LLC v. Macy's Inc*., 16 F. Supp. 3d 1141, 1156 (S.D. Cal.

2   2014).

3        In its opposition to the motion, Fiber Research states that the FACC "does not

4   allege 'anticompetitive practices.'"  (Opp. at p. 18.)  The Court agrees.  Although the

5   purpose of the Lanham Act is to protect persons engaged in commerce against unfair

6   competition,  *POM Wonderful LLC v. Coca-Cola Co*., 134 S. Ct. 2228, 2234 (2014),

7   Plaintiff only alleges harm to its own commercial interests, rather than harm to

8   competition.  *See Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d

9   1099, 1117 (C.D. Cal. 2001) (finding the plaintiff could not prevail where the

10   evidence merely indicated harm to its commercial interests rather than harm to

11   competition).  Accordingly, the Court grants Obesity Research's motion to dismiss

12   Fiber Research's claim under the "unfair" prong of the UCL.

13     **C.   Laches**

14        Obesity Research argues that all of Fiber Research's Counterclaims are barred

15   by laches because they allege Obesity Research began marketing Lipozene in 2006,

16   and many of the advertisements complained of aired in 2006 and 2007, and this suit

17   was not filed until 2015.  "Laches is an equitable defense that prevents a plaintiff,

18   who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his

19   rights."  *Danjaq, LLC v. Sony Corp*., 263 F.3d 942, 950-51 (9th Cir. 2001) (internal

20   quotations and citation omitted).  Laches is a valid defense to Lanham Act claims,

21   including those for false advertising.  *Jarrow Formulas, Inc., v Nutrition Now, Inc*.,

22   304 F.3d 829, 835 (9th Cir. 2002).

23        "To demonstrate laches, the defendant must prove both an unreasonable delay

24   by the plaintiff and prejudice to itself."  *Danjaq*, 263 F. 3d at 951 (quotations

25   omitted).  The delay is measured from the time a plaintiff knew, or should have

26   known, about a cause of action. *Jarrow*, 304 F.3d at 838; *see also Danjaq*, 263 F. 3d

27   at 952. "[I]f the plaintiff legitimately was unaware of the defendant's conduct, laches

28   is no bar to suit." *Id*.  When determining reasonableness, courts look at the cause of

1  delay. *Danjaq*, 263 F. 3d at 954.  A defendant can demonstrate prejudice in two
2  ways: either evidentiary, showing that evidence has been lost or memories have
3  faded, or expectations-based, showing that the defendant has taken actions or suffered
4  consequences it would not have had plaintiff brought timely suit. *Id*. at 955.

5       "Because laches is an equitable remedy, laches will not apply if the public has
6  a strong interest in having the suit proceed." *Jarrow*, 304 F.3d at 840.  However,
7  "[t]he public's interest will trump laches only when the suit concerns allegations that
8  the product is harmful or otherwise a threat to public safety and well being." *Id*. at
9  841.  Furthermore, a party with unclean hands may not assert laches. *Id*.  This bar to
10  laches for unclean hands applies "only if the court is left with a firm conviction that
11  the defendant acted with a fraudulent intent in making the challenged claims." *Id*. at
12  842.

13       A quick review of this law makes it obvious how inappropriate the motion is
14  at this stage of the proceedings.  The issue is primarily a fact-based issue. *See Dirk*
15  *Ter Haar v. Seaboard Oil Co. of Del.*, 1 F.R.D. 598, 598 (S.D. Cal. 1940) ("The
16  defense of laches . . . may not be asserted by motion to dismiss, but should be set
17  forth affirmatively in defendant's answer"); *24/7 Customer, Inc. v. 24-7 Intouch*, No.
18  5:14-cv-02561-EJD, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015) ("laches
19  and statute of limitations defenses often require a fact-intensive investigation that is
20  inappropriate on a motion to dismiss.")  Looking at the FACC and assuming
21  everything in it is true, there are no allegations that support Obesity Research's claim
22  of laches.  There is no allegation as to when Fiber Research knew or should have
23  known of the cause of action.  If there was a delay, there is no information as to the
24  cause of delay.  There is no evidence or allegation that Obesity Research has been in
25  any way prejudiced by any delay.  Finally, Fiber Research has alleged an affirmative
26  defense of unclean hands.  It will require fact-based discovery to determine whether
27  evidence supports either a public interest that trumps the defense of laches or
28  fraudulent intent on the part of Obesity Research.  The Court agrees with Fiber

1   Research.  The motion to dismiss based on laches is premature.

2   **IV.    CONCLUSION**

3           For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN**

4   **PART** Obesity Research's Motion to Dismiss the First Amended Counterclaims

5   (ECF No. 43).   The Court **GRANTS** Obesity Research's motion to the extent it

6   moves to limit Fiber Research's claims under the UCL and FAL to damages it

7   suffered directly, as opposed to indirectly as an assignee of Shimizu, and to the extent

8   it moves to dismiss Fiber Research's claim under the "unfair" prong of the UCL.

9   However, in all other respects, Obesity Research's motion is **DENIED**.

10          **IT IS SO ORDERED.**

11

12  **DATED:  February 25, 2016**

13                                                                 Hon. Cynthia Bashant
                                                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28