**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**PRICE PARKINSON & KERR LLP**
JASON KERR (*pro hac vice*)
*jasonkerr@ppktrial.com*
CHRISTOPHER SULLIVAN (*pro hac vice*)
*sullivan@ppktrial.com*
RONALD F. PRICE (*pro hac vice*)
*ronprice@ppktrial.com*
5742 West Harold Gatty Drive
Salt Lake City, Utah 84116
Phone: (801) 530-2900

*Counsel for Defendant and Counterclaim-Plaintiff Fiber Research International, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OBESITY RESEARCH INSTITUTE, LLC, <br><br> Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> FIBER RESEARCH INTERNATIONAL, LLC, <br><br> Defendant & Counterclaim-Plaintiff. | Case No. 15-cv-595-BAS-MDD <br><br> **FIBER RESEARCH'S OPPOSITION TO OBESITY RESEARCH'S MOTION TO SEAL THE KAATS STUDY (DKT. NO. 156)** <br><br> **REDACTED FOR PUBLIC FILING** <br><br> Judge: Hon. Cynthia Bashant <br> Date: April 18, 2016 <br><br> NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION.....................................................................................................................1

FACTS ......................................................................................................................................4

LEGAL STANDARD ...............................................................................................................9

ARGUMENT ..........................................................................................................................10

    I.    OBESITY RESEARCH HAS NO RIGHT TO MAKE THE REQUEST TO SEAL................................................................................................10

        A.    Obesity Research Does Not "Own" the Kaats Study...............................10

        B.    Obesity Research Did Not Maintain the Secrecy of the Study...............11

    II.    OBESITY RESEARCH HAS NOT SHOWN "COMPELLING REASONS" TO SEAL THE KAATS STUDY BECAUSE IT HAS NOT SHOWN SPECIFIC FACTS DEMONSTRATING THAT THE KAATS STUDY HAS BEEN USED FOR IMPROPER PURPOSES.............12

CONCLUSION .......................................................................................................................13

i

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

# TABLE OF AUTHORITIES

**Cases**

*ATM Exp., Inc. v. ATM Exp., Inc.*,
  2008 WL 4997600 (S.D. Cal. Nov. 20, 2008) ............................................................. 9, 10

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir.1992) ........................................................................................ 10

*BT Collective v. IP Holdings, LLC*,
  2011 WL 5873388 (S.D. Cal. Nov. 23, 2011) .................................................................. 6

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir. 1995) .......................................................................................... 9

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  2011 WL 864897 (S.D. Cal. Mar. 11, 2011) .................................................................... 6

*Kamakana v. City & County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ........................................................................................ 6

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................................ 6

*Pintos v. Pac. Creditors Ass'n*,
  605 F.3d 665 (9th Cir. 2010) .......................................................................................... 6

*Press-Enterprise Co. v. Super. Ct.*,
  464 U.S. 501 (1985) ........................................................................................................ 7

*Rich v. Shrader*,
  2013 WL 6028305 (S.D. Cal. Nov. 13, 2013) .................................................................. 9

*Robert Half Intern., Inc. v. Ainsworth*,
  2015 WL 4394805 (S.D. Cal. July 15, 2015) .................................................................. 6

*Shimmick Constr. Co., Inc./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2015 WL 5827396 (S.D. Cal. Oct. 5, 2015) .............................................. 6

ii

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

*Victorianne v. County of San Diego*,
 2015 WL 3489708 (S.D. Cal. June 1, 2015)..........................................................................6

## INTRODUCTION

Obesity Research asks the Court to seal the Kaats study that was publicly disclosed over a decade ago, then distributed to numerous people over the past 10 years, and has also been attached to Fiber Research's publicly-available Counterclaims on the Court's docket for a year (*see* Dkt. No. 41, Ex. 3). Obesity Research's motion to now seal that document from the Court's docket should be denied.

