UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBESITY RESEARCH INSTITUTE, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FIBER RESEARCH INTERNATIONAL, LLC, *et al.*,<br><br>　　　　　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 15-cv-595-BAS(MDD)<br><br>**ORDER GRANTING SHIMIZU CHEMICAL CORPORATION'S MOTION TO DISMISS**<br><br>**[ECF No. 207]** |

　　　Plaintiff Obesity Research Institute, LLC ("ORI") commenced this declaratory-judgment action against Defendant Fiber Research International, LLC ("FRI"), seeking a determination that it cannot be held liable under the Lanham Act; Federal Food, Drug, and Cosmetic Act; California's Unfair Competition Law ("UCL"); and California's False Advertising Law ("FAL"). ORI later added Shimizu Chemical Corporation ("Shimizu") as a defendant to all claims when it filed its First Amended Complaint ("FAC"). Shimizu now moves to dismiss for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ORI opposes.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Shimizu's motion to dismiss.

I.   BACKGROUND

"ORI offers dietary supplements for weight loss to consumers[,]" which include products that contain glucomannan, "a natural fiber that reduces body fat." (FAC ¶ 10.) According to ORI, "[n]umerous clinical studies confirm glucomannan is safe and effective for weight loss and body fat loss." (*Id.*)

"Shimizu is a former supplier of glucomannan used by [ORI] and its predecessors in its products containing glucomannan in California." (FAC ¶ 6.) "From 2003 to 2005[,] [ORI's] products contained a blend of glucomannan supplied by Shimizu." (*Id.*) Sometime in 2005, "ORI began to mix the blend of glucomannan from Shimizu with glucomannan provided by a different supplier into its product." (*Id.*) ORI alleges that after Shimizu learned that ORI "was purchasing glucomannan from another supplier, Shimizu gave ORI an ultimatum to either use its glucomannan exclusively within ORI's products or else Shimizu would no longer supply any glucomannan to be used in ORI's product." (*Id.*) "Because ORI would not agree to Shimizu's demand, Shimizu unilaterally decided to stop supplying glucomannan used in ORI's product." (*Id.*)

On February 21, 2015, Shimizu and FRI executed an agreement titled, "Distribution and Claim Assignment Agreement," in which Shimizu assigned to FRI "all rights[,] title[,] and interest it has to any legal claim related to the false advertising claims relying on Shimizu's studies for the products with improper Glucomannan ingredients against Obesity Research Group (Lipozene)[.]" (Shimizu Decl. Ex. 1.) The claims-assignment provision was later expanded in an amendment, executed in August 2015, to state the following:

> <u>Assignment of Legal Claims</u>. Shimizu hereby assigns to Fiber Research all rights[,] title[,] and interest it has to any legal claim related to violation of the Lahnam [sic] Act or similar state law claim, false advertising, fraud, trademark, copyright, intentional interference, or any other similar claim, including, without limitation, relying on Shimizu's studies and any trademark claim, against Obesity Research Group (Lipozene).

(*Id.*) Shimizu's Chief Executive Officer, Yoshi Shimizu, adds that Shimizu "retains no rights or obligations relating to the claims it assigned to [FRI]" and that there is no agreement between Shimizu and FRI "to share in costs or expenses or any recovery from this lawsuit." (Shimizu Decl. ¶ 4.)

Less than a month later, on March 10, 2015, FRI sent a letter to ORI's general counsel stating, among other things, ORI's Lipozene contains "adulterations" and "the weight loss effect of Lipozene® is 'significantly less than' the Propol A® product manufactured by Shimizu[.]" (FAC ¶¶ 11-12.) FRI also alleged that ORI "falsely and fraudulently markets and promotes Lipozene® using three clinical studies on pure, unadulterated glucomannan," taking the position that "ORI's reliance on the three glucomannan studies is not scientifically valid." (*Id.* ¶¶ 13-14.) The letter also contains accusations that ORI caused "significant damages" to FRI and that ORI "[stole] . . . research on the more expensive, pure product." (*Id.* ¶ 17.) And finally, ORI alleges that FRI's letter "states that unless the parties resolve their dispute, . . . FRI intends to file a lawsuit against ORI and others alleging claims for unfair competition arising out of false and misleading production descriptions and advertisements in violation of the Lanham Act, among other claims." (*Id.* ¶ 18 (citations omitted).)

