# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBESITY RESEARCH INSTITUTE, LLC,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>FIBER RESEARCH INTERNATIONAL, LLC, *et al.*,<br><br>　　　　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 15-cv-595-BAS-MDD<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO FILE DOCUMENTS UNDER SEAL (ECF No. 404);**<br><br>**(2) GRANTING IN PART AND DENYING IN PART MOTIONS TO FILE DOCUMENTS UNDER SEAL (ECF Nos. 340, 346, 365, 392, 418); AND**<br><br>**(3) SEALING EXHIBIT D TO DECLARATION OF MELANIE PERSINGER IN SUPPORT OF FIBER RESEARCH INTERNATIONAL, LLC'S RENEWED MOTIONS TO SEAL DOCUMENTS (ECF Nos. 404-5, 418-5)** |

Presently before the Court are a number of motions by the parties to file documents under seal. (*See* ECF Nos. 340, 346, 365, 392, 404, 418.) The motions were filed with many of the substantive briefs filed by the parties, including briefs related to Defendant Fiber Research International, LLC's ("FRI") motion for partial summary judgment and Plaintiff Obesity Research Institute, LLC's ("ORI") cross motion for summary judgment. Both of these motions were opposed and each party replied to the respective opposition. FRI also refiled its request for leave to file under seal documents filed in connection with ORI's motion to exclude Dr. Fahey as an expert witness.

Due to the volume of the parties' requests, the Court will refer to each motion by its Electronic Case Filing number ("ECF No.") on the docket for the purposes of this order.

I. **LEGAL STANDARD**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that

is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id*.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exists when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*. (citing *Foltz*, 331 F.3d at 1136). The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

Federal Rule of Civil Procedure 26(c), generally, provides the "good cause" standard for the purposes of sealing documents. *See Kamakana*, 447 F.3d at 1179. The test applied is whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)). Under Rule 26(c), only "a *particularized showing* of 'good cause' . . . is sufficient to preserve the secrecy of sealed discovery documents[.]" *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (emphasis added); *see also Kamakana*, 447 F.3d at 1180 (requiring a "particularized showing" of good cause). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Moreover, a blanket protective order is not itself sufficient to show "good cause," let alone compelling reasons, for sealing particular documents. *See Foltz*, 331 F.3d at 1133; *Beckman Indus.*, 966 F.2d at 476; *San Jose Mercury News, Inc. v. U.S. District Court, N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999).

## II. ANALYSIS

### A. ECF No. 340

In ECF No. 340, FRI seeks leave to file under seal portions of its memorandum of points and authorities in support of its motion for partial summary judgment in addition to twenty-eight exhibits to the Fitzgerald Declaration (Exhibits 24-25, 36-37, 40, 48-49, 51-52, 56-58, 67-68, 70-78, 84-87). The parties are in agreement to seal Exhibits 48-49 and 51-52. (ECF No. 340 at 2-3; ECF No. 350 at 4.) FRI argues for sealing portions of its memorandum and Exhibits 40, 86-87, and 90 while ORI argues for sealing Exhibits 24-25, 36-37, 56-58, 67-68, 70-78, and 84-85. The parties oppose the sealing of each other's documents.

The majority of the exhibits relates to proprietary product testing and formulation information. Both parties state that Exhibits 48-49 and 51-52 include proprietary information, such as testing methodologies and results and product specifications. (ECF No. 340 at 3-4; ECF No. 350 at 4.) They further argue that the information in these documents "could allow a competitor to reverse engineer" either Propol or Lipozene and "irreparably damage" the parties if made public. (ECF No. 340 at 3; ECF No. 350 at 4.) ORI states that Exhibits 25 and 57 contain "foundational formulas for various iterations ORI's KGM-based products, including Lipozene's precursors Fiberthin and Propolene." (ECF No. 350 at 5.) Likewise, ORI argues that Exhibits 56 and 58 discuss propriety testing results and methodologies; Exhibits 67-68 reveal information relating to ORI's "proprietary KGM blend;" Exhibits 70-78 contain propriety information, such as "viscosity test results" and "technical product

specifications;" and Exhibits 84-85 are certificates of analysis from ORI's supplier that reveals "proprietary KGM blend, which is the same material used in Lipozene." (*Id.*) The parties' explanations appear to be consistent with the Court's assessment of the relevant exhibits.

