1
2
3
4
5
6
7
8
9
10                   **UNITED STATES DISTRICT COURT**
11                  **SOUTHERN DISTRICT OF CALIFORNIA**
12
13   OBESITY RESEARCH INSTITUTE,        Case No. 15-cv-00595-BAS-MDD
     LLC,
14                                      **ORDER:**
                             Plaintiff,
15                                      **(1) GRANTING IN PART AND**
          v.                            **DENYING IN PART FIBER**
16                                      **RESEARCH INTERNATIONAL,**
     FIBER RESEARCH                     **LLC'S MOTION FOR PARTIAL**
17   INTERNATIONAL, LLC,                **SUMMARY JUDGMENT (ECF**
                                        **No. 339)**
18                           Defendant.
                                        **AND**
19
                                        **(2) GRANTING IN PART AND**
20                                      **DENYING IN PART OBESITY**
                                        **RESEARCH INSTITUTE, LLC'S**
21                                      **CROSS MOTION FOR**
                                        **SUMMARY JUDGMENT (ECF**
22                                      **No. 345)**
     AND RELATED COUNTERCLAIM.
23

24         Presently before the Court is Defendant/Counterclaimant Fiber Research

25   International, LLC's ("FRI") motion for partial summary judgment (ECF No. 339)

26   and Plaintiff/Counterdefendant Obesity Research Institute, LLC's ("ORI") cross

27   motion for summary judgment (ECF No. 345). Both parties also submit related

28   requests for judicial notice and evidentiary objections.

                                  – 1 –                              15cv0595

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L. R. 7.1 (d)(1). For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** FRI's motion for partial summary judgment (ECF No. 339) and **GRANTS IN PART AND DENIES IN PART** ORI's motion for cross summary judgment (ECF No. 345).

## I.     BACKGROUND[1]

### 1.     Factual Background

#### a.     Introduction

Both ORI and FRI sell, or seek to sell, glucomannan dietary supplements. According to both parties, glucomannan is a soluble-viscous fiber derived from the Konjac plant root. (JSUMF ¶ 4; FACC ¶ 24; ECF No. 345 at 2.) Glucomannan is used to manufacture fiber-based weight loss supplements. (*See* JSUMF ¶ 1; *see also* FACC ¶ 24; FAC ¶ 10.) Both parties also represent that numerous studies have shown that at least some types of glucomannan are effective for losing weight. (*See* JSUMF ¶¶ 5-7; *see also* FACC ¶ 24; FAC ¶ 10). One of the main disputes between the parties is whether different types, grades, places of origin, processing procedures, and/or characteristics, including viscosity, of the specific glucomannan products alter its effectiveness on weight loss. (ECF No. 339 at 7-11, 13-15; ECF No. 345 at 3-5, 6-9.)

#### b.     ORI and Lipozene

"In 2002, Fiber Thin, LLC entered into an agreement with its contract manufacturer, Natural Alternatives, Inc. ('NAI'), to manufacture a fiber-based weight loss supplement also called FiberThin." (FACC ¶ 1.) At the time of the 2002

---

[1] In accordance with this Court's Standing Order for Civil Cases, the parties also submit a Joint Statement of Undisputed Material Facts ("JSUMF"). (ECF No. 402.) The operative counterclaims in this action is the First Amended Counterclaims ("FACC"). (ECF No. 41.) The operative complaint in this action is the First Amended Complaint ("FAC"). (ECF No. 139.)

agreement between Fiber Thin, LLC and NAI, NAI had an agreement to source all glucomannan from Shimizu [Chemical Corporation ('Shimizu')]." (*Id.* ¶ 2.) According to ORI, in 2003, Fiber Thin, LLC's contractual rights to sell glucomannan were assigned to ORI, who eventually sold glucomannan as a supplement under the product names of "Propolene" and "Lipozene." (ECF No. 345 at 4 (citing to Ex. 22[2]); JSUMF ¶ 1.) For the Fiber Thin and Propolene products, ORI contracted with NAI to manufacture these products, and NAI sourced its glucomannan from Shimizu. (JSUMF ¶ 8.)

In sum, ORI's former glucomannan products were branded as Fiber Thin and Propolene, sourcing glucomannan from Shimizu through NAI. Currently, ORI sells its glucomannan supplements branded as Lipozene, which is not manufactured with Shimizu's glucomannan.

### c. Relevant Clinical Testing

"In 2003, ORI and NAI agreed to jointly fund a clinical study [(the "Kaats Study")] and NAI hired Dr. Gilbert Kaats and his clinical research organization, Health & Medical Research Foundation." (JSUMF ¶ 5.) "When comparing those in the placebo group to those in the treatment group Dr. Kaats found 'a highly significant reduction in scale weight . . . % body fat . . . and fat mass . . . without a loss of fat-free mass or bone density.'" (*Id.* ¶ 6.) "The difference in mean weight lost was 4.93 pounds, and in fat lost was 3.86 pounds; thus, Dr. Kaats found that 78% of weight lost was attributable to fat." (*Id.* ¶ 7.) ORI's references in its Lipozene advertising to clinical findings of "78% fat loss" and its "holiday study" relate to the Kaats Study. (*Id.* ¶¶ 15-16.) "The Kaats Study was neither developed nor paid for by either Shimizu or FRI." (*Id.* ¶ 25.) An additional glucomannan study referenced by

---

[2] All references to Exs. 1-97 and Exs. 169-180 relate to FRI's exhibits attached to its motion for partial summary judgment and reply, respectively, and all references to Exs. 98-168 and Exs. 181-183 relate to ORI's exhibits attached to its cross motion for summary judgment and reply, respectively.

the parties is a 1984 study completed by Dr. David Walsh (the "Walsh Study"). (Ex. 118.) Yoshi Shimizu, the Chief Executive Officer of Shimizu, represents that Shimizu supplied the glucomannan studied in the Kaats Study (Propol KW) and Walsh Study (Propol A). (ECF No. 360-15 ("Shimizu Opp. Decl.") ¶¶ 4-9.)[3]

When advertising Lipozene, ORI makes several claims about its effectiveness and composition, and uses the Kaats Study to support some of these claims. (JSUMF ¶¶ 10-15.) For example, Lipozene's packaging advertises that it "Helps Reduce Body Fat." (*Id.* ¶ 10.) More specifically, Lipozene's advertising references the Kaats Study as showing that seventy-eight percent of the weight lost while taking Lipozene was fat. (*Id.* ¶ 15; *see also* Exs. 2-4, 99[4] (showing the difference in the mean weight lost was 4.93 of which 3.86 pounds were fat).) Lipozene also states in its commercials that the study's participants "were asked not to change their diet or exercise." Lipozene also characterizes the study as "major university double blind study." (JSUMF ¶ 11.) Additionally, Lipozene's packaging stated that there are "[n]o known allergens in this product." (*Id.* ¶ 13.)

### d. FRI and Shimizu

FRI is a Nevada limited liability corporation that was formed on December 22, 2014. (JSUMF ¶ 20.) Shimizu and FRI entered into a Distribution and Claims Assignment Agreement on February 21, 2015 ("February 2015 Agreement"). (Ex. 94.)[5] Under Section I, titled "Assignment of Legal Claims," the agreement states "Shimizu hereby assigns to Fiber Research all rights title and interest it has to any legal claim related to the false advertising claims relying on Shimizu's studies for the

---

[3] The Court denies ORI's objections to this evidence. (ECF No. 395.) ORI's objections are not sufficient to show this evidence would not be admissible at trial.

[4] ORI represents that this cleaned up version of the Kaats Study was relied on by ORI, and differs slightly from the version provided by FRI in Exhibit 33. FRI does not dispute this. Given this representation, the Court will use Exhibit 99 to reference the Kaats Study.

[5] The Court denies ORI's objections to Exhibits 93-95, which are made on the basis of improper authentication. (ECF No. 399.) ORI's objections are not sufficient to show this evidence would not be admissible at trial.

products with improper Glucomannan ingredients against Obesity Research Group (Lipozene)." (*Id.* § I(a).) The assignment section also states that "[t]his assignment of legal claims, which is incidental to the distribution rights under Section II [Assignment of Distribution Rights in the United States], shall have a term of Three (3) years." (*Id.* § I(d).) Section II, titled "Assignment of Distribution Rights in the United States," states "Shimizu hereby grants to Fiber Research the right to distribute its propriety Glucomannan product in the United States in retail, on the internet and to end users." (*Id.* § II(a).) Further, the agreement states "[a]s to this Section II only, this assignment of distribution rights in the United States shall have a terms of Three (3) years." (*Id.* § II(c).) This section also includes an exclusivity provision that states "Fiber Research agrees only to sell, handle or use only Shimizu provided Glucomannan powder, Konjac powder, Yam flour or any other Glucomannan product." (*Id.* § II(d).)

Shimizu and FRI subsequently amended the February 2015 Agreement, making changes to the scope and duration of the legal claims assignment provision. On August 18, 2017, Shimizu and FRI amended Section I(a) to state "Shimizu hereby assigns to Fiber Research all rights title and interest it has to any legal claim related to violation of the Lahnam [sic] Act or similar law claim, false advertising, fraud, trademark, copyright, intentional interference, or any other similar claim, including, without limitation, relying on Shimizu's studies and any trademark claim, against Obesity Research Group (Lipozene)." (Ex. 93 at 1.) To be effective February 1, 2017, the parties replaced Section I(d) with the following: "Permanent Assignment of Legal Claims. The assignment of Legal Claims in Section I a. of the [February 2015] Agreement, as amended, shall be permanent and without limitation, unless agreed by the Parties in writing." (Ex. 95 at 1.)

On March 10, 2015, FRI sent a letter to ORI's general counsel regarding Lipozene and its advertising. (Ex. 107.) The letter stated, among other things, that ORI's Lipozene contains "adulterations," "is not an equivalent glucomannan

product," and "has less viscosity [than Shimizu's products]." (*Id.*) In the letter, FRI also accused ORI of "falsely and fraudulently market[ing] and promot[ing] Lipozene® using three clinical studies on pure, unadulterated glucomannan," taking the position that ORI's reliance on "the glucomannan studies is not scientifically valid." (*Id.*) The letter also contains accusations that ORI caused "significant damages" to FRI and that ORI "[stole] . . . research on the more expensive, pure product." (*Id.*) And finally, FRI concluded its letter by stating that this "commercial injury gives rise to a suit for a claim under the Lanham Act." (*Id.*)

### 2. Procedural Background

On March 16, 2015, ORI filed a Complaint for Declaratory Judgment against FRI asking the Court to declare that ORI has no liability under either the Lanham Act, 15 U.S.C. §§ 1125 *et seq.*, or the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301 *et seq.* (ECF No. 1.) On April 13, 2015, FRI filed an Answer, in which it asserts the affirmative defense of unclean hands, and related counterclaims. (ECF No. 16.) FRI amended its counterclaims, and filed the FACC on May 28, 2015. (ECF No. 41.) The FACC alleges a violation of the Lanham Act (false advertising, unfair competition, and false designation in violation of section 1125(a)(1)), a violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and a violation of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (*Id.*) ORI filed a Motion to Dismiss (ECF No. 43), and the Court denied in part and granted in part the motion. (ECF No. 120.)

