# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBESITY RESEARCH INSTITUTE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIBER RESEARCH INTERNATIONAL, LLC, *et al.*,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 15-cv-00595-BAS-MDD<br><br>**ORDER DENYING MOTION TO CERTIFY PORTION OF SUMMARY JUDGMENT ORDER FOR INTERLOCUTORY REVIEW**<br><br>**[ECF No. 442]** |

Presently before the Court is Plaintiff/Counterdefendant Obesity Research Institute, LLC's ("ORI") motion to certify a portion of the Court's summary judgment order (ECF No. 439) for interlocutory review. (Mot., ECF No. 442.) Specifically, ORI requests the Court to certify portions of its Order that relate to Fiber Research International, LLC's ("FRI") standing to assert its counterclaims on behalf of itself and non-party Shimizu Chemical Corporation ("Shimizu").

For the foregoing reasons, the Court **DENIES** ORI's motion. (ECF No. 442.)

I.     **LEGAL STANDARD**

Under 28 U.S.C. § 1292(b), a district court must certify an order for interlocutory appeal if it (1) "involves a controlling question of law," (2) "to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.; Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1224 (C.D. Cal. 2012). By congressional directive, "section 1292(b) is to be applied sparingly and only in exceptional cases." *In Cement Antitrust Litigation*, 673 F.2d 1020, 1027 (9th Cir. 1981); *see also United States v. Woodbury*, 263 F.2d 784, 787-88 (9th Cir. 1959) ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit."). Because Section 1292(b) is only applied in "rare circumstances," it "must be construed narrowly." *James v. Price Stern Sloan, Inc.,* 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

"The mere fact that a party strongly disagrees with a court's ruling is not a substantial ground for difference of opinion warranting certification." *Stanwood*, 941 F. Supp. 2d at 1224. "Such a dispute exists, for example, if the circuits are in disagreement and the court of appeals in which the district court sits has not decided the issue, the issue involves complicated questions of foreign law, or the issue is a novel and difficult one of first impression." *Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1142 (S.D. Cal. 2015), *aff'd*, 860 F.3d 1193 (9th Cir. 2017). "However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean" that such substantial grounds exist. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Additionally, a question of law is controlling if its resolution

would materially affect the outcome of the case. *See In Cement Antitrust Litigation*, 673 F.2d at 1026 (providing examples such as "the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied." (quoting *Woodbury*, 263 F.2d at 787-88)).

## II. ANALYSIS

The genesis of ORI's motion to certify is that ORI disagrees with outcomes stated in the Court's summary judgment order. ORI's motion for certification reargues the same legal theories that the Court previously rejected, and does not present any new changes in law. ORI seeks specifically to appeal the Court's rulings on four of its arguments relating to standing. In rejecting these arguments, the Court found: (1) Shimizu's assignment of its legal claims in this case to FRI was sufficient; (2) Shimizu does not lack statutory standing under the Lanham Act; (3) FRI does not lack statutory standing under the Lanham Act; and (4) FRI's representative claims do not fail because of a lack of Article III standing. The Court addresses each argument in turn.

### A. Assignment of Shimizu's Claims to FRI
#### a. Shimizu's "Bare" Assignment to FRI

ORI spends a significant amount of its motion rearguing its theory regarding the assignment of the legal claims at issue in this case from Shimizu to FRI. (Mot. at 5-7.) ORI attempts to frame the issue ripe for appeal as a "bare" assignment of trademark infringement claims. However, that was not the issue in front of the Court, or at issue in this case. Here, at issue was whether Shimizu assigned its false advertising legal claims under section 43(a) of the Lanham Act to FRI. The Court did not address the basic legal principle of prohibiting the "bare" assignment of

– 3 –

15cv0595

trademark and copyright infringement claims, and did not rule on this issue.[1] The Court may have been the first federal court in the United States to apply the existing law to the specific facts of this case (as many district courts do), but this alone does not show a substantial ground for difference of opinion. *See Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) ("It is well settled that 'the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" (quoting *In re Flor,* 79 F.3d 281, 284 (2d Cir. 1996)). It does not appear that the legal issues in this case were so novel or so complex to warrant interlocutory review. *Cf. Cooper*, 166 F. Supp. 3d at 1142 (finding the application of the political question doctrine and the "firefighter's rule" was a novel and complex issue).