First, Obesity Research does *not* "own" the Kaats study. In representing that it "commissioned, and paid for the Kaats study with its then-manufacturer Natural Alternatives, Inc. ('NAI')" (Mot. at 2), Obesity Research neglects to mention that it never entered into a written agreement with Dr. Kaats, who authored the study (much less a written "commissioned work agreement"). The study is not one of the 9 enumerated types of "works made for hire" and in any event there is no "written instrument" signed by the author of the work identifying the study as a "work made for hire" or otherwise expressly assigning ownership (or separate publication rights). As a matter of indisputable, black letter law, Dr. Kaats himself is the sole and exclusive owner of all right, title and interest in and to the study, including copyright ownership and hence reproduction, distribution and publication rights.

Second, in representing that it "owns" the Kaats study as part of its agreement with NAI, Obesity Research misrepresents that it paid the entire expense of the study and that it owns all (100%) rights, when in fact its agreement with NAI to co-sponsor the study required each company to pay for 50% of the study in return for each company having only a 50% interest merely in the "data" of the study (with no mention of publication rights). Obesity Research conceals the fact that it breached its agreement with NAI by failing even to pay its 50% share for the study as required, that NAI ended up having to pay 75% of the expense, that Obesity Research also breached the agreement by failing to involve NAI in marketing decisions as required, and that the agreement provided that even its 50% interest in the study's "data" would revert to NAI upon breach of an underlying manufacturing agreement (which NAI ended up terminating after repeated issues with Obesity Research). As a result, it is

1

highly suspect that Obesity Research owns *any* interest in the study's "data" as between Obesity Research and NAI, and any such interest cannot possibly be more than 50% (since NAI owns at least 50%, if not 75% or even the full 100% as a result of Obesity Research's breach of the agreement). More importantly, any conceivable interest in "data" that might exist as between Obesity Research and NAI has no relevance to publication rights, which have always been the sole and exclusive property of Dr. Kaats, as a matter of law.

Third, even if Obesity Research otherwise had some sort of proprietary claim to publication rights for the Kaats study, it cannot show "compelling reasons" to now seal the document from the Court's docket after it has been publicly available on the docket of this case for a year, without any actual or apparent harm to Obesity Research.

Fourth, contrary to its assertion that it has sought to protect the confidentiality of the study, Obesity Research (through NAI) paid Dr. Kaats to publicly present in PowerPoint format the study's exact findings at an academic conference 12 years ago, and then to convert the form of the study to a publishable manuscript specifically for publication. In connection with his presentation at the conference, Dr. Kaats sent the study to all attendees who requested it. Dr. Kaats and one of his co-investigators, Dr. Preuss, have also distributed copies of the study over the years to others, including Fiber Research as well as the Federal Trade Commission (which obtained a court-ordered Consent Judgment against Obesity Research, prohibiting false and misleading advertising and deceptive trade practices).

Fifth, the study has already been distributed for peer review, and disclosed to and accepted for publication by the highly respected, scientific, peer-reviewed *Journal of the American College of Nutrition*. And the study's abstract has been available throughout the world on PubMed.gov, a free, searchable, computerized database maintained by the United States National Library of Medicine at the National Institutes of Health, containing studies that meet the highest quality control scientific publishing standards.

2

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

Finally, Obesity Research does not even sell a product that was the subject of the Kaats study, and therefore cannot conceivably demonstrate any potential commercial harm from the Kaats study continuing to being publicly available on the Court's docket.

Simply stated, Obesity Research does not and cannot provide any legitimate justification (much less "compelling reasons" or even just good cause) for now belatedly sealing the Kaats 2004 study. This therefore begs the question why Obesity Research has brought this motion. Obesity Research's attorneys have repeatedly contacted Dr. Kaats, Dr. Preuss, and the Journal of the American College of Nutrition to stop the Journal from publishing the study. This reached a fever pitch just a few months ago, with Obesity Research's in-house counsel threatening the Journal with a huge lawsuit, on the basis of Obesity Research's false claims of "ownership" of the study. The intimidation worked. Despite the study having been rigorously peer-reviewed, accepted for publication, and the abstract posted on PubMed.gov, the Journal has decided to await a court ruling as to ownership of publication rights.

Without disclosing to the Court its real motivation in bringing this motion, Obesity Research hopes that the Court will seal the study on its docket based on an incorrect finding that Obesity Research is the "owner" of the study's publication rights, despite all evidence on the subject demonstrating just the opposite. With the hammer of a court finding of its "ownership," Obesity Research likely will force the Journal to agree never to publish the study (and perhaps then try to convince PubMed.gov to remove the study from its database).