On March 16, 2015, ORI commenced this declaratory-judgment action against FRI. On May 28, 2015, FRI filed its Answer and First Amended Counterclaims, asserting violations of the Lanham Act, California's UCL, and California's FAL. Shimizu now moves to dismiss for lack of subject matter jurisdiction.

## II. LEGAL STANDARD

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560 (citation omitted). Consequently, a case that lacks Article III standing must be dismissed for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Because standing is essential for a federal court to have subject matter jurisdiction, the issue of standing is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citations omitted).

The "irreducible constitutional minimum" of Article III standing is comprised of three elements: (1) "the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized; and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of" such that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. The doctrines of ripeness and mootness also relate to a federal court's subject matter jurisdiction, and so challenges to a claim on either ground are properly raised in a Rule 12(b)(1) motion. *Chandler*, 598 F.3d at 1122 (citations omitted).

A jurisdictional attack under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Id.* Therefore, under a factual attack, the allegations in the complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### III.   DISCUSSION

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid 'the threat of impending litigation.'" *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172

(9th Cir. 2002) (quoting *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). The statute does not by itself confer subject matter jurisdiction on the federal courts. *Sanford v. Memberworks, Inc.*, 2008 WL 4482159, at *2 (S.D. Cal. Sept. 30, 2008) (citing *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985)).

In order to award declaratory relief, the Court must first determine whether there is "a case of actual controversy." 28 U.S.C. § 2201(a); *see also Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986). This requirement is "identical to the Article III's constitutional case or controversy requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981)). Thus, in determining whether a case or controversy exists for declaratory-judgment purposes, the Supreme Court noted that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The party seeking relief under the Declaratory Judgment Act carries the burden of demonstrating that an actual case or controversy exists. *See MedImmune*, 549 U.S. at 127. An actual controversy must exist at all stages of review. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *Kearns*, 15 F.3d at 143).

The crux of Shimizu's argument is that ORI lacks standing to assert its declaratory-judgment claim against Shimizu because there is no case or controversy

under the Declaratory Judgment Act and, by extension, Article III of the U.S. Constitution. (Shimizu's Mot. 3:14-5:7.) Shimizu explains that there is no case or controversy because it "has assigned *all* claims it has, had or may have against ORI, to FRI[,]" and as a result, "Shimizu has *no* claims that it can assert against ORI and, instead, FRI, and only FRI, has standing to assert those claims against ORI." (*Id.* at 3:16-24.)

In response, ORI contends a case or controversy exists. However, ORI exclusively argues the following six points in its opposition: (1) "ORI is not prohibited from challenging the validity and effect of the agreements between FRI and Shimizu"; (2) "The assignment of a bare right to sue for injuries suffered under the Lanham Act . . . is insufficient to divest Shimizu of its case or controversy with ORI"; (3) "Because FRI's limited term 'assignment[]' of rights is at most, a non-exclusive license forming one of its many U.S. distribution relationships, Shimizu has not divested itself of any rights which would preclude a declaratory judgment action"; (4) "Shimizu's attempt to transfer [the] right to sue in tort under the laws of Nevada is ineffectual"; (5) because "the Court has already determined that contrary to the terms of the Shimizu-FRI agreements, FRI cannot sue on Shimizu's behalf . . . a case and controversy exists . . . in regard to any liability allegedly suffered directly by Shimizu due to ORI's advertising"; and (6) "Shimizu is a necessary party to this litigation and the Court has subject matter jurisdiction." (ORI's Opp'n 7:15-16; 10:22-24; 13:7-9; 14:23-24; 15:25-16:1; 17:7-8.) Even if the Court assumes, for the sake of argument, all of ORI's points as true, ORI ultimately fails to carry its burden of demonstrating that it has standing to pursue a declaratory-judgment action against Shimizu. *See MedImmune*, 549 U.S. at 127.