A handful of exhibits contain propriety or sensitive business information. Exhibit 24 is a 1998 distribution agreement between Shimizu and ORI's former supplier. ORI argues that disclosure of the agreement in its entirety "could pose significant competitive harm to ORI," though only a couple provisions relating to ordering and material specifications appear to have competitive value. (ECF No. 350 at 6.) Exhibits 36 and 37 are emails between ORI and its suppliers, and ORI argues that they contain proprietary information regarding its quality control process, product specifications, and pricing. ORI explains that the disclosure of this information could put ORI and its non-party supplier at a "competitive disadvantage." (*Id.* at 6.) Likewise, Exhibit 87 is a document detailing specific pricing information of Shimizu's Propol that FRI argues a competitor could improperly use. (ECF No. 340 at 5-6; ECF No. 363 at 2.) Other than portions of Exhibit 24, the parties' explanations appear to be consistent with the Court's assessment of the relevant exhibits.

FRI conclusively states that Exhibit 40 is a "confidential" business and marketing plan. The Court finds this reasoning inadequate and unsupported. Upon review, the document seems to contain general, vague marketing statements with publically available testing (e.g. FRO-0090-92), rather than internal or sensitive marketing plans or business strategies that warrant sealing. *See, e.g., United States v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6609375, at *4 (C.D. Cal. Aug. 23, 2016) (sealing business and marketing plans reflecting "internal discussions and plans"); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 WL 4191612, at *26-27 (N.D. Cal. Aug. 9, 2016) (finding "good cause" to seal portions of "business strategies" document that was supported by a sworn declaration).

FRI does not provide any reasoning for sealing Exhibits 86 or 90 other than providing a conclusory, inadequate statement that the Court should seal these documents, which it then appears to abandon in its reply. (ECF No. 340 at 3-4; ECF No. 363 at 2 ("[T]he Court should find compelling reasons exist to seal at least Exhibits 40, 48-49, 51-52, and 87.").)

Lastly, FRI argues that the unredacted version of its memorandum should be sealed for the same reasons as above because it incorporates the same proprietary information contained in the related documents. (ECF No. 340 at 3-4.) FRI should assure the redactions in its memorandum are consistent with the Court's assessment of the relevant exhibits as stated in this order.

Having reviewed FRI's and ORI's requests, the Court finds that FRI failed to carry its burden to demonstrate that sealing Exhibits 40, 86, or 90 is appropriate under the compelling reasons standard, and ORI failed to carry its burden to demonstrate that Exhibit 24 is appropriate under the compelling-reasons standard. *See Kamakana*, 447 F.3d at 1179. However, for Exhibit 24, the Court finds that applying redactions to seal the ordering provision, or Section 7, contained on the page identified as "ORI 000906" and the material specifications contained on the pages identified as "ORI 000912" to "ORI 000917" is appropriate. Otherwise, the Court finds that FRI and ORI provide compelling reasons to seal the remaining aforementioned documents. *See Kamakana*, 447 F.3d at 1179. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** FRI's motion to file documents under seal. (ECF No. 340.)

**B.     ECF No. 346**

In ECF No. 346, ORI seeks leave to file under seal portions of its memorandum of points and authorities in support of its consolidated motion for summary judgment and opposition to FRI's motion for partial summary judgment, the Declaration of Henny den Uijl, and twenty-seven exhibits to Uijl's Declaration (Exhibits 98, 102, 103, 104, 109, 111-117, 119-123, 126, 129, 130, 135, 141, 144, 147, 149, 150, 153).

The parties are in agreement to seal Exhibits 119-123. (ECF No. 346 at 3; ECF No. 364 at 5-6.) ORI argues for sealing portions of its memorandum and Exhibits 98, 102-04, 119-123, 130, 141, 144, and 153 while FRI argues for sealing Exhibits 109, 111-14, 116-17, 126, 129, 135, 149, and 150. ORI opposes the sealing of FRI's exhibits. Additionally, in its response to ECF No. 346, FRI agreed to file Exhibit 147 publicly and submitted partially redacted versions of Exhibits 111 and 135 in an effort to tailor its requests. (ECF No. 364 at 3.)