Following the Court's Order on the Motion to Dismiss, ORI amended its Complaint to add Shimizu as a defendant. (ECF No. 139.) Shimizu moved to dismiss for lack of subject matter jurisdiction (ECF No. 207), and the Court granted Shimizu's motion. (ECF No. 335.) The parties now bring the present motion for

partial summary judgment (ECF No. 339) and cross motion for summary judgment (ECF No. 345).

## II.    STANDARD

### 1.    Motion for Summary Judgment

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "The purpose of partial summary judgment 'is to isolate and dispose of factually unsupported claims or defenses.'" *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 507 F. Supp. 2d 1074, 1077 (N.D. Cal. 2007) (quoting *Celotex*, 477 U.S. at 323-24).

If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party meets this initial burden, however, the nonmoving party cannot defeat summary judgment

15cv0595

merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." (citing *Anderson*, 477 U.S. at 242, 252)). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Such admissions may be presented in testimony of a party's own witnesses through declarations. *See* Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1082-83 (E.D. Cal 2010). Additionally, declarations that contain only conclusory statements, instead of specific facts, are insufficient unless accompanied by other evidence to corroborate the statements. *See Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) (finding no genuine issue of whether an IRS form was sent when the supporting declaration only contained a conclusory statement that the form was never received).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"[T]he district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The

court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

### 2. Article III Standing

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560 (citation omitted). The "irreducible constitutional minimum" of Article III standing is comprised of three elements: (1) "the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized; and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of" such that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Consequently, a case that lacks Article III standing must be dismissed for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

– 9 –

### 3. Standing under the Lanham Act

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1388 (2014) (quoting 15 U.S.C. § 1125(a)(1)). The Supreme Court has determined that a statutory cause of action under the Act extends only to plaintiffs "whose interests 'fall within the zone of interests protected by the law invoked,'" *id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and "whose injuries are proximately caused by violations of the statute," *id*. at 1390. Therefore, to allege statutory standing under the Lanham Act, a party must first meet the "zone of interest" test. *Id*. Second, a party must sufficiently allege that the injuries were proximately caused by a violation of the statute. *Id*.

The "zone of interest" test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the cause of action. *Lexmark*, 134 S. Ct. at 1389 (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) ("[W]e have always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff.")). "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id*. (citation and quotations omitted). In the false advertising context, Congress' goal was to protect persons engaged in commerce against unfair competition. *Id*. Thus, "to come within the zone of interests in a suit for false advertising under §1125(a)," a plaintiff must show an injury to a commercial interest in reputation or sales. *See id*. at 1390.

To establish proximate cause under section 1125(a), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 134 S. Ct. at 1391. "That showing is generally not made when the deception produces injuries to

a fellow commercial actor that in turn affect the plaintiff." *Id.* Although it may be more difficult to establish proximate causation when the parties do not directly compete, there need not be an allegation that the parties are in direct competition with each other. *Id.* at 1392; *see also Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (finding proximate cause when defendants were marketing consultants (and not direct competitors) who misbranded the plaintiff's product); *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (finding standing even though parties were not direct competitors "as [plaintiff] does not produce finished consumer products, [but because the parties] both produce competing sources of folate for use in dietary supplements").

## III. Evidence for Summary Judgment

The Court first addresses the parties' requests regarding the evidence supporting the motions for partial summary judgment and cross summary judgment. These requests fall into two categories: requests for judicial notice and evidentiary objections to the evidence cited by the parties.

### 1. Request for Judicial Notice

Federal Rule of Evidence 201 allows a court to take judicial notice of certain evidence and facts that are not subject to reasonable dispute if they are (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may take judicial notice of "matters of public record." *Id.*; *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Therefore, while the court may take notice of the existence of documents in some cases, it does not necessarily take notice of the facts

within those documents. *See Rezentes v. Sears, Roebuck & Co.*, 729 F. Supp. 2d 1197, 1206 (D. Haw. 2010).

The parties each submit requests for judicial notice of various documents, including books, journal articles, regulations, and many others. The parties also opposed each other's requests for judicial notice, showing that many of these document are disputed and that their accuracy can be reasonably questioned. The Court does not need to address each request in turn, but rather declines to take judicial notice of any documents for the purposes of these summary judgment motions. Not only do many questions of material fact remain, but many of the documents are not appropriate for judicial notice. The Court will, however, take judicial notice of the Federal Drug Administration ("FDA") regulation under 21 C.F.R. § 101.100 because the Court must judicially notice federal regulations and the contents of the Federal Register. *See* 44 U.S.C. § 1507; *see also Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,* 366 F.3d 692, 702 n. 5 (9th Cir. 2004); *Adams v. United States*, No. 03-0049-E-BLW, 2009 WL 2590205, at *2 (D. Idaho Aug. 16, 2009).

### 2. Evidentiary Objections

For a motion for summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." *See Block v. City of Los Angeles,* 253 F.3d 410, 418-19 (9th Cir. 2001). "Rule 56[(c)] requires only that evidence 'would be admissible', not that it presently be admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.") Thus, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). And

while a court will consider a party's evidentiary objections to a motion for summary judgment, "[o]bjections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself." *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146 L BLM, 2014 WL 1286561, at *16-17 (S.D. Cal. Mar. 31, 2014) (citing *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006)); *see also Comite de Jornaleros de Redondo Beach*, 657 F.3d at 964 n.7 ("[Rule] 56(c)(2) permits a party to 'object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence'" (quoting Fed. R. Civ. Pro. 56)).

The number of evidentiary objections in this case are in the hundreds, which is overwhelmingly due to ORI. The Court declines to address each objection, and will rather grant or deny an objection as needed for this order. Additionally, if addressed individually, the majority of ORI's objections would be dismissed as baseless because ORI misapplies the standard for evidence at summary judgment. ORI argues that the form of the evidence at summary judgment must be admissible at trial. That is squarely wrong. Additionally, ORI's objections are largely "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence," which should be rejected. *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)). Though ORI submitted amended objections in an attempt to resolve this issue (ECF No. 399), the sheer volume of objections remains superfluous, repetitive, and wasteful, especially given ORI continues to use the incorrect standard for evidence at summary judgment.

Thus, the Court will address any specific objections as needed for its ruling on these summary judgment motions. Otherwise, the evidentiary objections are denied as moot.

# IV. ANALYSIS

## 1. Standing

### a. FRI's Standing to Bring Representative Claims for Shimizu

ORI moves for summary judgment arguing that FRI lacks Article III standing and statutory standing under the Lanham Act to bring representative claims for Shimizu. First, the Court will analyze whether Shimizu's assignment of its legal claims is enforceable under Nevada law. Second, the Court will address whether Shimizu has a "case or controversy" and will discuss its previous order, which ORI argues determined that Shimizu lacked Article III standing. Lastly, the Court will address whether FRI lacks statutory standing under the Lanham Act to bring Shimizu's claims.

### i. Assignment of Shimizu's Claims

ORI challenges whether Shimizu's assignment of its legal claims to FRI was valid. ORI argues that Nevada law prohibits the assignment of tort and fraud legal claims. Additionally, ORI argues that, if legal claims were assigned, Shimizu assigned "bare" claims to FRI because the assignment was unaccompanied by an interest in Shimizu's underlying intellectual property. ORI further contends that if FRI did receive an interest, FRI received no more than a non-exclusive license. FRI objects to these characterizations of its agreement with Shimizu, and instead contends FRI was validly assigned Shimizu's legal claims along with an exclusive interest to sell Shimizu's products.

For the foregoing reasons, the Court finds that, through the February 2015 Agreement, Shimizu assigned FRI the legal claims asserted in this case. To the extent it is relevant, Shimizu also assigned FRI a non-exclusive license to distribute Shimizu's products in the United States.

### A. Distribution and Assignment Agreement

As an initial matter, for standing purposes, a court must evaluate the positions of the parties at the time the pending lawsuit is filed and throughout the proceedings. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). Shimizu and FRI entered into a "Distribution and Claims Assignment Agreement" on February 21, 2015 (Ex. 94 (mistakenly dated as "February 21, 2014")), then subsequently amended the agreement on August 18, 2015 (Ex. 93 (amending the "Assignment of Legal Claims" section) and February 1, 2017 (Ex. 95 (creating a "Permanent Assignment of Legal Claims"). (*See* ECF No. 339 at 23 ("On February 21, 2015, Shimizu and Fiber Research entered into a Distribution and Claim Assignment Agreement, amended August 18, 2015, and again as of February 1, 2017 to make the assignment permanent and unlimited . . . .").) ORI initially filed its Complaint on March 16, 2015 (ECF No. 1), and FRI subsequently filed its counterclaims on behalf of itself and Shimizu on April 13, 2015 (ECF No. 16), which it amended on May 28, 2015 (ECF No. 41). Therefore, the Court will evaluate the unamended February 2015 Agreement for standing purposes because FRI must establish it had standing when it filed its counterclaim, and both amendments occurred after that date.

### B. Validity of Assignment

Turning to the legal claims at issue, FRI only asserts claims under the Lanham Act on behalf of Shimizu.[6] The Court must determine whether the February 2015 Agreement encompassed the Lanham Act claim and whether the assignment of those claims were valid under Nevada law.

---

[6] This Court previously determined that FRI lacked standing to assert the UCL and FAL claims on behalf of Shimizu because FRI only suffered damages indirectly, which is insufficient to maintain claims under those statutes. (ECF No. 120 at 8-9.)

First, the parties do not dispute that the Lanham Act false advertising claims would fall under the language of the assignment. The Court agrees. Turning to the language of the February 2015 Agreement, the assignment provision states "Shimizu hereby assigns to Fiber Research all rights title and interest it has to any legal claim related to the false advertising claims relying on Shimizu's studies for the products with improper Glucomannan ingredients against Obesity Research Group (Lipozene)." (Ex. 94 § I(a).) This provision is clear and unambiguous, and, though it is limited in scope, the Court finds that it encompasses the Lanham Act false advertising claim. *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) ("[The] court initially determines whether the 'language of the contract is clear and unambiguous; if it is, the contract will be enforced as written.'") (quoting *Davis v. Beling*, 278 P. 3d 501, 151 (Nev. 2012)). Here, the Lanham Act claim asserted by FRI on behalf of Shimizu is (1) against ORI, (2) is a legal claim, and (3) is based on ORI's allegedly false advertising statement for its glucomannan product that uses the Kaats Study, which studied Shimizu's Propol-branded glucomannan.