What the Court did find was that Shimizu assigned a limited set of legal claims to FRI that encompassed the section 43(a) false advertising claims under the Lanham Act along with a non-exclusive license to distribute Shimizu's products. (ECF No. 439 at 14 ("[T]he Court finds that, through the February 2015 [Distribution and Claims] Agreement, Shimizu assigned FRI the legal claims asserted in this case. To the extent it is relevant, Shimizu also assigned FRI a non-exclusive license to distribute Shimizu's products in the United States.") Thus, even accepting ORI's arguments that an underlying commercial interest is required for assignment and standing in section 43(a) claims, FRI received both. (ECF No. 439 at n.14.) This finding is supported by case law holding that non-exclusive licensees have the requisite commercial interest, and thus have standing, under section 43(a) of the Lanham Act:

> Courts have found that a nonexclusive license is a commercial interest sufficient for a claim under section

---

[1] ORI attempts to cite to an inadvertent reference to "Lanham Act copyright . . . infringement claims" to "underscore the Court's misapplication of the proper governing authority." (ECF No. 442 at 7.) But this lone, insignificant typographical error is not dispositive, nor representative, of the Court's otherwise proper application of the governing authority.

– 4 – 15cv0595

43(a). *See Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159-60 (1st Cir. 1977) (dismissing plaintiff's claims under § 32 because plaintiff was not a "registrant" or "exclusive licensee" but allowing plaintiff's claim to proceed under § 43); *Shell Co. v. Los Frailes Serv. Station, Inc.*, 596 F. Supp. 2d 193, 203 (D.P.R. 2008), *aff'd sub nom. The Shell Co. (Puerto Rico) v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10 (1st Cir. 2010) ("Courts have allowed licensees (exclusive or nonexclusive) . . . to bring claims pursuant to section 1125(1)."); *Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 16-CV-00415-HZ, 2016 WL 3896826, at *4 (D. Or. July 18, 2016) ("[Defendant] fails to cite any authority for the proposition that a non-exclusive licensee necessarily lacks standing under § 43(a)); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 WL 11117169, at *2 (E.D. Wash. Nov. 30, 2015) (limiting a non-exclusive license holder "to pursuing a trademark claim under 15 U.S.C. § 1125(a)").

(*Id.*) Thus, the Court applied the existing law regarding section 43(a) specifically, along with generally accepted principles of assignments, to reach its decision.

Accordingly, the Court finds ORI has failed to demonstrate that a substantial ground for difference of opinion exists. Accordingly, immediate appeal on this issue is not warranted.

### ii. Validity of Assignment Under Nevada Law

ORI raises another issue with the assignment of Shimizu's Lanham Act claims. (Mot. at 7-8.) ORI argues that Shimizu's assignment of its legal claims was invalid under Nevada law. (*Id.*) In its Order, the Court recognized that the cases cited by ORI related to Nevada's prohibition on assignment of personally injury tort claims, rather than tort claims generally. (ECF No. 439 at 16.) The Court found that the limitation of these claims (along with fraud claims when an individual is personally defrauded) is rooted in the Nevada's public policy, and cited to a variety of state and federal cases. (*Id.*) Specifically, the Court included in in its analysis two District of Nevada cases, and quoted one that stated "[t]hough the Nevada Supreme [Court] has never expressly held that property damage claims may be assigned, the policy reasons for prohibiting the assignment of personal injury claims are premised upon the personal

nature of the claims themselves and a desire to limit unscrupulous people trafficking in pain and suffering." (ECF No. 439 at 16-17 (quoting *Platinum UnitOwners' Ass'n v. Residential Constructors, LLC*, No. 2:14-CV-01076-GMN-GW, 2015 WL 1186530, at *5 (D. Nev. Mar. 16, 2015) (internal citations and quotations omitted)).)

In its instant motion, ORI points to another unpublished federal case out of Nevada to argue that this Court's Order "diverges" from this "arguably better situated" district court. (Mot. at 7-8 (citing *Hansen v. State Farm Mut. Auto. Ins. Co.*, 2015 U.S. Dist. LEXIS 143061, at *17 (D. Nev. 2015)).) However, *Hansen* is distinguishable because the facts of the case address a claim that is personal in nature. *Id.* at *12. The *Hansen* court analyzed the remaining claim of whether State Farm Fire & Casualty Company "misrepresented the provisions of the Policy" to the individual covered under an insurance policy. *Id.* ("Plaintiffs' [or assignees'] claim that such misrepresentation constituted misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue."(internal quotations omitted)). Thus, the claim is more akin to whether an individual was personally defrauded, rather than a property damage tort claim, and is consistent with the analysis in the Court's Order. (ECF No. 439 at 18 ("Thus, though Nevada's law and public policy prevents the assignment of personal injury tort claims and fraud claims where a party is personally defrauded, neither of those claims are at issue here.")