And the reason for that is clear. Since the Kaats study is the *only* study supporting any fat loss product claims upon which consumers rely in purchasing glucomannan dietary fiber products, Obesity Research is desperate to stop consumers and other competitors from easily accessing the study in order to evaluate the veracity of Obesity Research's weight loss advertising claims. And Obesity Research's concern about avoiding other legal claims against it in the future is well founded—after a year of litigation, with Fiber Research's

3

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

unfettered access to the Kaats study, this case is chock-full of evidence demonstrating Obesity Research's fraudulent use of the Kaats study as support for Lipozene weight loss claims.

## **FACTS**

Before changing its name in December 2003, Obesity Research was Fiber Thin, LLC. (*See* Ex. 1,[1] NAI120.) In late 2002, it entered into an agreement with contract manufacturer NAI, to manufacture a fiber-based weight loss supplement also called Fiber Thin. (Ex. 2, NAI54-81.) NAI had a pre-existing agreement to source all glucomannan from Shimizu (Ex. 3, ORI904-17), and did so for the Fiber Thin product, whose formulation called for ███████████████████████████████████████████████ (Ex. 4, ORI923; Ex. 5, Ayres Dep. Tr. 149:3-15).

In mid-2003, Fiber Thin and NAI agreed to jointly fund a clinical study, hoping to support marketing claims for Fiber Thin. NAI hired Dr. Gilbert Kaats and his private clinical research organization, Health & Medical Research Foundation. Only NAI interacted with Dr. Kaats, who was unaware of Obesity Research's involvement until much later. (Ex. 6, Kaats Dep. Tr. 106:20-107:4, 325:13-326:25; *see also* Ex. 7, KAATS120.) The study was projected to cost $104,550. (Ex. 8, NAI214.)

Fiber Thin and NAI papered their agreement, as between themselves (not including Dr. Kaats as a signatory), in a January 6, 2004 letter agreement. (Ex. 10, ORI184, "January 2004 agreement.") It provided that "[t]he costs associated with the study will be paid equally between the parties," with each party obligated to pay $52,275, and with "[h]alf the total amount [] due now per party ($26,137.50), [and] the other half [] due upon the completion of the study." (*Id.* at ¶ 1.) The parties agreed they would "mutually approve all marketing claims and the content of any programming as well as any advertising for products containing Propol marketed by Fiber Thin, LLC or its management." (*Id.* at ¶ 3.) It also provided that "NAI will own 50% of the data sequestered from the study," and "Fiber Thin, LLC will own the other

---

[1] All references to "Ex. __" are to the concurrently filed Declaration of Jack Fitzgerald.

4

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

50% as long as the existing contract between the parties is not breached for any reason. If the contract is breached, Fiber Thin's 50% ownership will default to NAI." (*Id*. at ¶ 3.)

NAI had previously worked with Dr. Kaats, and apparently they did not enter into a formal written agreement for the clinical study. However, two months before the study, NAI explained to Dr. Kaats that, because leading medical journals would not publish a study that does not comply with certain well-defined, internationally-accepted standards for scientific publication (concerning sponsorship, authorship, accountability, and publication ethics), NAI was concerned about paying for the study if it would not be conducted in compliance with those standards for publication, namely, those set forth in the *Statement on Publication Ethics by the International Committee of Medical Journal Editors 2001 Statement on Publication Ethics for Sponsorship, Authorship and Accountability*, published by the International Committee of Medical Journal Editors. Dr. Kaats and Dr. John Wise, of NAI, agreed to conduct the study in strict accordance with those standards. (Kaats Decl. ¶ 3.)

Significantly relevant to the present issues, the standards include an express provision as to ownership of all intellectual property rights as between author and sponsor, namely that the author owns all intellectual property rights (which necessarily includes the reproduction, publication, and distribution rights under United States copyright law). (Ex. 6, Kaats Dep. Tr. 50:13-61:16, 87:8-89:9, 93:11-94:19; *see also* Ex. 9, KAATS2452-57 ("Authorship means both accountability and independence. A submitted manuscript is the intellectual property of its authors, not the study sponsor.").