To demonstrate standing, ORI's task is to "show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maryland Cas.*, 312 U.S. at 273. None of the six points asserted above, individually

or in combination, adequately accomplishes the task at hand. In fact, ORI wholly neglects an essential component of demonstrating standing in its opposition—immediacy.[1] *See id.*

The first four points that ORI presents attempt to call into question the validity of Shimizu's agreement to assign its rights to pursue certain claims to FRI. But if the Court assumes, for the sake of argument, that the assignment agreements are indeed invalid, the primary consequence is that Shimizu retains all of its rights to pursue claims against ORI. However, the mere retention of the right to sue does not demonstrate a "substantial controversy . . . of sufficient immediacy and reality." *See Maryland Cas.*, 312 U.S. at 273.

ORI alleges FRI expressed an intent to pursue legal action against it in the March 10, 2015 letter, but fails to present any facts that Shimizu shared a similar intent. Rather, Shimizu submits a declaration from its Chief Executive Officer, Yoshi Shimizu, strongly suggesting that it lacked any intent to pursue legal action against ORI, which the Court infers from Mr. Shimizu operating with the understanding that the right to pursue claims against ORI had been assigned to FRI and that Shimizu "retain[ed] no rights or obligations relating to the claims assigned to Fiber Research International, LLC."[2] (Shimizu Decl. ¶¶ 3-4.) After all, it is highly unlikely that Shimizu would pursue the relevant claims against ORI when it believes that it has no such rights to do so. While the validity of the assignment agreements may be relevant to FRI's rights to pursue claims against ORI, questions regarding validity of the

---

[1] For the purposes of this order, the Court focuses on the immediacy requirement to establish standing to pursue a declaratory-judgment claim. However, it should be noted that the Court's position is not that that is the only failure on ORI's part in its attempt to establish standing.

[2] Mr. Shimizu's complete statement regarding the "intent and purpose" of the assignment agreements is as follows: "The intent and purpose of the [Assignment] Agreements was to assign all rights Shimizu Chemical Corporation had for any and all claims to Fiber Research International, LLC free of any encumbrances, for all right, title and interest that Shimizu Chemical Corporation has against Obesity Research, LLC for to [sic] any legal claim related to violation of the Lanham Act or similar state law claim, false advertising, fraud, trademark infringement, copyright infringement, intentional interference, Federal statutory or common law or any other similar claim." (Shimizu Decl. ¶ 3.)

assignment agreements fail to establish a case or controversy as to ORI's declaratory-judgment action against Shimizu.

Next, relying on this Court's February 25, 2016 order, which ORI interprets to mean that "FRI cannot sue on Shimizu's behalf," ORI argues that "a case and controversy exists as to Shimizu and ORI in regard to any liability allegedly suffered directly by Shimizu due to ORI's advertising activities and the terms of the purported assignment do nothing to moot the controversy." (*See* ORI's Opp'n 15:25-16:1.) ORI's position may very well be true, but again, sharing the same defective reasoning discussed above, it simply does not address the case-or-controversy requirements that ORI bears the burden of demonstrating. *See MedImmune*, 549 U.S. at 127. For example, ORI has not directed this Court to any facts, alleged in the FAC or provided in evidence, showing that Shimizu made any demands or threats of legal action to ORI. It is not even clear that Shimizu had any direct contact with ORI leading up to the commencement of this lawsuit. Ultimately, merely having the right to pursue legal action does not in and of itself, as ORI would have the Court believe, necessarily rise to the level of a "substantial controversy . . . of sufficient immediacy and reality." *See Maryland Cas.*, 312 U.S. at 273.

Lastly, invoking Federal Rule of Civil Procedure 19(a), ORI argues "Shimizu is a necessary party to this litigation and the Court has subject matter jurisdiction." (ORI's Opp'n 16:2-17:8.) Rule 19 "sets forth considerations to guide a district court's determination whether a particular party should be joined in a suit if possible, referred to as a 'necessary party,' and, if so, whether, if the party cannot be joined, the suit should be dismissed because the absent party is 'indispensable.'" *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004).