Many of these exhibits relate to propriety testing information. ORI proposes to seal testing results, methodologies, and other proprietary information in Exhibit 98, which is the Expert Report of Dr. Laura Lerner and has been partially redacted. (ECF No. 346 at 3.) ORI also requests to seal portions of James Ayres's deposition transcripts (Exhibits 103 and 104) that contain propriety product composition information and other testing information. (*Id.*) Exhibits 119-123 and 144 include various graphs and certificates of analysis that ORI argues reveals confidential production information and testing results that are propriety data and trade secrets. (*Id.*; *see also* ECF No. 364 at 5.) Exhibit 153 is an email discussing testing results and providing a comparison of Shimizu's Propol to another product. (ECF No. 346 at 3.) ORI argues that disclosure of the above documents would "cause irreparable harm to both parties." (*Id.*) FRI seeks to seal portions of Exhibit 111, and only requests to seal information regarding product specifications, as well as customer information and internal business procedures. (*Id.* at 3, 8.) FRI also seeks to seal portions of Exhibit 135 that contain specific results from the viscosity tests performed on its product. (ECF No. 364 at 3, 5, 6.) The parties' reasoning appears to be consistent with the Court's assessment of the relevant exhibits.

The parties also request leave to seal documents relating to sensitive business information. ORI argues to seal portions of Exhibit 102 (Henny den Uijl's deposition transcript) because it contains confidential financial figures relating to sales distributions between direct and consumer sales. (ECF No. 346 at 4.) FRI argues that

Exhibit 129 is an email containing internal business and marketing strategies, as well as identifying customer information. (ECF No. 364 at 3-4.) ORI also seeks to seal Exhibit 141, stating that it is ORI's confidential income statement. (ECF No. 346 at 4.) Despite the parties' minimal reasoning, the parties' arguments appear to be consistent with the Court's assessment of the above documents. However, for Exhibit 130, though Neil Beaton's supplemental expert report may contain some propriety information, ORI's conclusory statements are inadequate to justify sealing the report in its entirety. (*Id.*)

FRI seeks leave to seal a variety of contracts. FRI argues that Exhibit 112 is a confidential operating agreement. (ECF No. 364 at 6-7.) However, upon review, it does not appear to contain any propriety information, such as a trade secret or other confidential commercial information. *See Berkeley Research Grp., LLC v. United Potato Growers of Am., Inc.*, No. CV C 16-07205 WHA, 2017 WL 1650582, at *5 (N.D. Cal. May 2, 2017) (finding that an operating agreement should not be sealed); *Ne. Series of Lockton Companies, LLC v. Bachrach*, No. 12 CV 1695, 2013 WL 3989295, at *2 (N.D. Ill. Aug. 2, 2013) (same). FRI cites to case law to support its argument, but these cases either apply a "good cause" standard or do not provide guidance to the Court. (ECF No. 364 at 6-7.) Likewise, Exhibit 113 appears to be a standard broker representation agreement. Other than the commission rates listed on Exhibit A, FRI's reasoning that a competitor could use this information to "undercut" FRI's "business strategy for promoting" products appears unsupported. (*Id.*) Lastly, Exhibit 116 contains an indemnity agreement between FRI and a client that FRI argues a competitor could use to gain a "competitive advantage." (ECF No. 346 at 3-4.) Though the Court recognizes the document reveals the identity of FRI's customer, the agreement does not appear to contain any information of competitive value.

FRI also seeks leave to seal various marketing documents. FRI states that Exhibits 114 and 149 are emails containing marketing information and relate to potential customers and Exhibit 150 contains marketing documents, including

product labels. (ECF No. 364 at 3-4.) To justify its position, FRI only provides a conclusory assertion that the aforementioned documents contain "marketing and business strategy" without any explanation regarding how or why that information is sensitive in nature or that the information was internal and/or confidential. (*Id.*) Likewise, Exhibits 117 and 126 are emails between John Alkire and customers, and FRI only reasons that they reveal identifying customer information. (*Id.*) This reasoning is inadequate for sealing the entirety of these documents.