Second, the Court finds that Shimizu and FRI's assignment agreement is valid under Nevada law.[7] Though ORI contends that Nevada law prohibits the assignment of tort claims, Nevada law only prohibits the assignment of personal injury tort claims. *See, e.g., Edward J. Achrem v. Expressway Plaza Ltd. P'ship*, 112 Nev. 737, 740 (1996) (prohibiting assignment of personal injury claim); *Platinum Unit-Owners' Ass'n v. Residential Constructors*, *LLC*, No. 2:14-CV-01076-GMN-GW, 2015 WL 1186530, at *5 (D. Nev. Mar. 16, 2015) ("Though the Nevada Supreme has never expressly held that property damage claims may be assigned, the policy reasons for prohibiting the assignment of personal injury claims are premised upon the personal nature of the claims themselves and a desire to limit unscrupulous people

---

[7] The parties do not dispute that Nevada law governs the interpretation and construction of the February 2015 Agreement. (*See* Ex. 95 § III(b) (including a choice-of-law provision that states "[t]his agreement shall be interpreted and construed in accordance with the laws of Nevada").)

trafficking in pain and suffering." (internal citations and quotations omitted)). This prohibition of assigning personal tort claims makes sense given the personalization of the injuries and damages that creates a need for the actually injured party to be a part of the case. *See id.*; *Waterton Global Mining Co. LLC v. Cummins Rocky Mountains*, No. 14-cv-0405-RCJ-VPCLLC, 2015 WL 714485, at *4 (D. Nev. February 18, 2015) ("It appears that a significant policy reason for precluding the assignment of the tort action in these cases is premised on the personal nature of the claim itself."). These policy concerns against assignment are absent when the injury is not personal in nature. *See id.*

Similarly, Nevada law prevents the assignment of fraud claims when a party is personally defrauded (ECF No. 345 at 16 (citing to *Prosky v. Clark*, 32 Nev. 441, 109 P. 793 (1910), which finds a personal fraud claim unassignable because such claims "are personal to the one defrauded")), but this assignment is not at issue here. Unlike the UCL or FAL claims that require a plaintiff to be defrauded, the Lanham Act has no such requirement. *See* 15 U.S.C. § 1125(a) (including no requirement of scienter); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 213 (3d Cir. 2002) ("[T]he scienter requirement for common law fraud is absent from § 43(a)."); *Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir. 1980) ("[Section 43(a)] does not require proof of intent to deceive."); *SKEDKO, Inc. v. ARC Prod., LLC*, No. 3:13-CV-00696-HA, 2014 WL 585379, at *2 (D. Or. Feb. 13, 2014) ("[P]laintiff proceeds under Section 43 of the Lanham Act, which does not require plaintiff to prove fraud as an element.); *see also Waterton*, 2015 WL 714485, at *4 (declining to extend prohibition on assignments where the underlying policy is not served in the current case). Further, the Court is not convinced that Nevada state law prevents the assignment of federal false advertising claims like Lanham Act claims. *C.f. Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 906 (9th Cir. 2005) ("[C]ourts have upheld restrictions on assignment of certain federal claims where assignment of such claims would result in nuisance suit.") Though ORI states "[t]here

is no authority to support the contention that federal false advertising claims are assignable under Nevada contract law," it does not cite to any law to the contrary.[8] (ECF No. 347 at 17.)

Thus, though Nevada's law and public policy prevents the assignment of personal injury tort claims and fraud claims where a party is personally defrauded, neither of those claims are at issue here. The Court finds that the assignment is valid.[9]

## C.    Commercial Interest Conveyed

For the purposes of this motion, the Court finds FRI held a non-exclusive license to distribute Shimizu in the United States when it filed its counterclaims. First, FRI and Shimizu's agreement is, by definition, not exclusive. *See* Black's Law Dictionary (10th ed. 2014) (defining an "exclusive right to sell" as a "right to sell a principal's products . . . to the exclusion of all others, including the owner."). Mr. Shimizu's declaration states "Shimizu negotiated an exclusive distribution agreement with FRI, in which we transferred distribution rights with the United States to Propol® . . . (with the *exception of a few existing customers*)." (Shimizu Opp. Decl. ¶ 22 (emphasis added).) Despite FRI characterizing the agreement as "exclusive," it

---

[8] ORI cites as support the Court's previous finding that FRI, "[a]n uninjured assignee[,] does not have standing to sue in a representative capacity" for UCL and FAL claims. However, that decision was based on the statutory standing requirements of those California state laws, including an "express statutory requirement" prohibiting a noninjured assignee from "stand[ing] in the shoes of the *original, injured claimant.*" *Amalgamated Transit Union, Local 1756, AFL-CIO v. Super. Ct.*, 46 Cal. 4th 993, 1002 (2009) (emphasis in original). The Court's reasoning is not instructive here because the Lanham Act lacks any similar express prohibition. Moreover, the underlying policy concerns are not implicated in this case because the Lanham Act does not require a party to be personally defrauded like the UCL and FAL. (ECF No. 120 at 8-9 ("A plaintiff must also establish that it has 'personally suffered such harm.'").)

[9] In its Reply, ORI raises for the first time that any assignment of Shimizu's goodwill or business reputation is invalid. (ECF No. 394 at 3-4.) The Court declines to consider this attenuated argument because the "district court need not consider arguments raised for the first time in a reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (recognizing the general principle that arguments raised for the first time in a reply brief are waived). Moreover, the Court is not persuaded by the inapplicable case law ORI uses to support its argument. (ECF No. 394 at 3-4) (citing to cases regarding personal reputation and inapplicable non-Nevada state law).)

is not.[10] Though it may be true that FRI has the majority of the rights to distribute Shimizu's products in the United States, FRI is not the only customer permitted to do so. The only "exclusive" interest granted by the February 2015 Agreement belongs to Shimizu. (Ex. 94 § II(c) (binding only FRI to distribute Shimizu's products exclusively and is silent as to Shimizu's obligations).) Second, the agreement amounts to a license because FRI received a shared right to use and sell Shimizu's product. Black's Law Dictionary (10th ed. 2014) (defining a "nonexclusive license" as a "license of intellectual-property rights that gives the licensee a right to use, make, or sell the licensed item on a shared basis with the licensor and possibly other licensees").

### ii.    Shimizu's Article III Standing

The "irreducible constitutional minimum" of Article III standing is comprised of three elements: (1) "the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized; and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of" such that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). In order to award declaratory relief, the Court must first determine whether there is "a case of actual controversy." 28 U.S.C. § 2201(a); *see also Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986). This requirement is "identical to the Article III's constitutional case or controversy

---

[10] After reviewing Mr. Shimizu's declaration, the Court was surprised that FRI's motion stated that "Fiber Research is the *only* authorized distributor of Propol branded glucomannan dietary supplements in the United States" (emphasis added) yet cited to Mr. Shimizu's statement stating the opposite. The Court cautions both parties' counsel not to let overzealous advocacy erode their credibility as officers of the court.

requirement." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981)).

Solely relying on the Court's previous Order (ECF No. 335)—which addressed ORI's argument that Shimizu had Article III standing—ORI concludes that FRI lacks Article III standing to bring Shimizu's claims. ORI argues that the Court made this determination in its Order. ORI skips several analytical steps. In its previous Order, the Court determined that "ORI failed to carry its burden of demonstrating that it has standing to pursue a declaratory-judgment claim against Shimizu." (ECF No. 335 at 10.) Specifically, ORI "fail[ed] to present facts, either alleged in the FAC or provided in evidence, that there is a 'substantial controversy' between itself and Shimizu 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (*Id.*) This decision was based largely on the lack of evidence and allegations presented by ORI that Shimizu's claim was "'actual' or "imminent.'" (*Id.* at 8 ("In fact, ORI wholly neglects an essential component of demonstrating standing in its opposition—immediacy.").) Shimizu previously stated that it had no intention of bringing any legal claims against ORI on behalf of itself because Shimizu believed it had assigned its relevant legal rights to FRI. (*Id.* at 6-7.) ORI had failed to provide evidence or allegations that stated otherwise. (*Id.* at 8.)

Contrary to what ORI infers, this Court's Order included no determination regarding the "claim" Shimizu may have against ORI or the validity of the assignment agreement between Shimizu and FRI. (*See* ECF No. 345 at 11 (arguing that "the Court has already determined that, *even if* Shimizu never assigned anything to FRI and instead maintained all claims, no case or controversy exists to adjudicate ORI's alleged false advertising.") (emphasis in original).) ORI misinterprets the Court's previous reasoning. (ECF No. 335 at 7 ("Even if the Court assumes, for the sake of argument, all of ORI's points as true, ORI ultimately fails to carry its burden of demonstrating that it has standing to pursue a declaratory-judgment action against

Shimizu.").) To be clear, the Court granted Shimizu's Motion to Dismiss in part because *ORI failed* to carry its burden of showing Article III standing existed. The Court rejects ORI's attempt to use the result of its earlier "neglect" to now dismiss claims against it.

Instead, for the first time, the Court analyzes whether FRI has Article III standing to bring Shimizu's claims, and finds that it does. The first prong of standing is satisfied because FRI provides support to show that Shimizu was injured in fact by losing opportunities to expand into the weight loss supplement market through its distributors and failing to realize gains from its research and development investments. (*See* Shimizu Opp. Decl. ¶¶ 16-17,[11] 22-23); *see also Lujan*, 504 U.S. at 560-61. Even though ORI did not directly injure FRI for these claims, Shimizu assigned its injuries and related legal claims to FRI. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) ("[W]ithin the past decade we have expressly held that an assignee can sue based on his assignor's injuries."). Second, FRI has met its burden to show that Shimizu's injuries were caused by ORI's actions flowing directly from the allegedly false advertisements relating to the Kaats and Walsh studies. Lastly, FRI has shown that the injury is likely redressed by a favorable decision as FRI seeks monetary and injunctive relief for Shimizu's damages.

### iii. Shimizu's Standing for Claims Under the Lanham Act

ORI also argues that FRI lacks statutory standing to bring claims on behalf of Shimizu under the Lanham Act. ORI reasons that FRI—as an assignee—is not the real party in interest because FRI was not assigned the requisite interest in the underlying intellectual property. For the foregoing reasons, the Court disagrees with ORI, and finds FRI has statutory standing under the Lanham Act to bring claims on behalf of Shimizu.

---

[11] The Court denies ORI's objection to this evidence. (ECF No. 395.) ORI's objection is not sufficient to show why this evidence would not be admissible at trial.

In making its argument that FRI lacks statutory standing, ORI misapplies the relevant standing standard. ORI argues that, for false advertising claims under section 43(a) of the Lanham Act, "an interest in the asset allegedly harmed" is required. (ECF No. 345 at 11.) However, that standing requirement applies to Lanham Act copyright and trademark infringement claims, which are not at issue here. *See Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 16-cv-415-HZ, 2016 WL 3896826, at *3 (D. Or. July 18, 2016) (rejecting defendant's argument who "relies on cases and principles of patent law and fails to address § 43(a) of the Lanham Act, which permits a broader class of plaintiffs standing than § 32(a)"). ORI supports its interpretation by citing cases that almost exclusively analyze the wrong Lanham Act claims. *Compare Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003) ("While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143 (9th Cir. 2008) (explaining that section 43(a) "'goes beyond trademark protection' and addresses unfair competition") (quoting *Dastar*, 539 U.S. at 29). In fact, nowhere does ORI cite to case law on point.[12] Also

---

[12] ORI cites to the following cases as legal support. (ECF No. 345 at 12-14.) All but two cases fail to address standing for false advertising claims under section 43 of the Lanham Act. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) (addressing trademark infringement without false advertising claims); *Mercado Latino, Inc. v. Soler*, Nos. 90-56178, 9056160, 1991 WL 266440, at *1 (9th Cir. Dec. 12, 1991) (providing one line regarding standing for trademark infringement without further analysis); *Crown Co. v. Nye Tool Works*, 261 U.S. 24, 40 (1923) (stating general basic law on patent infringement); *Silvers*, 402 F.3d at 885 (relating to only "copyright infringement"). *National Licensing Association, LLC v. Inland Joseph Fruit Co.* addresses standing under section 43 of the Lanham Act, but ORI omits this from its analysis and instead (erroneously) focuses on the case's section 32 standing analysis. 361 F. Supp. 2d 1244, 1255-56 (E.D. Wash. 2004). ORI also cites twice to an unpublished case from the Western District of North Carolina that finds, without any analysis, that section 43 of the Lanham Act "require[s] that the Plaintiff own the intellectual property rights in order for the [section 43] claims to be plausible." *McFee v. CPP Int'l*, 2017 U.S. Dist. LEXIS 21462, at *8 (W.D.N.C. Feb. 15, 2017). This finding is contradicted the plain language of the Lanham Act as well as other case law. *Compare* 15 U.S.C. § 1125(a) (authorizing suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising), *with* 15 U.S.C. § 1114(1) (authorizing suit by "the registrant" against a defendant for unauthorized use of a registered mark); *see also Waits v. Frito-Lay,*

within this line of faulty reasoning, ORI directly distorts the law, which is not well taken.[13]

Different standards of standing apply under the Lanham Act, which *Inland Joseph Fruit Co.* addresses:

> The sources of the relevant standing rules in Lanham Act actions are sections 32(1) [Trademark Infringement] and 43(a) [False Advertising] of the Act. Section 32 of the Lanham Act grants standing to assert a claim of trademark infringement to the 'registrant' of the mark. . . . Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 32 . . . [However, u]nlike § 32(1), which grants a right of action solely to the registrant of a trademark, § 43(a) permits 'any person who believes that he or she is likely to be damaged' by the proscribed conduct to bring a civil action. Where a plaintiff might lack standing under § 32, a plaintiff may yet have standing to bring an action under § 43(a).