Additionally, *Hansen* relies on a Nevada Supreme Court case that provides a discussion regarding the assignment of tort law actions in Nevada, which the Court also cited in its previous Order. 2015 U.S. Dist. LEXIS 143061, at *16-17 (quoting *Edward J. Achrem v. Expressway Plaza Ltd. P'ship*, 917 P.2d 447, 449 (Nev. 1996)); (ECF No. 439 at 16.) *Achrem* addresses the assignability of proceeds for a personal injury tort claim, and begins its analysis by stating that "[a]t common law, an assignment of the right to a personal injury action was prohibited." 917 P.2d at 448.

The Nevada Supreme Court went on to detail the legislative history regarding the assignability of tort actions generally in Nevada by stating:

> This court first addressed the assignability of the rights to a tort action in *Davenport v. State Farm Mutual*, 81 Nev. 361, 404 P.2d 10 (1965), by expressly allowing the assignment of tort actions. *Id.* In 1967, the Nevada Legislature specifically prohibited the assignment of a cause of action by passing NRS 41.100(3). 1967 Nev. Stat., ch 190, § 3 at 408. However, in 1979, the Nevada Legislature amended NRS 41.100(3) and deleted any statutory prohibition against assigning tort actions. 1979 Nev. Stat., ch 305, § 2 at 458-59. *See also Maxwell v. Allstate Ins. Co.*, 102 Nev. 502, 504-05, 728 P.2d 812, 814 (1986).

*Id.* at 449. The Nevada Supreme Court continued its analysis, including the quote relied on by *Hansen*, to determine a distinction between assigning a personal injury tort action and the proceeds of such action. Nowhere in this case does the Nevada Supreme Court state that non-personal injury tort claims are prohibited by common law. *See Platinum UnitOwners' Ass'n*, 2015 WL 1186530, at *5 (recognizing that no Nevada Supreme Court has held this prohibition).

Therefore, the Court does not find that *Hansen* is "clear, on-point authority," and is rather distinguishable from the case at hand. ORI has not shown a significant split in federal (or state) case law relating to the assignment of federal Lanham Act false advertising claims under Nevada law. Accordingly, the Court does not find that a substantial ground of difference opinion exist, and an appeal on this issue is not warranted.

### B. Standing Under the Lanham Act

ORI's arguments that FRI and Shimizu lack standing under the Lanham Act are anchored in rejecting FRI's and Shimizu's evidence, which was presented through sworn declarations. (Mot. at 8-10.) ORI does not disagree with the law

applied by the Court, but disputes that the Court did not adopt ORI's charge that FRI is a "shell company" and that Shimizu was not, and could not be, damaged, and thus both parties do not meet the "zone of interests" test. (*Id.*) However, as discussed in its Order, the Court is prohibited from making these credibility determinations or drawing other inferences at summary judgment. (ECF No. 439 at 27-28.) Instead, the Court could only analyze whether FRI and Shimizu presented specific, rather than conclusory, statements and whether those evidentiary statements were sufficient to establish standing. (*Id.*) To the extent ORI believes that FRI's and Shimizu's statements are not genuine, and that other nefarious inferences should be drawn, ORI can make these arguments to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment.")

Therefore, the Court does not find that a substantial ground of difference opinion exist, and an appeal on this issue is not warranted.

### C. Shimizu's Article III Standing

ORI's misreading of the Court's previous March 29, 2017 Order (ECF No. 335) manifests into its argument regarding Shimizu's Article III standing. (Mot. at 10-11.) The Court's ruling on this issue is clear, and it is not in conflict with its more recent summary judgment Order, or established Article III jurisprudence, as ORI contends. (*Id.*) Though ORI continues to disagree with the Court on the determination of Shimizu's Article III standing, this disagreement is not a substantial ground for difference of opinion on the issue of law here. ORI simply misunderstands the Court's rulings, as well as its burden relating to this issue.

Therefore, the Court does not find that substantial grounds of difference opinion exist, and an appeal on this issue is not warranted.

### III. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** ORI's motion to certify a portion of the summary judgment order for interlocutory review. (ECF No. 442.)

**IT IS SO ORDERED.**

DATED: April 16, 2018

Hon. Cynthia Bashant
United States District Judge