NAI paid its full share for the study, $52,275. (Ex. 11, NAI213.) Fiber Thin paid half its half-share. (Ex. 12, NAI199.) Although this left Fiber Thin obligated to pay another $26,137.50 (*see* Ex. 10, ORI184; Ex. 13, NAI195), it ultimately failed to do so, forcing NAI to pay Fiber Thin's remaining $26,137.50. (*See* Ex. 14, NAI194; *see also* Ex. 15, NAI196-97.)

Dr. Kaats completed a Technical Report and sent it to NAI in June 2004. That month, at NAI's request, in order to be prepared for publication, Dr. Kaats sent NAI a copy of the

5

publication standards from the International Committee of Medical Journal Editors that NAI previously required Dr. Kaats to agree to follow. (Kaats Decl. ¶ 5.) In July 2004, Dr. Kaats requested NAI fund the publication of the study. NAI declined but did not provide a reason. (Ex. 6, Kaats Dep. Tr. 318:20-319:23, 321:2-8.)

In October 2004, Obesity Research (through NAI) paid Dr. Kaats $2,751.60 in travel expenses to present the findings at the November 2004 North American Association for the Study of Obesity (NAASO). (Kaats Decl. ¶ 6; Ex. 6, Kaats Dep. Tr. 115:5-116:8, 325:13-326:25; *see also* Exs. 16-18, KAATS5-26, 771-72, 1537.) At NAASO, Dr. Kaats presented using a 20-page PowerPoint document detailing the study, its findings, and its conclusions. (Ex. 16, KAATS5-26.) He provided full copies of the Technical Report to any conference attendees who requested it, and to numerous people over the past 10 years. (Kaats Decl. ¶ 6.)

Following the presentation, Obesity Research paid Dr. Kaats around $12,000 to reformat the study's technical report into a publishable-form manuscript for a peer-reviewed journal. (Ex. 6, Kaats Dep. Tr. 327:1-328:7; Ex. 17, KAATS771-72.) Dr. Kaats worked on the manuscript through January 2005. (Ex. 6, Kaats Dep. Tr. 328:8-13.)

On February 10, 2005, NAI terminated its Manufacturing Agreement with Obesity Research. (Exs. 19-20, NAI115, 233.) In June 2005, Dr. Kaats responded to Obesity Research's inquiry as to the status, writing "[i]n response to your earlier questions about the status of the manuscript, I was notified by [NAI] that you no longer purchase glucomannan from them." (Ex. 21, ORI173.)

Combined with the events surrounding the FTC's lawsuit against the company, Dr. Kaats was concerned about further involvement with Obesity Research. For many years following this, one of the study's co-investigators, Dr. Preuss, prodded Dr. Kaats to publish the study in in a peer-reviewed journal. Finally, Dr. Preuss convinced Dr. Kaats that the study made important enough contributions to science, that it should be published, particularly as it demonstrated the importance of controlling for compliance, the advantages of using a trustee for the study's double-blind component, and showed the benefits of measuring body

composition changes, rather than merely pounds lost. (Ex. 6, Kaats Dep. Tr. 89:20-92:18, 143:14-144:17.)

In the Fall of 2014, Dr. Kaats recommenced working on the manuscript, which was submitted to peer review in March or April 2015. (*Id.* 142:7-143:2.) The article was then accepted for publication in the Journal of the American College of Nutrition. (Kaats Decl. ¶ 10.) Although by operation of law, Dr. Kaats owned all publication rights (as further confirmed by the International Committee of Medical Journal Editors' publication standards to which Dr. Kaats and NAI had agreed), out of an abundance of caution, because the study had been funded by NAI, and there was no formal written agreement with NAI, the Journal asked Dr. Kaats to obtain NAI's permission. (*Id.* 93:18-94:18.)

In April 2015, a month after this case was filed, Obesity Research's outside regulatory attorney, William Rothbard, called Dr. Kaats to ask him about the study, without mentioning the present case based on his study. During the call, Dr. Kaats informed him that the study was in the process of being peer reviewed for publication. (*Id.* 106:9-13; Ex. 22, KAATS1680-81.)