ORI, again, focuses largely on the purported invalidity of the assignment agreements. ORI argues Shimizu is a necessary party to determine whether the assignment is valid or not. (*See* ORI's Opp'n 16:2-17:8.) This argument fails for the same reason the Court has emphasized throughout this order: ORI fails to

demonstrate immediacy of any potential dispute between ORI and Shimizu.[3] *See Maryland Cas.*, 312 U.S. at 273.

In sum, the Court concludes that ORI fails to carry its burden of demonstrating that it has standing to pursue a declaratory-judgment claim against Shimizu. *See MedImmune*, 549 U.S. at 127. ORI fails to present facts, either alleged in the FAC or provided in evidence, that there is a "substantial controversy" between itself and Shimizu "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maryland Cas.*, 312 U.S. at 273.

## IV. CONCLUSION & ORDER[4]

In light of the foregoing, the Court **GRANTS** Shimizu's motion to dismiss because ORI fails to demonstrate that it has standing to pursue a declaratory-judgment action against Shimizu. (ECF No. 207.) Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Shimizu from this action.

ORI also requests jurisdictional discovery, arguing "Shimizu and FRI have failed to show that the purported assignment agreements vested any rights in FRI sufficient to derivatively plead Shimizu's claims," but the validity of the assignment

---

[3] The Rule 19 argument is also peculiar when considering Rule 19's purpose—determining whether a particular party should be joined in a lawsuit. *See Disabled Rights Action Comm.*, 375 F.3d at 878. In this case, Shimizu has already been "joined" as a party by operation of ORI's FAC. The fact that Shimizu is already a party to this action largely moots this entire line of reasoning. *See id.*

[4] In its reply, Shimizu presents a ripeness argument for the first time, which ORI's surreply addresses. After further consideration, the Court declines to consider this argument because the "district court need not consider arguments raised for the first time in a reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived); *Dytch v. Yoon*, No. C 10–02915 MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (explaining that parties "cannot raise a new issue for the first time in their reply briefs"). Even if the Court chose to consider ripeness, it would not reach the question because ORI failed to demonstrate there was a sufficient case or controversy to pursue the declaratory-judgment claim against Shimizu. *See Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) ("[The] central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.").

agreements, as discussed above, is not a central issue in determining whether ORI has standing to pursue a declaratory-judgment action against Shimizu. (ORI's Opp'n 17:10-21.) Moreover, Shimizu does not bear any initial burden to "show" whether there is a case or controversy; that burden is ORI's to carry. *See MedImmune*, 549 U.S. at 127. Accordingly, the Court, in its discretion, **DENIES** ORI's request for jurisdictional discovery because it fails to identify "pertinent facts bearing on the question of jurisdiction." *See Am. West Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).

Lastly, the Court vacated the briefing schedule for FRI's summary-judgment motion pending the resolution of Shimizu's jurisdictional challenge. (ECF No. 214.) In order for both parties to have a fair opportunity to digest this Court's ruling on Shimizu's jurisdictional challenge before proceeding to summary judgment, the Court **TERMINATES** FRI's summary-judgment motion (ECF No. 186).[5] *See United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc). FRI may file a revised summary-judgment motion no later than **April 15, 2017**; but if FRI chooses not to revise its motion, it may re-submit its previously filed summary-judgment motion any time before the aforementioned deadline. Furthermore, the Court **ORDERS** the parties to meet and confer to devise a mutually agreeable briefing schedule for the consolidated cross-motions for summary judgment, assuming the parties still intend to file cross-motions, and file a joint motion with proposed consolidated briefing dates no later than **April 8, 2017**.

**IT IS SO ORDERED.**

DATED: March 29, 2017

Hon. Cynthia Bashant
United States District Judge

---

[5] As a consequence of terminating FRI's summary-judgment motion, the Court also **TERMINATES AS MOOT** FRI's motion to file documents under seal related to its summary-judgment motion. (ECF No. 187.)