Exhibit 109 is a supplemental interrogatory response that lists the names of FRI's owners. FRI argues that Nevada State law, which does not require public disclosure of a corporation's ownership, justifies sealing this document. FRI provides no case law to support its reasoning. (ECF No. 364 at 7-8.) FRI also fails to provide any other reasons, injuries, or risks to support sealing this document, and thus the Court finds its reasoning inadequate. *See Kite Shipping LLC v. San Juan Nav. Corp.*, No. 11CV02694 BTM WVG, 2012 WL 6591579, at *2 (S.D. Cal. Dec. 17, 2012) (declining to seal information relating to corporate structure); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087 BTM AJB, 2011 WL 1135114, at *2 (S.D. Cal. Mar. 29, 2011) (same).

FRI does not address sealing Exhibit 115, which is an FRI invoice produced by a third party, and ORI objects to filing this document under seal. (ECF No. 346 at 6.) FRI is reminded that a blanket protective order, including a third party protective order, is not itself sufficient to show "good cause," let alone compelling reasons, for sealing particular documents. *See Foltz*, 331 F.3d at 1133; *Beckman Indus.*, 966 F.2d at 476; *San Jose Mercury News, Inc. v. U.S. District Court, N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999).

Lastly, ORI argues that the unredacted version of its memorandum and the Uijl Declaration should be sealed for the same reasons as above because it incorporates the same proprietary information contained in the related documents. (ECF No. 346

at 4-5.) ORI should assure the redactions in its memorandum are consistent with the Court's assessment of the relevant exhibits as stated in this order.

Having reviewed ORI's and FRI's requests, the Court finds that ORI failed to carry its burden to demonstrate that Exhibit 130 is appropriate under the compelling-reasons standard, and FRI failed to carry its burden to demonstrate that sealing Exhibits 109, 112-17, 126, 149, and 150 is appropriate under the compelling reasons standard. *See Kamakana*, 447 F.3d at 1179. However, for Exhibit 113, the Court finds that applying redactions to seal the commission rate information in Exhibit A is appropriate. Likewise, for Exhibits 113, 116, 117, and 126, the Court finds that applying redactions to seal customer names is appropriate. Otherwise, the Court finds that ORI and FRI provide compelling reasons to seal the remaining aforementioned documents. *See Kamakana*, 447 F.3d at 1179. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** ORI's motion to file documents under seal. (ECF No. 346.)

### C. ECF No. 365

In ECF No. 365, FRI seeks leave to file under seal portions of its reply brief in support of its motion for partial summary judgment and opposition to ORI's cross motion for summary judgment, as well as three exhibits filed in connection with its reply brief: the Declaration of John Alkire (Exhibit 2 to ECF No. 365), the Declaration of Yoshi Shimizu (Exhibit 3 to ECF No. 365), and Exhibit 171 to the Reply Declaration of Jack Fitzgerald (Exhibit 4 to ECF No. 365). ORI did not file a response to this motion.

FRI applied minimal redactions to Exhibit 2, and argues to seal confidential financial information, including investment and sales figures, in paragraphs 6 and 13, as well as confidential client names in paragraph 16. (ECF No. 365 at 5-6.) FRI also argues that the redacted information in Exhibit 4 relates to confidential internal

marketing and business information, including pricing. (*Id.* at 6-7.) FRI's reasoning appears to be consistent with the Court's assessment of the relevant exhibits.

Upon reviewing Exhibit 3, the Court reminds FRI that generalized information is not likely to meet the compelling reasons standard of sealing, and it must avoid this general information when applying its redactions to propriety information. *See Aylus Networks, Inc. v. Apple Inc.*, No. 13-CV-04700-EMC, 2016 WL 1252778, at *2 (N.D. Cal. Mar. 30, 2016); *Karim v. Hewlett-Packard Co.*, No. C 12-5240 PJH, 2014 WL 555934, at *9 (N.D. Cal. Feb. 10, 2014). Nonetheless, the Court finds that the broad redactions in Exhibit 3 ¶ 2 contain some propriety information relating to Propol's product composition and characteristics, which FRI argues could be used to reverse engineer Propol or create a competing product. (ECF No. 365 at 4-5.)

FRI argues that the unredacted version of its reply brief should be sealed for the same reasons as above because it incorporates the same proprietary information contained in the related documents. (ECF No. 365 at 7-8.) FRI should assure the redactions in its reply brief are consistent with the Court's assessment of the relevant exhibits as stated in this order.