361 F. Supp. 2d at 1255-56 (internal citations omitted); *see also Lexmark*, 134 S. Ct. at 1390 ("We thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,

_____

*Inc.*, 978 F.2d 1093, 1108-09 (9th Cir. 1992) ("We have recognized that simple claims of false representations in advertising are actionable under section 43(a) when brought by competitors of the wrongdoer, even though they do not involve misuse of a trademark."); *Murphy v. Provident Mutual Life Ins. Co.*, 756 F. Supp. 83, 86 (D. Conn. 1990), *aff'd*, 923 F.2d 923 (2d Cir. 1990) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks."). Lastly, ORI provides some Nevada state case law in this section regarding assignments (*Gallegos v. Malco Enters. of Nev.*, 255 P.3d 1287, 1289 (Nev. 2011)), but what "interest" was conveyed is not relevant for standing under section 43.

[13] ORI states: "Thus, even despite the broad language of § 43(a), the plaintiff in a false advertising claim *must show that it has owns* [sic] *the underlying intellectual property* harmed," citing to *Inland Fruit*. (ECF No. 347 at 12 (emphasis added).) *Inland Joseph Fruit, Co.* instead states "Despite § 43(a)'s broad language, to maintain a § 43(a) claim, the plaintiff must show that it *has a commercial interest* in the allegedly misused mark that is 'likely to be damaged,'" (361 F. Supp. 2d at 1256 (emphasis added)), and in the previous line states in a parenthetical that "[t]he question of ownership is *immaterial to standing under § 43(a)*, since standing may lie with mere users of trademarks." *Id.* at 1256 (emphasis added) (citing to *Murphy v. Provident Mutual Life Ins. Co.*, 756 F. Supp. 83, 86 (D. Conn.)).

726 F.3d 62, 84 (2d Cir. 2013) (similarly contrasting the standing requirements under sections 32 and 43 of the Lanham Act). In short, though the ownership of the underlying intellectual property is required for infringement claims under the Lanham Act, it is not an issue here.[14] *See Murphy*, 756 F. Supp. at 86 ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks.").

Thus, FRI is not required to own or otherwise have an interest in the underlying intellectual property at issue to bring a claim on behalf of Shimizu. Instead, the Court analyzes FRI and Shimizu's assignment as a regular assignment of legal claims. Because a valid assignment allows for FRI to stand in the shoes of Shimizu for its claims, the Court must determine whether Shimizu had standing to bring a claim under the Lanham Act. *See* 6A C.J.S. Assignments § 110 ("[A]n assignee of a contract occupies the *same legal position* under a contract as did the original contracting party, he or she can acquire through the assignment *no more and no fewer*

---

[14] Even if an interest in the underlying asset was required, Shimizu assigned a sufficient commercial interest to FRI for standing purposes. The February 2015 Agreement was both a distribution and assignment agreement. (*See* Ex. 94.) In fact, the February 2015 Agreement stated that the "assignment of legal claims . . . is incidental to the distribution rights" conferred in the same agreement. (*Id.*) As discussed above, FRI received a non-exclusive license to distribute Shimizu's product along with the legal claims assignment. Courts have found that a non-exclusive license is a commercial interest sufficient for a claim under section 43(a). *See Ouabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159-60 (1st Cir. 1977) (dismissing plaintiff's claims under § 32 because plaintiff was not a "registrant" or "exclusive licensee" but allowing plaintiff's claim to proceed under § 43); *Shell Co. v. Los Frailes Serv. Station, Inc.*, 596 F. Supp. 2d 193, 203 (D.P.R. 2008), *aff'd sub nom. The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10 (1st Cir. 2010) ("Courts have allowed licensees (exclusive or nonexclusive) . . . to bring claims pursuant to section 1125(1)."); *Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 16-CV-00415-HZ, 2016 WL 3896826, at *4 (D. Or. July 18, 2016) ("[Defendant] fails to cite any authority for the proposition that a non-exclusive licensee necessarily lacks standing under § 43(a)); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 WL 11117169, at *2 (E.D. Wash. Nov. 30, 2015) (limiting a non-exclusive license holder "to pursuing a trademark claim under 15 U.S.C. § 1125(a)"). Likely, this is because ownership of the underlying mark is not required under section 43(a), but the point still remains.

*rights* than the assignor had, and cannot recover under the assignment any more than the assignor could recover." (emphasis added)).

As this Court has discussed, "[t]he 'zone of interest' test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the cause of action." *Lexmark*, 134 S. Ct. at 1389; *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) (stating that, for standing purposes, "a false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim" (emphasis in original)). "To come within the zone of interest in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1390.

FRI provides evidence that shows that Shimizu invested millions of dollars into developing its products and sought to expand its product distribution, including within the United States. (Shimizu Opp. Decl. ¶¶ 16-17, 22-23.) The evidence further shows that Shimizu created a relationship with FRI to serve as its newest U.S. distributor, largely because FRI was in a stronger position to "launch direct-to-consumer" products that Shimizu, given its location in Japan. (*Id.* ¶¶ 22-23.) Lastly, while it is not a direct competitor with Lipozene, Shimizu also distributes glucomannan, which is the main ingredient in Lipozene, and supplies glucomannan to FRI, who seeks to compete with Lipozene in the glucomannan supplement market. (*Id.* ¶¶ 16-17, 22-23; *see also* ECF No. 360-12 ("Alkire Opp. Decl.") ¶¶ 2-9, 19-21.[15]) The likelihood of injury is also heightened here because ORI advertises Lipozene—which no longer contains Shimizu's Propol-banded glucomannan—using a clinical study that analyzed Propol. Shimizu claims that ORI cannot make these advertising claims anymore because the study's results are unique to Shimizu's glucomannan. (Shimizu Opp. Decl. ¶¶ 3-14, 21[16] (stating in part that Lipozene contains a

---

[15] The Court denies ORI's objections to this evidence. (ECF No. 395.) ORI's objections are not sufficient to show this evidence would not be admissible at trial.
[16] The Court denies ORI's objections to this evidence. (ECF No. 395.) ORI's objections are not sufficient to show this evidence would not be admissible at trial.

"cheap[ly]" made glucomannan that is "chemically very different" from Shimizu's product.) The Court finds that FRI met its burden to show that Shimizu likely suffered an injury to a commercial interest in reputation or sales.

Additionally, FRI has provided enough evidence to support its allegations that ORI proximately caused Shimizu's injuries by using a clinical study analyzing Propol to sell an allegedly inferior glucomannan product. (Shimizu Opp. Decl. ¶¶ 16-17, 22-23) (stating, among other things, that Shimizu invested millions of dollars to study and develop Propol with the intent to sell Propol to customers and that Lipozene contains a cheap "knockoff" product); *see also Obesity Research Institute, LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 945-47 (S.D. Cal. 2016) ("We thus hold that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff.").

Because a valid assignment allows for an assignee to "stand in the shoes" of the assignor, the Court finds FRI has standing to proceed with Shimizu's Lanham Act claim.

### b. FRI's Statutory Standing Under the Lanham Act

ORI's last standing argument is that FRI lacks statutory standing to sue on its own behalf under the Lanham Act. The Court addressed this issue at the motion to dismiss stage, and found that FRI met its burden at that time. ORI now disputes that FRI has the evidentiary support to maintain this finding. ORI states that FRI failed to provide any evidence to support its allegations in the FACC. (ECF No. 345 at 5.) ORI cites to and discusses the statements made in two declarations from FRI's Chief Executive Officer, John Alkire, and Mr. Shimizu, as well as the February 2015 Agreement. (*Id.*) The Court finds that ORI has failed to meet its burden to show that FRI lacks standing to sue under the Lanham Act. Additionally, even if ORI met its

burden, FRI has provided enough evidence to rebut ORI's arguments and show that it has likely suffered an economic or reputational injury proximately caused by ORI's false advertisements.

As discussed above, the standard for standing under the Lanham Act is not a difficult one. *Lexmark*, 134 S. Ct. at 1389. "[A] typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389 (quoting 15 U.S.C. § 1125(a)(1)). "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id*. (citation and quotations omitted).

The Court may consider sworn affidavits for summary judgment. *See* Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1082-83 (E.D. Cal 2010) ("A party may present testimony of its own witnesses by declarations [at summary judgment]."). Declarations must contain more than conclusory statements, such as specific facts, unless the declarations are corroborated by other evidence. *C.f. Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) (finding no genuine issue of material fact whether an IRS form was sent when the supporting declaration only contained a conclusory statement that the form was never received). The Court is also prohibited from assessing the credibility of these declarations, and rather must draw any inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment.").

Unlike ORI contends, FRI's declarations are not conclusory, and instead lay out particular details of when and what steps FRI took to enter the market of glucomannan supplements and compete with ORI, as well as the economic or reputational injury it incurred due to ORI. (*See* Alkire Opp. Decl. ¶¶ 2-9, 19-21; Shimizu Opp. Decl. ¶¶ 22-23.) And, though FRI and ORI are not required to be direct competitors, FRI's declarations accuse ORI of using clinical studies using Shimizu's products (which FRI is authorized to distribute and uses exclusively) to falsely advertise Lipozene to FRI's detriment. (*See* Alkire Opp. Decl. ¶¶ 2-9, 19-21.) ("As a direct result of ORI's use of claims derived from the Propol® studies to sell an inferior product, FRI has been unable to make inroads into the direct to consumer glucomannan supplement marketplace.").) Additionally, the February 2015 Agreement and March 10, 2015 demand letter corroborate some of the statements in FRI's declarations that FRI sought to distribute Shimizu's products and compete with ORI's Lipozene. (Exs. 94, 107); *see Matsushita*, 475 U.S. at 587.