On June 18, 2015, Dr. Kaats wrote to NAI, attaching "a copy of a manuscript that has been accepted for publication," and repeating the Journal's request that, "[s]ince it was funded by NAI, we need your permission to publish it." (Ex. 23, KAATS73-74.) NAI responded that it would "do some checking to see whether we provided glucomannan obtained from a specific vendor of ours who has a patent on their product and if so, perhaps they need to be involved as well," and asked Dr. Kaats, "who at NAI provided the product . . . and when/what year," which "will help . . . [NAI] know where to dig." Dr. Kaats found a "note that the product was provided by 'Shimizu Chemical Company in Japan, the supplier of Propol glucomannan.'" (Ex. 24, KAATS153-55.)

NAI forwarded Dr. Kaats' request to Shimizu, asking its approval for the footnote describing the material studied, and its permission to publish. Shimizu agreed, and on July 30, 2015, NAI sent authorization to Dr. Kaats. (Ex. 25, KAATS163-67.) The study was then

7

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

scheduled to be published by the Journal online in November 2015, and the print version in the Journal's January 2016 volume. (Ex. 26, KAATS269-72 at KAATS271.) In the meantime, the study's abstract had been available online at the PubMed.gov website since October 2015. (*See* Ex. 6, Kaats Dep. Tr. 102:10-16; *see also* Ex. 27.[2])

Also in October 2015, Obesity Research's in-house counsel, Allison Borts, left a phone message for Dr. Preuss about whether he would serve as an expert in a lawsuit contending that Obesity Research's glucomannan product is not as effective as that in the Kaats study. Dr. Preuss told Dr. Kaats, who returned the call. Ms. Borts told Dr. Kaats she had called Dr. Preuss "to see if [she] could get him to testify that taking a glucomannan supplement that was more viscous would allow [Obesity Research] to use a study that was less viscous in support of [its] product." Dr. Kaats advised her that Dr. Preuss "told me, no, he couldn't do that, have to show me the difference, has to be based on data." (Ex. 6, Kaats Dep. Tr. 216:22-217:23.)

On October 19, 2015, Ms. Borts followed up the call with an email asking Dr. Kaats to "provide . . . additional information regarding who is publishing the study," and asking whether "it was at the behest of the research group or some other entity?" Ms. Borts stated "[w]e are just curious as the study took place so long ago." (Ex. 26, KAATS269-72, at KAATS272.) After some back-and-forth, Ms. Borts asserted that Obesity Research "is the 50% 'owner' of the study with NAI," and stated that Obesity Research "does not consent to your publication of the study and you should inform the Journal that this is the case. . . . Unfortunately, we believe that Shimizu and NAI are attempting to use the now publication of the study for an improper purpose in a pending Federal Court litigation." (*Id.*)

Ms. Borts then contacted the American College of Nutrition and threatened a $150,000 or larger lawsuit if it published the study. (Kaats Decl. ¶ 11; Ex. 6, Kaats Dep. Tr. 104:14-114:12, 286:19-288:21; Ex. 28, Borts Dep. Tr. 79:4-80:13.)

---

[2] *Available at* https://www.ncbi.nlm.nih.gov/pubmed/26492494.

8

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

## LEGAL STANDARD

"A request to seal judicial records offends the presumption in favor of access," *BT Collective v. IP Holdings, LLC*, 2011 WL 5873388, at *2 (S.D. Cal. Nov. 23, 2011). Because the Kaats study has been filed and available on the docket for a year, the "compelling reasons" standard applies to Obesity Research's request to seal. *Shimmick Constr. Co., Inc./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L.*, 2015 WL 5827396, at *1 (S.D. Cal. Oct. 5, 2015) (Bashant, J.) ["*Shimmick*"]; *see also Robert Half Intern., Inc. v. Ainsworth*, 2015 WL 4394805, at *3 n.2 (S.D. Cal. July 15, 2015) (motion to seal exhibits to counterclaims subject to "compelling reasons" standard (citations omitted)).

Under this standard, Obesity Research must show "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Shimmick*, 2015 WL 5827396, at *1 (quoting *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quotation omitted)). Compelling reasons exist when specific facts show "'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.'" *Id.* (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). But "[t]he mere fact that . . . records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1172; *c.f. In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, at *3 (S.D. Cal. Mar. 11, 2011) ("It is not enough that the parties would *prefer* to keep certain business information confidential. *Compelling reasons* must ber shown.").