Having reviewed FRI's requests, the Court finds that FRI provides compelling reasons to seal Exhibits 2-4. *See Kamakana*, 447 F.3d at 1179. However, the Court finds that the redactions applied to FRI's reply brief are inconsistent with the Court's assessment of the relevant exhibits as stated in this order. Therefore, the Court **GRANTS IN PART AND DENIES IN PART** FRI's motion to file documents under seal. (ECF No. 365.)

D.     ECF No. 392

In ECF No. 392, ORI seeks leave to file under seal portions of its reply brief in support of its consolidated motion for summary judgment as it relates to exhibits discussed above. FRI did not file a response to this motion.

ORI's explanation appears to be consistent with the Court's assessment of the relevant information, as discussed above, except for the redacted information in footnote 2 that relates to Exhibit 114. As the Court stated when discussing ECF No. 346, the Court denies sealing Exhibit 114 at this time. Because the information in footnote 2 relates to FRI, the Court finds that FRI failed to carry its burden to demonstrate that redacting footnote two is appropriate under the compelling-reasons standard. *See Kamakana*, 447 F.3d at 1179. Otherwise, the Court finds that ORI provides compelling reasons to seal the remaining portions of its reply brief. *See Kamakana*, 447 F.3d at 1179. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** ORI's motion to file documents under seal. (ECF No. 392.)

### E. ECF Nos. 404

In ECF No. 404, FRI refiled its request for leave to file under seal specific documents filed along with ORI's motion to exclude Dr. George Fahey as an expert witness. Originally, the Court considered these documents, denied FRI's request, and granted FRI leave to refile its request. (ECF No. 324.) ORI did not file a response to ECF No. 404.

Upon review, ECF No. 404 included various deficiencies, including incomplete redactions in an exhibit (ECF No. 404-4), missing unredacted versions of pages to a deposition transcript (ECF No. 405-1), and inconsistent requests in its Motion and proposed redactions (ECF No. 404 at 7; ECF No. 404-5.). Given these multiple deficiencies and incomplete requests, the Court **DENIES** FRI's motion to file documents under seal. (ECF No. 404.)

### F. ECF No. 418

Per the Court's recent order (ECF No. 417), FRI amended its requests made in ECF No. 404 and refiled these request in ECF No. 418. ORI did not file a response to ECF No. 418.

ECF No. 418 rectified some—but not all—of the deficiencies in ECF No. 404. Nonetheless, the Court will consider FRI's requests in this motion, except as stated below. In ECF No. 418, FRI seeks leave to file under seal portions of ORI's memorandum of points and authorities in support of ORI's motion to exclude Dr. George Fahey as an expert witness, as well as three exhibits attached to the Declaration of Sean D. Flaherty filed in connection with ORI's memorandum: Exhibit 3, deposition transcript of Dr. George Fahey (Exhibit B to ECF No. 418); Exhibit 4, deposition transcript of Sean D. Flaherty (Exhibit C to ECF No. 418); and Exhibit 10, deposition transcript of Medallion Labs representative Timothy Peters (Exhibit D to ECF No. 418).

As an initial matter, for Exhibit D, FRI continues to provide inconsistent requests for what it seeks to seal. In its motion, FRI requests to seal lines 64:19-21, but provides proposed redactions for lines 64:19-22. (ECF No. 418 at 8; ECF No. 418-5.) For page 72 of the transcript, FRI requests to seal lines 72:6-9, 15-16, and 19-20, but instead provides proposed redactions for lines 72:6-10 and 15. (*Id.*) FRI also requests to seal lines 73:23-24, but only provides the proposed redaction of line 73:23. (*Id.*) Lastly, FRI requests to seal lines 97:20-23, but only provides proposed redactions for lines 97:20 and 22-23. (*Id.*) FRI cannot task the Court with deciphering its requests, and thus the Court will not consider FRI's request to seal Exhibit D at this time. While it is not apparent that Exhibit D discloses confidential information, the Court will seal Exhibit D to ECF Nos. 404 and 418 at this time because those documents lack redactions that FRI requests in its Motion. (ECF Nos. 404-5, 418-5.)