Additionally, though ORI emphasizes that FRI did not have a sale at the time FRI filed its counterclaims, having a sale is not the sole mechanism for standing under the Lanham Act. *See Lexmark*, 134 S. Ct. at 1389-90. The law is clear that a party does not need to show a loss of sales. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("Of course, because of the possibility that a competitor may suffer future injury . . . a competitor need not prove [past] injury when suing to enjoin conduct that violates section 43(a)."); *see also Oreck Direct v. Dyson, Inc.*, 544 F. Supp. 2d 502, 516 (E.D. La. 2008) ("A plaintiff need not demonstrate that it has, in fact, lost sales because of the defendant's advertisements, to establish that it has suffered injury for standing purposes, so long as a reasonable basis exists for the belief that an advertising claim will cause the plaintiff injury." (internal quotation marks and citation omitted)). Moreover, a lack of sales is consistent with FRI's alleged economic injury that it was shut out of the glucomannan supplement market because of ORI's false advertisements. (*See* ECF No. 394 at 5

(describing FRI's attempts to compete with ORI, including sending ORI a demand letter to which ORI responded to with this lawsuit).) Based on the evidence presented, a reasonable juror could find that FRI sought to enter the glucomannan supplement market, but found it was blocked from doing so in part by ORI utilizing a clinical study on its exclusive source of glucomannan. *See Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (finding standing when both parties produce competing sources of ingredients for use in dietary supplements); *see also U.S. v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 492, 492 n.3 (9th Cir. 1990) ("Although the evidence in Apodaca's affidavit is hardly overwhelming, we believe that a rational trier of fact could find it to be credible."). Additionally, though the Court does not consider FRI's activities since filing its counterclaims for standing purposes, these later market activities are consistent with FRI's claims.[17] (Alkire Opp. Decl. ¶ 6 (stating that FRI, among other things, has since registered a website, launched a direct to consumer Propol, and made a sale).)

In viewing all inferences in the light most favorable to FRI, the Court finds that FRI has standing to proceed with its Lanham Act claims.

## 2. FRI's False Claims Under the Lanham Act

FRI requests this Court to find that, as a matter of law, ORI is liable for false advertising under the Lanham Act.[18] FRI bases its claim on six of ORI's allegedly

---

[17] Additionally, ORI attempts to refute FRI's claim that FRI could not enter the market because Lipozene's low price point by stating that FRI now sells a glucomannan product for a lower per unit cost than Lipozene. (ECF No. 394 at 8) This argument misses the mark. FRI maintains it could not enter the market with "a dietary supplement form of Propol" like the product tested in the Kaats study because of Lipozene's low price. Though FRI has a dietary supplement containing Propol for sale, it appears that FRI is still prohibited from introducing a higher priced, higher quality product into the market. Moreover, Mr. Alkire continues to represent that "FRI finds it incredibly difficult to compete with ORI's price point" and that it is "unable to make inroads into the direct to consumer" market as a direct result of ORI's allegedly false claims. (Alkire Opp. Decl. ¶¶ 8, 12-14, 21-20.)

[18] FRI presents its claims under the Lanham Act because, as FRI notes, FRI's FAL claims are "substantially congruent" with the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Moreover, a violation of the Lanham Act would fulfill the UCL's "unlawful" prong. Separately, ORI states that

false advertising statements. Along with these false statements, ORI argues that there is no genuine issue of material fact as to the elements of a Lanham Act claim. Additionally, FRI states it is entitled to injunctive relief and monetary damages in the form of ORI's profits. ORI moves for cross summary judgment.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. *See Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994); 15 U.S.C. § 1125(a). To establish a false advertising claim under the Lanham Act, a plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or

---

"[a]lthough FRI's MPSJ only advances its false advertising claim, the FACC invokes both" bases of liability under section 43(a) of the Lanham Act: false association and false advertising. The Court does not find this to be true. FRI's claims center around, "in commercial advertising or promotion, [ORI] misrepresent[ing] the nature, characteristic, qualities, or geographic origin of [its] goods." *Compare* 15 U.S.C. § 1125(a)(1)(B), *with* 15 U.S.C. § 1125(a)(1)(A) ("[L]ikely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .") It also appears from the FACC and FRI's motion for partial summary judgment that FRI is only asserting false advertising claims under Section 1125(a)(1)(B). (*See* ECF No. 41 (making no allegation or mention of false association); ECF No. 339 (asserting only false advertising claims); ECF No. 360 (including no argument to address ORI's assertion that FRI is only alleging false advertising claims).).

that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139.

The Court will analyze each element[19] of FRI's false advertising claims in turn.

### a.  Falsity

FRI argues that ORI makes six distinct false advertising statements: (1) the weight lost while taking Lipozene is "78% fat"; (2) Lipozene is "clinically studied"; (3) the clinical study results on Lipozene are from a "major university study"; (4) the test subjects in the Kaats Study were given a "no lifestyle change" instruction; (5) Lipozene is made of "pure glucomannan"; and (6) Lipozene has "no known allergens." (ECF No. 339 at 17-20.)

These false advertising statements fall into two categories. The first four statements relate to the clinical studies at issue here: the Kaats Study and the Walsh Study. These claims either depend on whether the studies actually analyzed Lipozene (the first two statements) or depend on the specifics of the Kaats Study (the third and fourth statements). The last two statements relate to Lipozene's product composition.

### i.  Whether the Studies Apply to Lipozene

The crux of FRI's claim is that the Kaats and Walsh Studies did not analyze Lipozene, and thus ORI cannot use these studies to support its advertisements for Lipozene. FRI claims that, instead of studying Lipozene, the Kaats and Walsh Studies evaluated Shimizu's Propol-branded glucomannan, which is a distinct, superior product. For example, FRI states that "[o]nly Shimizu Propol glucomannan has been clinically proven to effect weight loss, while the non-Shimizu glucomannan in the studies on which Obesity Research relies have shown no effect." (ECF No. 339 at 2.) ORI disagrees and states that the Kaats Study (which ORI designed and sponsored)

---

[19] The parties agree and submit that ORI's "advertising occurs in interstate commerce." (JSUMF ¶ 17.)

and related Walsh Study apply to Lipozene because Lipozene is same glucomannan supplement in those studies. Specifically for the Kaats Study, ORI represents that Lipozene is simply a rebranded and updated version of Fiber Thin, which Dr. Kaats used. (ECF No. 345 at 4.) Additionally, in creating the version of the product that Lipozene is today, ORI used the specifications from the Kaats Study as a guide and "floor" for the ingredients they ultimately chose. (*Id.* at 3.) Thus, ORI argues that Lipozene is as effective, or more effective, than the specific earlier version of the product studied in the Kaats Study, as well as the Walsh Study. (*Id.*)

In addressing these arguments, both FRI and ORI cite to various studies, deposition testimony, and expert reports. (*See, e.g.*, Ex. 28 (Dr. Kaats deposition transcript) ("Kaats Dep. Tr."); Ex. 31 (Wolever expert report); Ex. 45 (Brian Salerno deposition transcript); Exs. 71-78 (testing regarding Lipozene's product); Ex. 67 (testing on Shimizu Propol blend); Ex. 98 (Lerner expert report); Ex. 99 (Kaats Study); Exs. 27, 101-02 (Henny den Uijl deposition transcript); Exs. 26, 103 (Jim Ayres deposition transcript); Ex. 110-11 (John Alkire deposition transcript).) Each side highlight different aspects of the glucomannan root, including its production conditions, testing methods, and viscosity results. Additionally, the parties engage in various arguments regarding why their evidence should be accepted and the other side's discredited. These arguments are best saved for a jury. *See Anderson*, 477 U.S. at 255; *see also In re Apple Computer Securities Litigation,* 886 F.2d 1109, 1116 (9th Cir. 1989) (citing *Bieghler v. Kleppe,* 633 F.2d 531, 534 (9th Cir. 1980)) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case."). It is clear to the Court that a genuine issue of material fact exists as to whether the Kaats Study or the Walsh Study, or both, studied Lipozene under the parties' competing theories of what that statement means.

Thus, the Court denies the parties' requests for summary judgment on the element of falsity of the "78% fat lost" claim and the "clinically studied" claim.

## ii. "Major University" Study Claim

ORI claims in its advertisements that the Kaats Study is a "major university study." FRI argues that this claim is false because the Kaats Study was conducted by Dr. Kaats's then-private clinical research organization, Health and Medical Research Foundation, and is not considered a "major university" study. ORI disputes that this statement is false by arguing that the Kaats Study's design was approved by Texas Women's University and because two of the named reviewers of the Kaats Study are affiliated with two major universities—Georgetown University and the University of Texas.

The Court finds that FRI meets its initial burden of showing that there is no genuine issue of material fact that this claim is false. First, though the parties did not jointly submit to the Court that ORI is referencing the Kaats Study when it makes this claim,[20] the parties concede this. (ECF No. 339 at 2; ECF No. 345 at 33). Second, FRI provides sufficient support to show that the Kaats Study was not a major university study, nor did it involve a major university. Dr. Kaats, the lead author of the study, stated in his deposition that he is not affiliated with a major university, that no university was involved in the measurements for the study, and that he does not consider the Kaats Study a university study. (ECF No. 339 at 19 (citing to Dr. Kaats's deposition testimony at 135:13-20, 330:23-332:12, and 364:4-366:14).) In fact, Dr. Kaats stated that he called ORI previously to tell ORI to stop referring to his study as a Georgetown University-sponsored study because "it was not university sponsored." (Kaats Dep. Tr. at 330:23-332:12.) Additionally, nowhere in the Kaats Study does it reference the sponsorship or significant involvement of a major university. (*See* Ex. 99.)

The Court now turns to the evidence ORI provides to show that its "major university study" claim is not false. Tellingly, nowhere in ORI's briefing does it

---

[20] The parties only stipulated to a limited amount of facts. (ECF No. 402 (submitting twenty-five undisputed facts).)

argue that the Kaats Study is a "major university study." At best, ORI now claims that the Kaats Study is a "university-affiliated study" and thus, because "the Kaats Study was university-affiliated in multiple ways, the 'Major University Study' claim is not false." (ECF No. 345 at 33.) It follows that ORI's evidence is insufficient in showing a reasonable juror could find this to be true.

Even when construing the evidence in the light most favorable to ORI, ORI's evidence barely amounts to a mere existence of scintilla of evidence, if at all. ORI supports its argument by citing to the Kaats Study's design approval from Texas Women's University, as well as its tangential affiliations to Georgetown University and University of Texas. Without assessing whether Texas Women's University would qualify as a "major university,"[21] ORI fails to provide any evidence to show that the involvement of an "institutional review board" ("IRB") transforms a study's sponsorship or affiliation into that of the IRB. Instead, the evidence shows that almost all studies require an IRB and that the IRB's "primary purpose is [to] make sure the [study's] subject is being protected." (Kaats Dep. Tr. at 134:15-135:12; *see also* ECF No. 345 at 33.) No evidence infers, let alone supports, that clinical studies take on the IRB's sponsorship or affiliations in every (or any) instance. Nor is there any evidence that this occurred in regards to the Kaats Study. Instead, the record is void of ORI, Texas Women's University, Dr. Kaats, or anyone else ever referring to or considering the Kaats Study as a Texas Women's University study.

Additionally, ORI's argument that, because two of the reviewers—as individuals—are affiliated with Georgetown University and the University of Texas, the Kaats Study is a "major university study" is likewise unsupported. Nowhere does ORI cite to evidence showing that a reviewer's affiliation with a university allows the study to adopt that university's affiliation or sponsorship. In fact, the evidence disputes that as it relates to Georgetown University. (Kaats Dep. Tr. at 330:23-

---

[21] FRI does not dispute this representation either, but instead argues that ORI was never referring to Texas Women's University when it made this claim, and was instead referring to Georgetown University.