Thus, "[t]he presumed right to access to court proceedings and documents can be overcome 'only by an overriding right or interest "based on findings that disclosure is essential to preserve higher values and is narrowly tailored to serve that interest."'" *Victorianne v. County of San Diego*, 2015 WL 3489708, at *4 (S.D. Cal. June 1, 2015)

9

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

(quoting *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990) (quoting *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 510 (1985))).

## ARGUMENT

## I. OBESITY RESEARCH HAS NO RIGHT TO MAKE THE REQUEST TO SEAL

### A. Obesity Research Does Not "Own" the Kaats Study

Obesity Research claims "[t]he Kaats study is owned by ORI" (Mot. at 2). But it did not author or otherwise create the study. It was nothing more than a co-sponsor of the study, based on a January 2004 agreement providing NAI and Obesity Research (then Fiber Thin) each half-shares simply of the "data sequestered from the study" (Ex. 10, ORI184). That agreement (to which Dr. Kaats was not even a party) did not and, as a matter of law, could not have changed the fact that the study was not one of the 9 enumerated "works made for hire" under the strict provisions of the U.S. Copyright Act, and in any event there was no "written instrument" signed by Dr. Kaats transferring any copyright or other intellectual property rights in the study to Obesity Research or NAI.

From the moment of creation of each different "tangible" form of the study, whether the Technical Report, PowerPoint presentation, drafts of manuscripts, and the final publishable manuscript, as the indisputable author of the study, by operation of law, Dr. Kaats has always been the sole and exclusive owner of all rights to reproduce, distribute, display, perform (i.e., publish) the study in its various forms. *See* 17 U.S.C. §§ 101, 106, 201(a) and (b), and 204 (a); *Warren v. Fox Family Worldwide, Inc.*, 328 F. 3d 1136, 1140 n. 4 (9th Cir. 2003). And this is amply corroborated by Dr. Kaats' agreement with NAI that the study would be published in compliance with the publication standards of the International Committee of Medical Journal Editors, which expressly stated that the author, *not* the sponsor, retained all intellectual property rights.[3]

---

[3] Even Obesity Research's claimed 50% ownership in the study's mere "data" – and only as between Obesity Research and NAI – is itself highly doubtful, given Obesity Research's breach of its contractual obligations to NAI to pay for half of the study and to co-market with NAI.

10

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

### B. Obesity Research Has Never Maintained the Secrecy of the Study

Obesity Research's request to seal a document Fiber Research filed publicly a year ago, over which Obesity Research has never complained in the interim, belies its assertion that the study is highly-confidential, propriety material providing it a competitive advantage. Obesity Research also ignores the obvious: Fiber Research attached the Kaats study to its Counterclaims because it independently obtained the study, tautologically contradicting Obesity Research's assertion that it is unavailable from sources other than the Court's docket. (Mot. at 10-11.) Even Obesity Research's claim that its prior counsel would have filed this motion last summer if it had not been replaced (Mot. at 4 (citing Reid Decl. ¶ 5)) rings hollow. Fiber Research filed its Counterclaims on May 28, 2015 (Dkt. No. 41), and Obesity Research did not substitute its counsel until September 21, 2015 (Dkt. No. 56).[4] In addition, while Obesity Research's advertising does not identify Kaats by name, it does publicly disseminate its findings, including the specific amount of weight and fat lost. Obesity Research's assertion that Fiber Research conceded the Kaats study is confidential (Mot. at 9), is incorrect. Rather, because Fiber Research had obtained elsewhere a copy of the study and filed it in April 2015, Fiber Research simply decided it was not worth expending party and court resources to adjudicate the designation. (Fitzgerald Decl. ¶ 31.)

In addition, both Dr. Kaats and Dr. Preuss produced copies of the Kaats study, and neither of them is bound by any confidentiality agreement (*id.* ¶ 32), making each a source from which the "study [is] available to the general public from a[] source other than this Court's docket." (*C.f.* Mot. at 10-11.) Dr. Kaats even provided the same Technical Report publicly available on the docket, to the FTC. (*See* Ex. 6, Kaats Dep. Tr. 322:8-16; Ex. 29, 1362-72.)