Turning to the remaining requests in ECF No. 418, FRI argues that Exhibit B contains propriety information and trade secrets, and seeks to redact and seal proprietary information relating to viscosity testing and characteristics of Shimizu's Propol. (ECF No. 418 at 5-7.) FRI argues that disclosing this information would "irreparably damage Shimizu" and allow for a competitor to reverse engineer Propol. (*Id.*) For Exhibit C, FRI also seeks to seal information relating to testing results and

product characteristics, as well as propriety business information revealing current and potential client identities. (ECF No. 418 at 7-8.) FRI argues that the disclosure of this information could damage FRI through the loss of clients or sales or by allowing a competitor to match Shimizu's Propol A's characteristics and processing methods to create a similar product. (*Id.*) FRI's reasoning appears to be consistent with the Court's assessment of the relevant exhibits.

Lastly, because FRI's request to seal the unredacted version of ORI's memorandum is based in part on sealing portions of Exhibit D, the Court will not consider FRI's request to seal ORI's memorandum at this time. (ECF No. 418 at 9-10.)

Having reviewed FRI's requests to seal Exhibits B and C, the Court finds that FRI provides compelling reasons to seal these documents. *See Kamakana*, 447 F.3d at 1179. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** FRI's motion to file documents under seal. (ECF No. 418.) To prevent the disclosure of potentially confidential information, the Court **SEALS** the entirety of both versions of Exhibit D filed on the docket. (ECF Nos. 404-5, 418-5.) FRI is directed to refile its request to file portions of Exhibit D and ORI's memorandum under seal and include a redacted version of Exhibit D that accurately reflects its request.

### III. CONCLUSION & ORDER

In light of the foregoing, the Court:

(1) **GRANTS IN PART** and **DENIES IN PART** FRI's request to file documents under seal in ECF No. 340. The Clerk of the Court is directed to file the following exhibits under seal: ECF Nos. 341-2 to 341-4, 341-6 to 341-25, and 341-27;

(2) **GRANTS IN PART** and **DENIES IN PART** ORI's request to file documents under seal in ECF No. 346. The Clerk of the Court is directed

to file the following exhibits under seal: ECF Nos. 347-2 to 347-5, 347-7, 347-14 to 347-18, 347-20, 347-22 to 347-24, 347-28;

(3) **GRANTS IN PART** and **DENIES IN PART** FRI's request to file documents under seal in ECF No. 365. The Clerk of the Court is directed to file the following exhibits under seal: ECF Nos. 366-1 to 366-3;

(4) **GRANTS IN PART** and **DENIES IN PART** ORI's request to file documents under seal in ECF No. 392. The Clerk of the Court is not directed to file any documents under seal at this time. Instead, FRI is directed to either file ORI's reply brief in support of ORI's consolidated motion for summary judgment with redactions consistent with this order or include ORI's reply brief with its existing redactions with any refiled request to seal Exhibit 114;

(5) **DENIES** FRI's request to file documents under seal in ECF No. 404;

(6) **GRANTS IN PART** and **DENIES IN PART** FRI's request to file documents under seal in ECF No. 418. The Clerk of the Court is directed to file the following exhibits under seal: ECF Nos. 419-1, 419-2;

(7) **SEALS** Exhibit D to ECF Nos. 404 and Exhibit D to ECF No. 418. The Clerk of the Court is directed to file the following exhibits under seal: ECF Nos. 404-5, 418-5.

If the parties wish to re-file any denied request, addressing the defects identified in this order, it may do so no later than **November 17, 2017** after the issuance of this order. Otherwise, the parties are instructed to file the unredacted or redacted versions of the aforementioned documents as directed by the Court in this Order on the public docket no later than **November 17, 2017** after the issuance of this order. When filing the documents on the public docket, the parties must strictly adhere to the relevant Federal Rules of Civil Procedure, this district's Civil Local Rules, this Court's Standing Order for Civil Cases, and this district's Electronic Case

Filing Administrative Policies & Procedures Manual. Non-compliance with this order or any relevant rules may result in sanctions pursuant to Civil Local Rule 83.1.

**IT IS SO ORDERED.**

DATED: November 2, 2017

Hon. Cynthia Bashant
United States District Judge