332:12; Ex. 59[22] ("I have addressed this issue with the co-investigators. . . . Dr. Preuss at Georgetown (who is still unhappy about the references to a Georgetown University study)."); Ex. 169 (Preuss Dep. Tr.) at 88:4-16.) Moreover, similar to Texas Women's University, the record is also void of any evidence showing that anyone referred to the Kaats Study as a University of Texas study. Lastly, ORI and NAI's independent agreement stating that they desired a "university-affiliated" study before hiring Dr. Kaats and his team does not show this term was actually met, especially by a "major university." (*See* Ex. 124.)

The Court finds that FRI has demonstrated the absence of a genuine issue of material fact that ORI's "major university" claim is false, and is entitled to judgment as a matter of law. The Court grants FRI summary judgment as to this falsity element of its Lanham Act claim.

### iii.    "No Lifestyle Change" Claim

ORI advertises that, in the Kaats Study, the test subjects were "asked not to change their lifestyle" and "asked not to change their diet or exercise." Specifically, for example, a 2014 Lipozene commercial stated, "in a clinical study, people who took Lipozene lost weight, all while being *asked not to change their lifestyle*. That means they were *asked not to change their diet or exercise*. They were simply instructed to take Lipozene. And by just taking Lipozene, they lost weight." (ECF No. 345 at 34; Ex. 5 at 0:35-1:12 (emphasis added).) FRI argues that this statement is literally false because the test subjects were given no instruction—one way or another—as to their lifestyle, including diet and exercise. (ECF No. 339 at 2.) In other words, because the subjects were given no instruction on their lifestyle, any statement

---

[22] The Court denies ORI's hearsay objection to this evidence. (ECF No. 399.) Dr. Kaats and other witnesses can testify independently to the facts presented in the letter, and the statements are not hearsay because they are not being offered for the truth of the matter asserted (i.e. effect on the listener). Fed. R. Evid. 801(c).

stating that subjects were "asked" to do anything at all, is literally false. (*Id.* at 19-20.).

Citing to the Kaats Study, FRI shows that participants were not given any instruction relating to their lifestyle, including their diet and exercise routines. (Ex. 99 at ORI 000617.) The "Method" section of the Kaats Study states:

> Subjects were instructed to take the supplement 30-minutes prior to each meal with a minimum of 8 ounces of water. *No instructions were provided to study participants with regard to diet and exercise*; participants were free to follow, or not to follow, any diet and/or exercise program of their own choosing.

(*Id.* (emphasis added). Additionally, in the "Discussion" section, the Kaats Study states: "Since no diet/exercise recommendations were provided, participants were free to follow any diet/exercise plan of their own choosing." (*Id.* at ORI 000632.) This section goes on to discuss the reasoning behind the specific choice to provide no lifestyle instructions. It debates how a participant in a weight loss study may be motivated to either follow "a diet/exercise of their own choosing" or "make no alterations in diet and exercise relying, instead, on the supplement to achieve their weight loss goals." (*Id.*) It reasons that "either way" the study shows the benefit of taking the supplement is not dependent on "whether or not [the subject] participated in a diet/exercise plan of their own choosing." The relevant pieces of the Kaats Study make it clear that the study was aimed at testing the product in a "real world" experience and with little experimental intervention. (*Id.* at ORI 000632-33; *see also* ECF No. 345 at 34.)

ORI agrees with this conclusion and does not provide any additional evidence beyond the Kaats Study. (ECF No. 345 at 34-35 ("The goal (and result) was to evaluate the efficacy of the supplement *alone*, without including a requirement that participants change their diet or exercise regimen." (emphasis in original).) Instead, ORI's counterargument focuses on attacking FRI for "cherry-pick[ing] and re-characteriz[ing]" ORI's advertisements and ignoring the "overall thrust" and

"significant basis" of the "no lifestyle change" claim. (*Id.* at 34.) But it seems that rather ORI is attempting to re-characterize its own advertisements. Confusingly, ORI concludes that "[i]ndeed, because participants were *not* asked to change their diet or exercise, the alleged 'no lifestyle change' is not false." (*Id.* at 35 (emphasis in original).) In considering the entire context of the statement, the evidence shows that ORI sought to communicate to its consumers that, despite *being required* to make no changes to their diet and exercise routines, people taking Lipozene lost weight. (Ex. 5 ("That means they were *asked not to change their diet or exercise*." (emphasis added).) Thus, an essential piece to this claim is that participants in the Kaats Study were affirmatively asked not to change their diet and exercise, implying that any weight lost while taking Lipozene could not be due to a lifestyle change. However, this representation is false. The Kaats Study specifically wanted to evaluate weight loss in a "free life," and was designed not to ask, recommend, or otherwise instruct its participants to continue their diet and exercise as usual. Instead, participants could change their diet or add an exercise routine if they wanted, which could have affected the weight they lost. ORI's statement implies the opposite.

Though a jury may still find that the difference between the true and false statements is not material, the Court finds that FRI is entitled to judgment as a matter of law that the "no lifestyle change" statement is false. The Court grants FRI summary judgment as to this falsity element of its Lanham Act claim.

### iv. "Pure Glucomannan" Claim

ORI first argues that this claim should be dismissed because the FACC does not contain allegations relating to this statement. However, the Court construes FRI's argument as a motion for leave to amend the FACC and grants FRI leave to amend. "Where plaintiffs fail to raise a claim properly in their pleadings, if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b)." *Desertrain v. City of Los Angeles*, 754 F.3d

1147, 1154 (9th Cir. 2014) (internal citations and quotations omitted) (quoting *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979)). "The court should freely give leave when justice so requires," and apply this policy with "extreme liberality." *Id.*; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Court considers five factors in assessing a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, absent prejudice, a strong showing of the other factors may support denying leave to amend. *See id.*

After considering the five factors, the Court grants FRI leave to amend its FACC to add its false advertising claims as it relates to ORI's statement that "Lipozene is made with 100% pure Glucomannan[.]" (ECF No. 339 at 6.) Specifically, the Court does not find any evidence or indication that FRI acted in bad faith by failing to include this specific allegation in its FACC. Likewise, though FRI is delayed in amending its FACC, ORI will not suffer prejudice due to the amendment. FRI pled related claims of false statements involving Lipozene's product composition, and ORI included argument against this claim in its opposition. (ECF No. 345 at 35-36.)

For this false statement, FRI argues that ORI's claims on its website—"Take pure Glucomannan from the finest Konjac Plants and see results" and "Lipozene is made with 100% pure Glucomannan, which comes from the root of the Konjac plant"—are false because Lipozene is not made of "pure glucomannan." (ECF No. 339 at 20; Ex. 17 at 1 (showing a snapshot of ORI's website from 2012).) FRI cites to evidence and testimony that shows that Lipozene is made of a combination of ingredients, with the majority being glucomannan. (ECF No. 339 at 20.) ORI disputes

15cv0595

that ORI's statements convey that Lipozene is entirely made of "pure glucomannan." Instead, it claims these statements only relate to the main ingredient in Lipozene.

The Court finds that ORI has met its burden of showing that there is no genuine issue of material fact that its claim relating to "pure glucomannan" is not false. The evidence shows that ORI does not advertise that Lipozene is made from only glucomannan as FRI contends. Rather, in considering the statement in its full context, ORI advertises a narrower set of claims that Lipozene "is made with" glucomannan and by taking Lipozene, a consumer "takes" glucomannan. (*See* Ex. 17); *c.f. Pow Wonderful LLC v. Purely Juice, Inc.*, No. cv-07-02633, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (addressing false claims such as "[e]ach bottle of Purely Juice is 100% Pomegranate Juice"). The evidence also supports that the majority of Lipozene is made of glucomannan. (ECF No. 339 at 20 (stating that, at worst, "Obesity Research's own testing demonstrates the finished product contains [over half of] Glucomannan").) FRI fails to cite to any evidence that raises an alternative interpretation of ORI's statement in support of its argument. Additionally, though a statement that is literally true can still be actionable under the Lanham Act if it is misleading, FRI does not argue or provide evidence to support this argument.

The Court finds that no reasonable juror could find that ORI was advertising that it was entirely made with glucomannan, and that its "pure glucomannan" statements are not false. Thus, the Court grants ORI's request for summary judgment on this element and FRI's Lanham Act claim as to the "pure glucomannan" statement fails as a matter of law.

### v. "No Known Allergens" Claim

The last advertising statement that FRI challenges is ORI's claim that Lipozene contains "no known allergens." FRI states that this claim is false because Lipozene contains excessive sulfite levels. (ECF No. 339 at 6, 20.) FRI argues that these excessive sulfite levels qualify as a "known allergen" under FDA regulations. (*Id.*

(citing 21 C.F.R. §101.100).) ORI disputes this by stating that, under Food Allergen Labeling and Consumer Protection Act of 2004 ("FALCPA"), excessive sulfites do not qualify as a "major food allergen." (ECF No. 345 at 37.) Moreover, ORI states that Lipozene does not contain any of the ingredients actually listed under the FALCPA. (*Id.*); *see also* 21 U.S.C.S. § 321 (listing items such as milk, egg, fish, shellfish, tree nuts, wheat, peanuts, and soybeans).

Neither party has not met its burden to show that no genuine issue of material fact exists as to whether the "no known allergens" statement is false or not. Though FRI provides sufficient evidence to show that Lipozene contains an excessive level of sulfites per the FDA requirements, FRI has not shown that these FDA requirements should apply to ORI's statement. Likewise, ORI has not shown that only "major food allergens" under the FALCPA apply to advertising statements regarding "known allergens." Instead, a genuine issue of material fact remains as to which standard or definition should apply to advertisements regarding what "known allergens" are contained in a dietary supplement. It is possible for a jury to find that this statement only applied to the commonly known major food allergies, such as nuts, milk, and other common allergies, or that it instead meant additional irritants, such as sulfites. Accordingly, the Court denies both parties' requests for summary judgment on this element of the Lanham Act claim.

### b.    Deception

FRI seeks summary judgment as to the second element of its Lanham Act claim: that ORI's false statements "actually deceived or has the tendency to deceive a substantial segment of its audience." *Southland Sod Farms*, 108 F.3d at 1139. ORI does not address deception separately, and instead argues falsity and deception together, which is consistent with Ninth Circuit case law.

The Ninth Circuit has found that "[t]he expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing

decisions justifies the existence of a presumption that consumers are, in fact, being deceived." It further reasons that the party "who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he [or she] succeeded." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986); *see also Harper House*, 889 F. 2d at 209 ("[T]he presumption that consumers were, in fact, deceived into purchasing a product different than that advertised is no less or more justified, and we will not require actual evidence that consumers were deceived."). The Court finds no reason not to extend this reasoning to the false statements here, nor has ORI rebutted this presumption.

The Court grants FRI summary judgment as to the deception element of its Lanham Act claim for the "major university" and "no lifestyle change" statements. Because falsity has not been established for the remaining Lanham Act claims, the Court denies FRI's request for summary judgment on this element.

### c. Materiality

Next, FRI asks this Court to find that, as a matter of law, ORI's false advertising statements are material. (ECF No. 339 at 20-21 ("Thus, the actual falsity of the statements challenged in this motion also establishes materiality.")); *see Southland Sod Farms*, 108 F.3d at 1139 (stating the third element of a Lanham Act claims as the "deception is material, in that it is likely to influence the purchasing decision"). FRI argues that, if the Court finds that ORI's statements are false, then materiality is presumed. (ECF No. 339 at 20-21 (citing to *Pom Wonderful*, No. 07-2633 CA (JWJx), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008) (collecting cases).) ORI argues that FRI has not met its burden because FRI failed to cite to any supporting evidence and instead relies on "presumptions" to establish this element. (ECF No. 345 at 28 ("[R]ather than providing *any* evidence reflecting FRI's injuries, materiality and causation, or consumer deceit, FRI instead argues that the Court may

presume these elements are satisfied upon a finding of literal falsity." (emphasis in original)).)