---

[4] If the Court is inclined to consider the self-serving declaration of David Reid, Fiber Research requests the opportunity to cross-examine Mr. Reid at a deposition, including to determine whether he received a malpractice waiver to provide his declaration.

11

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

## II. OBESITY RESEARCH HAS NOT SHOWN "COMPELLING REASONS" TO SEAL THE KAATS STUDY BECAUSE IT HAS NOT SHOWN SPECIFIC FACTS DEMONSTRATING THAT THE KAATS STUDY HAS BEEN USED FOR IMPROPER PURPOSES

To demonstrate "compelling reasons" to seal the Kaats study, Obesity Research must show, not just that the study "might" or "could" be used for an improper purpose, but that its public filing has actually had or threatens to have that result. *See ATM Exp., Inc. v. ATM Exp., Inc.*, 2008 WL 4997600, at *2 (S.D. Cal. Nov. 20, 2008) ("Under the 'compelling reasons' standard, a district court must weigh relevant factors, base its decision on a compelling reason, and articulate a factual basis for its ruling without relying on hypothesis or conjecture." (quoting *Pintos*, 504 F.3d at 802)); *see also Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). That is a substantial burden when the document has been publicly-available on the docket for a year and Obesity Research does not assert that a single competitor used it to Obesity Research's disadvantage. *C.f. Rich v. Shrader*, 2013 WL 6028305, at *3 (S.D. Cal. Nov. 13, 2013) (defendants failed to provide sufficient justification for sealing "information [ ] already in the public record as part of the allegations and/or defenses").

Here, Obesity Research does not even claim there has been an improper use. Instead, its argument is purely hypothetical. (*See* Mot. at 8 ("the Kaats study may be used for improper purposes"), 10 ("the study may be used for improper purposes," "ORI's competitors may attempt to use the Kaats study," "[u]se by third parties would deprive ORI of its fundamental right to control the use of its intellectual property," "the Kaats Study may be used for improper purposes by competitors 'seeking to gain an advantage by circumventing the time and resources necessary to develop' their own research study," "ORI's proprietary interest . . . is at risk of deteriorating . . . because it may be used for the improper purposes described above"). This is insufficient. *See ATM Exp., Inc.*, 2008 WL 4997600, at *2 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do[es] not

12

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

satisfy" the lesser "good cause" "Rule 26(c) test." (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992)).

The record on this motion does not, in any manner, demonstrate that Fiber Research (or anyone else) has used the Kaats study for an improper purpose. On the contrary, the circumstances fully support the conclusion that Obesity Research's belated request to seal from the Court's docket a document that has been publicly available on the Court's docket for a year is itself a thinly-disguised litigation tactic.

Obesity Research is attempting to trick the Court into sealing the study on the basis of an express finding that Obesity Research "owns" the study, so that it can then finally succeed in permanently stopping publication and better concealing the study. In so doing, Obesity Research hopes to make it far more difficult in the future for consumers, competitors, and perhaps law enforcement to determine that Lipozene is a cheap, adulterated, dangerous Chinese knock-off of Shimizu's clinically proven glucommanan, and that Obesity Research peddles Lipozene through false advertising and deceptive marketing practices.

Under the circumstances, and on the basis of this clear and comprehensive record before the Court, a finding that Dr. Kaats, and not Obesity Research, is the sole and exclusive owner of all right, title and interest in and to the study in all forms, including its publishable manuscript, is warranted.

## **CONCLUSION**

For the foregoing reasons, Fiber Research respectfully requests that the Court deny Obesity Research's motion to seal the Kaats study, in its entirety.

Dated: April 1, 2016

Respectfully Submitted,

By: /s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*

13
*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY

MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**PRICE PARKINSON & KERR LLP**
JASON KERR
*jasonkerr@ppktrial.com*
CHRISTOPHER SULLIVAN
*sullivan@ppktrial.com*
RONALD F. PRICE
*ronprice@ppktrial.com*
5742 West Harold Gatty Drive
Salt Lake City, Utah 84116
Phone: (801) 530-2900

***Counsel for Defendant and Counterclaim-Plaintiff Fiber Research International, LLC***

14

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD
OPPOSITION OBESITY RESEARCH'S TO MOTION TO SEAL THE KAATS STUDY