Because FRI has not established falsity for the "78% fat lost," "clinically studied," and "no known allergens" statements, FRI's argument fails for these statements. FRI has cited no other evidence to support its materiality arguments, and thus has not met its burden. Likewise, ORI does not establish that there is no genuine issue of material facts that these statements are not material. The Court denies the parties' requests for summary judgment on the materiality element for these three claims.

For the two remaining statements ("major university study" and "no lifestyle change"), FRI argues that the Court should determine these statements are also material because "actual false claims are presumed material" under the Lanham Act. (ECF No. 339 at 20-21 (citing *Pom Wonderful*, 2008 WL 4222045, at *11 (citation omitted)).) The Court is not convinced that the Ninth Circuit has likewise determined that materiality is presumed for actually false statements, nor has FRI cited to a Ninth Circuit case stating this. *Compare id.*; *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers."), *with Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) ("The test is whether the "deception is material, in that it is likely to influence the purchasing decision . . . ." (citing to *Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244 (9th Cir.1990))); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111-12 (9th Cir. 2012) (analyzing materiality when claims were actually false).

Even if actual falsity requires a "presumption" of materiality, the Court finds that ORI rebutted this presumption to show a genuine issue of material facts exists for the "no lifestyle change" statement. (ECF No. 345 at 37-38.) Citing to the Kaats Study and its advertisements, ORI argues that the difference between the true and

false statements is not material to a consumer. (ECF No. 345 at 37-38 (citing Ex. 99) (arguing there is no effective difference between a statement suggesting study participants were asked not to change their lifestyle verses the study's instructions that participants were given no instructions on lifestyle).) The Court does not agree with ORI that extensive "empirical evidence" is required to show the "overall meaning felt by consumers." (*Id.* at 34 (addressing the lack of material deception in its "Falsity Section").) However, FRI fails to provide any evidence to show that the falsity in this statement is materially deceiving. *See Skydive Arizona, Inc.*, 673 F.3d at 1111-12 (discussing various methods for proving materiality, including client declarations and consumer surveys).

Alternatively, FRI argues that the "no lifestyle change" statement concerns the "inherent quality or characteristic" of the product, and is therefore material.[23] *See Pom Wonderful*, 2008 WL 4222045, at *11 ("The fact that Purely Juice's false advertising pertained to the very nature of its juice product establishes its materiality" (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002))). The Court disagrees. The "no lifestyle change" statement concerns one of the test conditions for the participants in the Kaats Study. This instruction is not "inherent" to the quality or characteristics of Lipozene in the same way as statements relating to Lipozene's product composition and proven effects on weight loss.

Lastly, even accepting that no presumption of falsity applies, FRI argues that the "major university" conducted study statement is likely to affect a consumer's purchasing decision. ORI does not specifically address the "major university" statement's materiality, and instead generally objects to FRI's lack of evidence to support materially. However, a "major university" affiliation invokes a level of legitimacy and assurance for a consumer that would likely affect a consumer's

---

[23] FRI concedes that the "major university" statement characterizes the underlying Kaats Study, and thus does not concern Lipozene's "inherent quality or characteristic." (ECF No. 339 at 21.)

decision to purchase Lipozene. FRI cites to Dr. Kaats's deposition testimony stating that a study done by a university would cost around fifty percent more to commission. (Kaats Dep. Tr. at 366:17-367:1 ("[O]ne of the ways that we stay in business, is the fact that we can get the same result in less time and in less money.").) Additionally, ORI points specifically to its desire to have a "university affiliated" study in its proposal with NAI when designing the Kaats Study. Even when inferring the evidence in the light most favorable to ORI, the Court finds that no reasonable juror could find that the "major university" statement would not likely influence a consumer's purchasing decision.

Accordingly, the Court grants FRI's request for summary judgment on the material element of its claims relating to the "major university" statement, but denies its requests for the remaining statements. Likewise, the Court denies ORI's request for cross summary judgment on materiality.

### d. Likelihood of Injury

"[T]he plaintiff [or counterclaimant] has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms*, 108 F.3d at 1139. Under section 43(a) of the Lanham Act, "because of the possibility that a competitor may suffer future injury . . . a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Harper House, Inc.*, 889 F.2d at 210. "In a [non-comparative] suit for damages under section 43(a), however, actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case." *Id.* (emphasis in original). "[A]n inability to show actual damages does not alone preclude a recovery under section 1117."[24] *Lindy Pen Co. v.*

---

[24] Section 1117 governs the recovery awarded to a party whose rights were violated under the Lanham Act. 15 U.S.C. § 1117 ("When . . . a violation under section 1125(a) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.").

*Bic Pen Corp.*, 982 F.2d 1400, 1411 (9th Cir. 1993) *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Bandag, Inc. v. Bolser's Tire Stores*, 750 F.2d 903, 919 (Fed. Cir. 1984)). Under *Lindy Pen,* the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances. *Southland Sod Farms*, 108 F.3d at 1146. Additionally, to be awarded any portion of a defendant's profits, a plaintiff must prove "willfulness." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 441 (9th Cir. 2017) (analyzing, in light of the circuit split and 1999 amendment, whether "willfulness remains a prerequisite for awarding a defendant's profits" for violations under section 43(a)). Lastly, when determining a request for fees, a district court should examine the "'totality of the circumstances' to determine if case was exceptional, . . . exercis[e] equitable discretion in light of the nonexclusive factors . . . , and us[e] a preponderance of the evidence standard." *SunEarth, Inc.*, 839 F.3d at 1181.

FRI seeks: (1) a permanent injunction against ORI from falsely advertising, marketing, packaging, labeling, and/or selling Lipozene using any false representations; (2) damages suffered by FRI (directly and as Shimizu's assignee) "as measured by Shimizu's lost sales to Obesity Research and by Obestity [sic] Research's Lipozene profits"; (3) Obesity Research's profits "attributable to its willful false advertising, unfair competition, and deceptive acts or practices"; (4) treble damages under 15 U.S.C. §1117; and (5) attorney's fees and costs. (FACC ¶ 106.)

For injunctive relief, FRI does not need to prove that it will suffer future injury. *See Harper House*, 889 F.2d at 210 ([B]"ecause of the possibility that a competitor may suffer future injury, as well as the additional rationale underlying section 43(a)—consumer protection—a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)."). "Such an injunction will protect the interests of both competitors and consumers." *Id.*

However, to be awarded damages in a non-comparative[25] suit, FRI must provide evidence that it was injured by ORI's deceptive actions. *Harper House*, 889 F.2d at 210. Additionally, FRI must prove ORI acted willfully because it seeks a portion of ORI's profits. *Stone Creek, Inc.*, 875 F.3d at 441. ORI argues that no genuine issue of material fact exists as to whether FRI was injured because FRI has provided no evidence to show that it has suffered any injuries. The Court disagrees, and rather finds that a genuine issue of fact exists as to whether FRI and Shimizu are likely to be injured.

FRI provides evidence that supports its argument that FRI, and Shimizu, likely suffered injuries to their sales and reputation. As discussed above, Mr. Alkire and Mr. Shimizu state in their declarations that they both sought to expand into the glucomannan supplement market, but were shut out of the market by ORI and its advertising using studies about Shimizu's products. Further, they state that, because Lipozene contains a "cheap," less effective version of glucomannan, FRI and Shimizu risk damages to their reputation when Lipozene does not work as it is advertised. (ECF No. 339-105 (Alkire Decl.) ¶¶ 3-5[26]; Alkire Opp. Decl. ¶¶ 7, 8, 19-21; Shimizu Opp. Decl. ¶¶ 17, 21-23.) Though the Court did not consider the market activities that FRI has engaged in since the filing of its counterclaims for standing purposes, it may do so now. Mr. Alkire stated that FRI received an opportunity to expand its distribution, created a website and advertisements for direct to consumer sales, and made a sale to a customer who markets Propol to end consumers. (Alkire

---

[25] Comparative advertisements directly or indirectly compare one product to another. *See, e.g., U-Haul Int'l, Inc. v. Jartran, Inc.*, 601 F. Supp. 1140, 1149 (D. Ariz. 1984), *aff'd in part, modified in part, and rev'd in part*, 793 F.2d 1034 (9th Cir. 1986) (comparing defendant's trucks and prices to plaintiff U-haul's). Though FRI does not argue or allege that ORI's advertisements are comparative advertisements, it cites to case law addressing comparative advertisements. The Court finds that this case law is inapplicable here because ORI does not compare Lipozene to Shimizu or FRI's products, directly or indirectly. *See, e.g., Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 2011 WL 4852472, at *3 (C.D. Cal. Oct. 12, 2011) (finding that defendant's generic reference to a "cranberry juice cocktail" was not a comparative advertisement to plaintiff Ocean Spray's product).

[26] The Court denies ORI's objections to this evidence. ORI's objections are not sufficient to show this evidence would not be admissible at trial.

Opp. Decl. ¶¶ 6, 12-18.[27]) However, FRI fails to argue or cite to any evidence to show that ORI acted willfully.

ORI focuses largely on the lack of evidence provided by FRI to argue that FRI and Shimizu were not likely injured. (*See* ECF No. 345 at 18-21, 37-39; Ex. 130 (Beaton Supp. Report).) ORI's expert provides a report finding that neither FRI nor Shimizu was injured based on the evidence that he reviewed. (*See* Ex. 130.) This opinion appears to be based largely on the lack of evidence provided by FRI. (*See id.*; ECF No. 345 at n.27.) The Court does not discount the lack of financial documents and analysis documenting FRI's damages, but finds that the weighing of each party's evidence (or lack thereof) is best suited for a jury.

Thus, the Court finds that a genuine issue of material fact exists as to whether FRI and Shimizu were likely injured. Accordingly, because FRI seeks monetary damages for its false advertising claims, the Court denies FRI's and ORI's requests for summary judgment on this element.

### e. Permanent Injunctive Relief

Though FRI does not need to prove injury when requesting injunctive relief for the elements of a Lanham Act claim, FRI still must meet all the prongs for permanent injunction. A plaintiff seeking a permanent injunction must establish:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that

---

[27] The Court denies ORI's objections to this evidence. (ECF No. 395.) ORI's objections are not sufficient to show this evidence would not be admissible at trial. Regarding ORI's objections due to untimely disclosure, the Court is amenable to this objection, but ORI provides no basis for this objection to allow the Court to assess whether FRI in fact disclosed its direct to consumer sales in an untimely fashion. It appears these sales occurred months after FRI filed its counterclaims and likely after initial disclosures, but without more the Court cannot assess whether FRI was required to disclose this evidence at an earlier time. Nonetheless, the direct to consumer sales do not change the Court's analysis, and thus the Court declines to consider this evidence for the purposes of this order.

the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court recognizes that, as it relates to injunctive relief, FRI has shown actual success on the merits of its Lanham Act claim for the "major university study" statement. But the Court finds that FRI has not met its burden to show it will suffer irreparable harm absent injunctive relief. Though FRI does not need to prove injury to satisfy the "likelihood of injury" element for its Lanham Act claim, this showing does not equate to satisfying the irreparable harm prong for a permanent injunction. FRI does not cite to any evidence to show it will suffer irreparable harm, and instead, at best, relies on out of circuit case law[28] stating that irreparable harm is presumed when a statement is found to be false. (ECF No. 360 at 10-11.) Even assuming the Ninth Circuit would apply this presumption, the Court finds that ORI has rebutted this presumption. (*See* ECF No. 345 at 18-21, 37-39; Ex. 130 (Beaton Supp. Report).) As stated above, a jury is best suited to assess the evidence relating to FRI's damages, including those relating to irreparable harm. Accordingly, the Court denies FRI's request for summary judgment for a permanent injunction against ORI's false advertising.

---

[28] Of note, it appears the Ninth Circuit has yet to rule on this issue: "Under *eBay* [547 at 391], however, courts must analyze each statute separately to determine whether Congress intended to make 'a major departure from the long tradition of equity practice' and create a statutory presumption or categorical rule for the issuance of injunctive relief." *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 n.2 (9th Cir. 2011) (declining to engage in this analysis for the Lanham Act) ("[The presumption] approach collapses the likelihood of success and the irreparable harm factors.") In *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, the Ninth Circuit declined to extend this irreparable harm presumption for a preliminary injunction in a trademark infringement Lanham Act case. 736 F.3d 1239, 1250-51. Judge Wallace concurred separately to emphasize that this ruling "expressed no view on issues arising after trial dealing with a permanent injunction." *Id.* Because applying a presumption or not does not affect the outcome of this Order, the Court declines to analyze whether Congress intended to extend the presumption here.

### f.     UCL and FAL Claims

FRI also seeks summary judgment for its FAL and UCL claims on the same bases as its Lanham Act claims. Likewise, ORI's arguments for summary judgment for the UCL and FAL claims hinge on the Court granting summary judgment for the Lanham Act claims. Based the foregoing reasons, ORI is entitled to summary judgment for the FAL and UCL claims as the claims relate to the "pure glucomannan" statement. Otherwise, because FRI's Lanham Act claims remain to be litigated for the five other statements, the UCL and FAL claims remain. Accordingly, the Court denies the parties' request for summary judgment for the UCL and FAL claims.

### 3.     ORI's Additional Requests for Summary Judgment

In addition to its standing arguments and cross summary judgment request for FRI's Lanham Act claims, ORI asserts alternative bases for summary judgment against FRI. ORI fails to carry its burden on these arguments, and the Court denies each one in turn.

### a.     Laches

ORI argues that FRI is barred by laches from bringing its claims because Shimizu, and in turn FRI, waited over ten years to bring its claims. (ECF No. 345 at 21-26.) ORI states that this delay was unreasonable and allowing the case to move forward is prejudicial to ORI. Additionally, ORI argues that the public does not have a strong enough interest in this case to override that prejudicial effect.

"Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq, LLC v. Sony Corp*., 263 F.3d 942, 950-51 (9th Cir. 2001) (internal quotations and citation omitted). Laches is a valid defense to Lanham Act claims, including those for false advertising. *Jarrow Formulas, Inc., v Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002).

"To demonstrate laches, the defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Danjaq*, 263 F. 3d at 951 (quotations omitted). The delay is measured from the time a plaintiff knew, or should have known, about a cause of action. *Jarrow*, 304 F.3d at 838; *see also Danjaq*, 263 F. 3d at 952. "[I]f the plaintiff legitimately was unaware of the defendant's conduct, laches is no bar to suit." *Id*. When determining reasonableness, courts look at the cause of delay. *Danjaq*, 263 F. 3d at 954. A defendant can demonstrate prejudice in two ways: either evidentiary, showing that evidence has been lost or memories have faded, or expectations-based, showing that the defendant has taken actions or suffered consequences it would not have had plaintiff brought timely suit. *Id*. at 955.

"Because laches is an equitable remedy, laches will not apply if the public has a strong interest in having the suit proceed." *Jarrow*, 304 F.3d at 840. However, "[t]he public's interest will trump laches only when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well being." *Id*. at 841. Furthermore, a party with unclean hands may not assert laches. *Id*. This bar to laches for unclean hands applies "only if the court is left with a firm conviction that the defendant acted with a fraudulent intent in making the challenged claims." *Id*. at 842.

The Court finds that ORI has not provided sufficient evidence to show that there is no triable issue of fact that Shimizu (or FRI) was delayed in filing its counterclaim. ORI argues that Shimizu first knew (or should have known) about the allegedly false advertising in 2005. However, ORI cites to emails referencing products that differ from Lipozene because they contain Shimizu's glucomannan and are distributed in other countries, such as Australia. (*See, e.g.*, Ex. 133.) For example, ORI cites to one email to show that Mr. Shimizu wanted to pursue legal action in the early 2000's. (*See* Ex. 125.)[29] But Mr. Shimizu's "threats" to take legal action are unrelated to the core false advertising issues in this lawsuit. Mr. Shimizu stated that

---

[29] The Court also finds it curious that the lower email is undated, though it appears to have occurred in the mid-2000's.

he wanted to bring legal action against ORI for "mix[ing] [Shimizu's] product with other lower grade products." (*Id.*) That issue is distinct from the issue at hand—falsely advertising that a study using Shimizu's product to advertise a product that does not contain any of its product. (*Id.*) ORI also claims that Shimizu should have known it had viable legal claims ten years ago because ORI ceased to source Shimizu's glucomannan in 2005. (ECF No. 345 at 23-24.) However, this evidence seems to resolve Mr. Shimizu's earlier threats of litigation because it forecloses on ORI continuing to "mix [Shimizu's] product with other lower grade products." It does not follow that Shimizu should have known that ORI would use clinical studies involving Shimizu's product to "falsely" market a different finished product based on these facts. This is especially true given Mr. Shimizu lives in Japan and states that he did not see the advertising until years later. (*See* Shimizu Opp. Decl. ¶¶ 19-20[30] (stating he first learned of Lipozene's advertising on its website in late 2014).) Moreover, because the standard for laches involves whether FRI's delay, if any, was "reasonable" or not, this issue is better suited for a jury's determination.

Because a genuine issue of material fact remains as to delay, the Court finds ORI's argument that FRI's claim is barred by laches fails.

### b. Unclean Hands

ORI also argues that FRI is barred from making any claims regarding the Kaats Study because of the doctrine of unclean hands. ORI conflates FRI's advertisements to argue that FRI is also engaged in the same misleading and false advertising that is at issue in this litigation. (ECF No. 345 at 39.) However, ORI fails to meet its burden, and is not entitled to judgment as a matter of law.

The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to

---

[30] The Court denies ORI's objections to this evidence. (ECF No. 395.) ORI's objections are not sufficient to show this evidence would not be admissible at trial.

a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). The relevant inquiry is "not [whether] the plaintiff's [or counterclaimant's] hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants [or counterdefendants]." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (internal quotation omitted). At the summary judgment stage, "a defendant must merely prove that the plaintiff engaged in 'inequitable' conduct that is sufficiently related to the subject matter of the plaintiff's claims." *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1099 (C.D. Cal. 2016) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987).

At issue in this litigation is FRI's claim that ORI falsely advertises Lipozene as being clinically tested in the Kaats Study when it was not. Under ORI's "unclean hands" theory, ORI must show that FRI engaged in similar false advertising of its product that related to the Kaats Study. The evidence does not support this allegation. For example, FRI states in its advertisement that its "OptiFiber Lean" product contains the Shimizu's Propol A as an ingredient and that "studies support its health effects." (Ex. 150.) ORI argues that FRI cites to the Kaats study to support this statement, but it is unclear which study this statement references. (*Id.*) The statement does not include a footnote and the advertisement lists eighteen clinical studies, including the Walsh Study, which studied Propol A. (*Id.* (citing the Kaats study specifically twice, along with other studies including the Walsh Study, to support claims regarding glucomannan generally).) Additionally, ORI cites to an email from Mr. Alkire to its current client. (*See* Ex. 149.) The email discusses, in part, two sets of documents attached to the email. (*Id.*) Mr. Alkire points out that Propol A is the highest grade of glucomannan on the attached viscosity chart, and then notes that the Kaats Study is of particular interest because of the significant weight loss shown in

a set of clinical trial documents. (*Id.*) Considering the email in its entirely, it is not clear that Mr. Alkire is inferring that Propol A was tested in the Kaats Study or making any other "false" statements about Propol A's characteristics or the Kaats Study. (*See* Ex. 149 (stating that the "kaats trial is highly interesting due to the significant amount of [fat] at loss").) Thus, this evidence fails to prove inequitable conduct.

Because ORI fails to provide evidence that FRI is engaged in any similar misleading or false advertising, the Court denies ORI's request for summary judgment on the doctrine of unclean hands. Additionally, the Court questions whether an "unclean hands" defense is even appropriate for this case. *See POM Wonderful LLC*, 166 F. Supp. 3d at 1092 ("[C]ourts must not automatically apply the doctrine of unclean hands and permit a defendant wrongdoer to retain the profits of his wrongdoing merely because the plaintiff himself is possibly guilty of transgressing the law").

### c. Declaratory Judgment for 21 U.S.C. §§ 301 *et seq*

Lastly, ORI seeks declaratory judgment that it is has "no liability" under the FFDCA, 321 U.S.C. §§ 301 *et seq*.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid 'the threat of impending litigation.'" *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002) (quoting *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune,*

15cv0595

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). The statute does not by itself confer subject matter jurisdiction on the federal courts. *Sanford v. Memberworks, Inc.*, 2008 WL 4482159, at *2 (S.D. Cal. Sept. 30, 2008) (citing *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985)).

In order to award declaratory relief, the Court must first determine whether there is "a case of actual controversy." 28 U.S.C. § 2201(a); *see also Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986). The party seeking relief under the Declaratory Judgment Act carries the burden of demonstrating that an actual case or controversy exists. *See MedImmune*, 549 U.S. at 127. An actual controversy must exist at all stages of review. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *Kearns*, 15 F.3d at 143).

ORI provides little to no evidence and analysis to support its request. Instead it conclusively states in four lines that it is entitled to declaratory judgment. Nowhere does ORI state that FRI is planning to bring a FFDCA claim, nor did FRI assert such a claim in its counterclaims. The Court concludes that ORI fails to carry its burden to show that there is a "substantial controversy" between itself and FRI regarding the FFDCA "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Maryland Cas.*, 312 U.S. at 273.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** FRI's Motion for Partial Summary Judgment (ECF No. 339) and **GRANTS IN PART AND DENIES IN PART** ORI's Cross Motion for Summary Judgment (ECF No. 345). Accordingly, the Court **GRANTS**:

15cv0595

1      (1)    FRI's request for summary judgment that ORI's "major
2             university study" and "no lifestyle change" statements are false
3             as a matter of law;

(2)    FRI's request for summary judgment that ORI's "major
university" claims is material as a matter of law; and

(3)    ORI's request for summary judgment that FRI's Lanham Act,
UCL, and FAL claims, individually and as Shimizu's
representative, relating to the "pure glucomannan" statements
fail as a matter of law.

With respect to all other issues raised, the Court **DENIES** the requests for summary judgment. The Court **ORDERS** the parties to jointly contact Magistrate Judge Dembin to reset any necessary dates **no later than February 28, 2018**.

**IT IS SO ORDERED.**

**DATED: February 21, 2018**

**Hon. Cynthia Bashant**
**United States District Judge**